PETER C. ANDERSON
UNITED STATES TRUSTEE
ABRAM S. FEUERSTEIN, SBN 133775
ASSISTANT UNITED STATES TRUSTEE
EVERETT L. GREEN, SBN 237936
TRIAL ATTORNEY
UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
3801 University Avenue, Suite 720
Riverside, CA 92501
Telephone:    (951) 276-6354
Facsimile:    (951) 276-6082
Email:        Everett.L.Green@usdoj.gov

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### RIVERSIDE DIVISION

In re:

CROWNCO, INC., a California corporation,

      Debtor &
      Debtor-In-Possession.

Case No. 6:24-bk-16205-MH

Hon. Mark D. Houle

Chapter 11

**OPPOSITION TO MOTION TO DISMISS
CHAPTER 11 BANKRUPTCY CASE
PURSUANT TO 11 U.S.C. § 1112(b)(1);
DECLARATION OF EVERETT L. GREEN,
FILED IN SUPPORT THEREOF**[1]

**Hearing:**
Date:     March 25, 2025
Time:     2:00 p.m.
Place:    United States Bankruptcy Court
        Courtroom 301
        3420 Twelfth Street
        Riverside, CA 92501

---

[1]    Please take notice under LBR 9013-1(f) that any reply must be filed with the court and served on the responding party not later than 7-days prior to the hearing on the Motion.

1    **TO THE HONORABLE MARK D. HOULE, UNITED STATES BANKRUPTCY JUDGE,**

2    **AND ALL PARTIES-IN-INTEREST:**

3           Peter C. Anderson, the United States Trustee for the Central District of California, Region 16

4    ("U.S. Trustee"), hereby submits this opposition to the Motion to Dismiss Chapter 11 Bankruptcy Case

5    Pursuant to 11 U.S.C. § 1112(b)(1).[2]

6    **I.**    **ARGUMENT**

7           The U.S. Trustee agrees that "cause" exists under Section 1112(b).  Dismissal, however, is not in

8    the best interests of creditors.  *See Shulkin Hutton, Inc. v. P.S. v. Treiger (In re Owens)*, 552 F.3d 958, 961

9    (9th Cir. 2009) ("the court must consider the interests of all of the creditors").

10           At the March 10, 2025 meeting of creditors, creditors[3] who are involved in litigation with the

11    Debtor's chief executive officer, Mr. Morrison, allege Mr. Morrison, engaged in pre-petition

12    mismanagement, including diverting funds from the Debtor to insider entities, self-dealing, and submitting

13    false financial statements.

14           For example, the creditors allege Mr. Morrison, through other entities he owned and/or controlled,

15    purchased and sold real property with the Debtor's funds.[4]

16           While the Debtor may have a viable defense, a chapter 7 trustee should be appointed to review and

17    investigate these allegations.

18           The appointment of a disinterested trustee is also warranted because the Debtor has a conflict of

19    interest and cannot be expected to investigate its own officer.  *See e.g., In re Sillerman*, 605 B.R. 631, 642

20    (Bankr. S.D.N.Y. 2019) (listing conflicts of interest as example of non-enumerated misconduct found to

21    constitute cause); *In re Hampton Hotel Invs., L.P.*, 270 B.R. 346, 359 (Bankr. S.D.N.Y. 2001)

22    (conversion to chapter 7 case "particularly appropriate . . . given the extraordinary conflicts of interest");

23    *In re Duling Sons, Inc.*, 650 B.R. 578, 581 (Bankr. D.S.D. 2023) ("Courts have frequently identified other

24

25    ─────────────────────

26    [2]     Unless stated otherwise, capitalized terms have the meanings defined in the Motion.

27    [3]     The creditors are scheduled as creditor 2.4, holding an unknown priority claim, and creditor 3.30
holding a $160,000 claim for a breach of contract relating to the debtor's agreement to purchase the

28    [Debtor's] business.

[4]     Declaration of Everett L. Green, Exhibit A.

factors that support a finding of cause under §§ 1112(b)(1) or 1185(a) including where the debtor in possession has a conflict of interest in properly investigating and pursuing potential fraudulent transfers and other claims of the estate.") (collecting cases); *In re No Rust Rebar, Inc.*, 641 B.R. 412, 425 (Bankr. S.D. Fla. 2022) ("Where the debtor in possession has a conflict of interest in properly investigating and pursuing potential fraudulent transfers or other claims that may benefit the estate, conversion is appropriate.").

## II.    CONCLUSION

The U.S. Trustee requests the court convert the case to chapter 7 and appoint a trustee.

Dated: March 11, 2025                          PETER C. ANDERSON
                                               UNITED STATES TRUSTEE


                                               By:     /s/ Everett L. Green
                                                       Everett L. Green
                                                       Trial Attorney

## DECLARATION

I, Everett L. Green, hereby declare:

1.      I am an attorney duly authorized to practice law in the State of California and before this Court.  I serve as a Trial Attorney to the United States Trustee for Region 16, Riverside District Office.  I submit this declaration in support of the U.S. Trustee's *motion*.  I make this declaration of my own personal knowledge except where stated on information and belief, and as to such matters, I believe that they are true.  If called as a witness, I could and would testify truthfully to the information contained herein. To the extent I rely on other admissible evidence rather than on personal knowledge, I will specifically so state.

2.      On March 10, 2025, I conducted a meeting of creditors.  Creditor Ronald J. Cervi identified himself as a former owner and employee of the Debtor and questioned Mr. Morrison regarding allegations of potential pre-petition misconduct through entities Mr. Morrison owned and/or controlled including an entity called Alkrunon, LLC, a Florida limited liability company.

3.      Mr. Cervi contends, among other things, Mr. Morrison, through Alkurnon, LLC, purchased and sold real property using the Debtor's funds.  True and correct copies of documents Mr. Cervi contends relate to the transaction are attached hereto as ***Exhibit A***.

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed on March 11, 2025, at Riverside, California.


                          /s/ Everett L. Green
                          Everett L. Green

# Exhibit A

## PURCHASE AND SALE AGREEMENT

THIS PURCHASE AND SALE AGREEMENT ("**Agreement**") is entered into this 11th day of August, 2020 ("**Effective Date**"), between PV Brown Deer, LLC, a California limited liability company ("**Seller**") and Alkruman Holdings, LLC, a Florida limited liability company ("**Buyer**").

    1.    **Purchase and Sale.** Seller agrees to sell to Buyer and Buyer agrees to purchase from Seller two industrial condominium units located at 9155 Brown Deer Road, San Diego, California, 92121 known as Units 2 and 3 ( collectively, the "**Unit**") as identified on the Condominium Plan (as defined below) and as legally described on Schedule 1 (Legal Description) to Exhibit A (Grant Deed) attached hereto, together with an undivided interest in the common area appurtenant to the Unit (collectively, "**Condominium**") and all other rights appurtenant to the same as provided in the Deed (as defined below) and the Condominium Documents (as defined below) (collectively, "**Property**"), all as more particularly described and defined in the Condominium Documents (and the other Closing Documents described herein), for the price and upon the terms and conditions set forth in this Agreement. The Property constitutes a portion of an industrial condominium project (the "**Condominium Project**"). Notwithstanding anything to the contrary contained in the Condominium Documents (as defined below) or any other plans, deeds, documents, materials or other information with respect to the Unit or the Condominium Project, Buyer acknowledges and agrees that the Unit is and shall solely be of and have the size, square footage, height, configuration, location and other physical characteristics as actually exist as of the date the Deed is recorded. Concurrently with the Execution of this Agreement Buyer shall pay Seller One Hundred Dollars ($100.00) as independent consideration ("**Independent Consideration**") for Seller's entering into this Agreement and allowing Buyer the opportunity to investigate the suitability of the Property for purchase by Buyer. The Independent Consideration shall not be applied to the payment of the Purchase Price and shall be retained by Seller even if this Agreement is terminated by Buyer as of right.

    2.    **Escrow Instructions.** This Agreement constitutes joint escrow instructions by Buyer and Seller to Chicago Title Insurance Company (Annmarie Lo Coco) ("**Escrow Agent**"). If requested by Escrow Agent, the parties shall execute supplemental instructions as Escrow Agent may reasonably require. If there is a conflict between the terms of this Agreement and the terms of any supplemental instructions, the terms of this Agreement shall prevail.

    3.    **Opening of Escrow, Earnest Money Deposit and Close of Escrow.**

        (a)    Opening; Earnest Money Deposit. Concurrently with the execution of this Agreement Buyer and Seller shall open escrow (the "**Escrow**") hereunder by delivering to Escrow Agent (i) an original or facsimile copy (or counterpart copies) of this Agreement executed by Buyer and Seller; and (ii) the sum of Fifty Thousand Dollars ($50,000.00) deposited by Buyer in cash, by certified or bank cashier's check or by a confirmed Federal Reserve wire transfer of funds (hereinafter referred to as "**Immediately Available Funds**") as the "**Earnest Money Deposit**" which shall be applied to payment of the Purchase Price at the Close of Escrow. The Escrow Agent shall place the Earnest Money Deposit in an interest bearing account maintained at a segregated, federally insured bank or savings and loan association (the "**Account**"). All interest accruing on the Earnest Money Deposit shall be credited to the Purchase Price on the Close of Escrow. The Earnest Money Deposit shall be nonrefundable to Buyer unless any of the following circumstances occur, in which event, the

Earnest Money Deposit and all interest accrued thereon (if applicable) shall be refunded to Buyer upon the termination of this Agreement: (i) Buyer delivers written notice to Seller and Escrow Agent prior to 5:00 p.m. on the last day of the Feasibility Review Period terminating this Agreement pursuant to Section 5(f) due to Buyer's dissatisfaction with the Property; (ii) Buyer delivers written notice to Seller and Escrow Agent prior to 5:00 p.m. on the day that is forty-five (45) days after the Effective Date terminating this Agreement pursuant to Section 5(h) below due to Buyer's failure to obtain financing; (iii) Buyer terminates this Agreement in accordance with Section 18 hereof, (iv) Buyer terminates this Agreement in accordance with Section 5(d), (v) Buyer terminates this Agreement due to the failure of a condition precedent in favor of Buyer pursuant to and subject to Section 6 below, or (vi) pursuant to Section 11(b) hereof if the Close of Escrow does not occur due to a Seller default hereunder. The Earnest Money Deposit and interest thereon shall be applied to the payment of the Purchase Price upon the Close of Escrow.

(b)     Close of Escrow. The Escrow shall be deemed to close (the **"Close of Escrow"**) when Escrow Agent records the Deed. The Close of Escrow shall occur, subject to satisfaction of all of the conditions to Close of Escrow set forth in Section 6, on the **"Closing Date"**, which shall be the date which is fifteen (15) days after satisfaction or waiver of Buyer's financing contingency set forth in Section 5(h). The Close of Escrow shall occur at the office of Escrow Agent or at such other location as the parties may mutually specify in writing.

4.     **Purchase Price**. The **"Purchase Price"** for the Property is Two Million Four Hundred Twenty-Eight Thousand Two Hundred Dollars (**$2,428,200.00**), which Purchase Price shall be payable at the Close of Escrow as follows, subject to adjustments and prorations provided herein:

(a)     The Earnest Money Deposit in the amount of **$50,000.00**;

(b)     Buyer shall deposit and/or cause its lender to deposit with Escrow Agent in Immediately Available Funds the balance of the Purchase Price (**$2,378,200.00**) plus Buyer's share of estimated closing costs.

5.     **Investigation.**

(a)     Feasibility Review Period. The term **"Feasibility Review Period"** shall mean the period commencing on the Effective Date and terminating at 5:00 p.m., California time on the date which is thirty (30) days after the Effective Date. During the Feasibility Review Period, Buyer shall determine the feasibility and desirability of the Property for Buyer's intended use. Except as expressly provided elsewhere herein, Buyer shall be solely responsible for any and all costs incurred by Buyer in connection with its review and investigation. Seller shall make available to Buyer the documents and materials described in section 5(b) below to the extent they are in Seller's possession.

(b)     Studies and Investigations. Within ten (10) days after Buyer has deposited into Escrow the Earnest Money Deposit Seller shall deliver to Buyer, to the extent they are in Seller's possession, the following documents (the **"Property Documents"**): (i) copies of all leases, service agreements and warranties relating to the Property; (ii) the most recent utility bills relating to the Property; (iii) any environmental reports; (iv) the Condominium Documents (described in Section 5(e) below); (v) most recent Common Area Maintenance and other bills relating to Condominium costs and expenses; (vi) most recent

-2-

Exhibit A, pg. 7

property tax bills; (vii) notices to and from insurers relating to casualty events at the Property during the period of Seller's ownership of the Property; and (viii) as-built construction and engineering plans. Buyer may enter the Condominium Project during the Feasibility Review Period at reasonable times, at its own expense, to conduct such independent investigations, studies and tests as it deems necessary or appropriate concerning the Condominium Project and the suitability of the Condominium Project and the Condominium for Buyer's intended purposes, as Buyer deems appropriate; provided, however, Buyer may not conduct any tests which involve drilling, boring or other similar intrusive or invasive action within the Condominium Project without the prior written consent of Seller and of the condominium association which manages the Condominium Project (the **"Condominium Association"**), which consent may be withheld in Seller's sole discretion. Without limiting the foregoing, Buyer shall notify and coordinate its entry with Seller prior to physically entering upon the Condominium Project and going upon the roof or conducting any drilling, boring or other similar intrusive or invasive action within the Condominium Project, in which case Seller may accompany Buyer or its agents or independent contractors at such times while upon the Condominium Project. Buyer shall promptly provide Seller a copy of all reports and findings generated in connection with its investigation of the Condominium Project, and shall otherwise keep such information strictly confidential to Seller and Buyer. Buyer agrees to repair any damage to the Condominium Project caused by Buyer or its agents or independent contractors and further agrees to indemnify and hold harmless Seller for, from and against any costs, expenses, losses, attorneys' fees and liabilities (including, without limitation, claims of mechanics' liens) incurred or sustained by Seller either prior or subsequent to the Close of Escrow as a result of the conduct of Buyer or its agents or independent contractors on the Condominium Project. This duty of indemnification shall survive the termination of this Agreement. Prior to any entry upon the Condominium Project by Buyer's agents, contractors, subcontractors or employees, Buyer shall deliver to Seller an original endorsement to Buyer's commercial general liability insurance policy which evidences that Buyer is carrying a commercial general liability insurance policy with a minimum of One Million Dollars ($1,000,000.00) of coverage with a financially responsible insurance company acceptable to Seller. Without limiting the foregoing, the policy maintained by Buyer shall insure the contractual liability of Buyer covering the indemnities herein and shall (i) name the Seller (and its respective members, successors, assigns and affiliates) as additional insureds, (ii) contain a cross-liability provision, and (iii) contain a provision that "the insurance provided by Buyer hereunder shall be primary and non-contributing with any other insurance available to Seller (and its respective members, successors, assigns and affiliates." Any entry into the Unit under the terms and conditions of this Section 5(b) shall be subject to the approval of any current tenant of such Unit, if any, and Buyer shall not unreasonably disturb any such tenant's use and occupancy or interfere with any such tenant's business. In this regard, Buyer acknowledges its awareness that unit 3 is currently under lease to a tenant. Notwithstanding anything herein to the contrary, Buyer may not enter into any condominium units in the Condominium Project other than the Unit.

     (c)    <u>Condition of Title</u>.  Escrow Agent shall deliver to the parties a preliminary title report for the Property (the **"Title Report"**) issued by Chicago Title Insurance Company no later than five (5) days after the Effective Date including legible copies of all exceptions to title set forth in the Title Report, including without limitation the Condominium Documents. Buyer shall have until the end of the Feasibility Review Period to satisfy itself as to the condition of title to the Property. If Buyer does not approve all matters set forth in the Title Report prior to the expiration of the Feasibility Review Period, Buyer may cancel this Agreement pursuant to Section 5(f) below. Failure to exercise Buyer's

right of cancellation prior to the expiration of the Feasibility Review Period shall constitute Buyer's unconditional approval of all matters shown in the Title Report. Buyer agrees to take title to the Property at the Close of Escrow subject to (i) all matters shown in the Title Report (and any amendment or supplement thereto), (ii) the Condominium Plan, (iii) the Condominium Declaration (as defined below), (iv) a lien to secure payment of general and special real property taxes and assessments, not delinquent, (v) the lien of supplemental taxes assessed pursuant to Chapter 3.5 commencing with Section 75 of the California Revenue and Taxation Code, (vi) assessments under the applicable assessment district and community facilities district, utility or other easements granted in connection with the development of the Condominium Project, (vii) any matter arising from Buyer's acts, and (viii) all applicable laws, ordinances, rules and governmental regulations (including, but not limited to, those relative to building, zoning and land use) affecting the development, use, occupancy or enjoyment of the Property ("**Permitted Encumbrances**"); provided, however, on or before the Close of Escrow Seller shall pay and discharge, or obtain a release of the Property from, any mortgage, deed of trust, judgment lien, or mechanics' lien encumbering the Property (excluding any such liens arising due to any act of Buyer, including but not limited to any act of Buyer as tenant of the Unit if Buyer is or was a tenant of the Unit, which liens shall be Permitted Encumbrances). Buyer agrees that its acceptance of the Title Report and the title insurance policy shall be in full satisfaction of any express or implied warranty of Seller as to the condition of title to the Property, and in the event there are any title exceptions or defects, including, without limitation, liens, encumbrances, covenants, conditions, reservations, restrictions, rights, rights of way, or easements, which, in Buyer's opinion, constitute a defect in title not shown or revealed in the Title Report, or the title policy, Buyer shall look solely to the remedies available to Buyer under the title policy, and Seller shall have no responsibility or liability therefor.

(d)   Additional Exceptions.  If, after the date of the Title Report, any new exceptions to title are disclosed by an amended or supplemental Title Report ("**Supplemental Title Report**") that are not Permitted Encumbrances as provided above, and that Seller does not agree to remove at or before Close of Escrow, Buyer shall have until 5:00 p.m., California time on the date that is the later of (i) the expiration of the Feasibility Review Period or (ii) five (5) business days after receipt of the Supplemental Title Report together with a legible copy of the new exception(s), to terminate this Agreement by giving written notice to Seller and Escrow Agent, in which case the Earnest Money Deposit shall be returned to Buyer and neither party shall have any further obligations or liabilities under this Agreement excepting those obligations that specifically survive termination. If any new exceptions to title are disclosed by a Supplemental Title Report that are not Permitted Encumbrances, and Seller has not agreed to remove the same at or before Close of Escrow and Buyer has not terminated this Agreement by written notice to Seller and Escrow Agent on or before five (5) business days after receipt of the Supplemental Title Report, the new exceptions to title disclosed by the Supplemental Title Report shall be deemed accepted by Buyer as Permitted Encumbrances.

(e)   Condominium Documents.  During the Feasibility Review Period Buyer shall review the Declaration of Covenants, Conditions and Restrictions and Grant of Easements (the "**Condominium Declaration**") and the Condominium Plan (the "**Condominium Plan**") (collectively, the "**Condominium Documents**") recorded with the San Diego County Recorder's Office.

(f)     Termination During Feasibility Review Period.  At any time and for any reason during the Feasibility Review Period, Buyer shall have the right to terminate this Agreement in Buyer's sole and absolute discretion by written notice to Seller and Escrow Agent.  If Buyer gives written notice to Seller and Escrow Agent of termination of this Agreement prior to the expiration of the Feasibility Review Period, then this Agreement shall terminate without any further instruction from either party, Escrow Agent shall refund the Earnest Money Deposit and any accrued interest (if applicable) to Buyer, and neither Buyer nor Seller shall have any further right, liability or obligation under this Agreement except for those obligations that specifically survive termination.

(g)     Approval of Property.  If Escrow Agent has not received Buyer's written termination notice before 5:00 p.m. California time on the last day of the Feasibility Review Period, Buyer shall be deemed to have approved the Condominium and all aspects of the Property, and Buyer's right of termination under Section 5(f) shall immediately expire without further action by either party.  If Escrow Agent has received Buyer's written termination notice  before 5:00 p.m. California time on the last day of the Feasibility Review Period, Escrow Agent shall refund the Earnest Money Deposit and any accrued interest (if applicable) to Buyer, and neither Buyer nor Seller shall have any further right, liability or obligation under this Agreement except for those obligations that specifically survive termination.  During escrow Seller shall not enter into any new leases for the Property without the prior written approval of Buyer which Buyer shall not unreasonably withhold.  During escrow Seller agrees to maintain the Property in substantially the same condition and repair as existed on the Effective Date.

(h)     Financing Contingency.  Buyer shall use its best efforts to obtain a commitment for financing.  Buyer shall keep Seller apprised of Buyer's efforts to obtain such financing, and shall deliver to Seller a copy of the resulting loan commitment once it is received.  If, despite using its best efforts Buyer is unable to obtain such financing Buyer shall have the right to terminate this Agreement by delivering written notice of such termination to Seller and Escrow Agent before 5:00 p.m. California time on the date that is forty-five (45) days after the Effective Date, in which event this Agreement shall terminate without any further instruction from either party, Escrow Agent shall refund the Earnest Money Deposit and any accrued interest to Buyer (if applicable), and neither Buyer nor Seller shall have any further right, liability or obligation under this Agreement except for those obligations that specifically survive termination. If Buyer fails to give written notice to Seller and Escrow Agent prior to 5:00 p.m. California time on the date that is forty-five (45) days after the Effective Date of Buyer's termination of this Agreement due to Buyer's failure to obtain financing, then this Agreement shall not terminate, Buyer shall be deemed to have waived its financing contingency, and the parties shall proceed to Closing as provided herein.

6.     **Conditions Precedent to Close of Escrow**.  The following are conditions precedent to Close of Escrow.  If any of the conditions precedent described in this Section 6 is not satisfied, the Close of Escrow shall not occur unless waived by the benefited party.

(a)     The representations and warranties of Buyer contained herein shall be true and correct as of the Closing Date or any incorrect representation or warranty by Buyer has been waived by Seller.

(b)     The representations and warranties of Seller contained herein shall be true and correct as of the Closing Date or any incorrect representation or warranty by Seller has been waived by Buyer.

(c)     Buyer shall have deposited into Escrow on or prior to the Closing Date, the balance of the Purchase Price and funds sufficient to pay all charges or prorations allocated to Buyer under this Agreement.

(d)     Buyer shall have executed and deposited into Escrow the closing documents for which it is responsible under Section 8.

(e)     Seller shall have executed and deposited into Escrow the closing documents for which it is responsible under Section 8.

(f)     Buyer shall have performed all agreements, undertakings and obligations and complied with all conditions required by this Agreement to be performed or complied with by it on or prior to the Close of Escrow except to the extent waived by the Seller.

(g)     Seller shall have performed all agreements, undertakings and obligations and complied with all conditions required by this Agreement to be performed or complied with by on or prior to the Close of Escrow it except to the extent waived by the Buyer.

(h)     The title insurer shall be unconditionally committed to issue to Buyer the title insurance policy insuring title to the Property in the amount of the Purchase Price subject only to the Permitted Encumbrances.

(i)     Any tenant currently in occupancy shall have completely vacated the Property, which shall be delivered by Seller free and clear of any other tenants or occupants.

The conditions precedent set forth in Sections 6(b), (e), (g), (h), and (i) are for the sole benefit of and may only be waived by Buyer.  The conditions precedent set forth in Sections 6(a), (c), (d), and (f) are for the sole benefit of and may only be waived by Seller.  In the event that a condition precedent is not satisfied or waived by the outside date for satisfaction thereof set forth above in this Section 6, then the benefitted party may terminate this Agreement by written notice to the other party until such condition precedent is satisfied, and in the event of such termination the Earnest Money Deposit shall be released to and retained by the party entitled thereto pursuant to Section 3(a) above; provided, however, that if the failure of a condition precedent is caused by or constitutes a breach or default under this Agreement by a party, then the other party shall have its rights and remedies under Section 11 hereof.

7.     **Representations and Warranties**.

(a)     Seller's Representations, Warranties and Covenants.  The matters set forth in this Section constitute representations and warranties by Seller that shall be true and correct as of the date hereof and the date of Close of Escrow and shall survive the Close of Escrow for a period of six (6) months thereafter.  Representations and warranties given to the "knowledge" or "actual knowledge" of Seller are given as to the actual knowledge of Andrew Kaplan, without duty to investigate.

(i)    <u>Binding Agreement</u>.   This Agreement will be binding and enforceable against Seller in accordance with its terms, and upon Seller's execution of the additional documents contemplated by this Agreement, they will be binding and enforceable against Seller in accordance with their terms.

(ii)    <u>Other Agreements</u>.   Neither the execution and delivery of this Agreement nor the consummation of the purchase transaction contemplated herein will constitute a breach under any contract or agreement to which Seller is a party.

(iii)    <u>No Bankruptcy Proceedings</u>.   Seller has not:  (i) made a general assignment for the benefit of creditors; (ii) filed any voluntary petition in bankruptcy, or received notice of the filing of any involuntary petition in bankruptcy against Seller; (iii) received written notice of the appointment of a receiver to take possession of all or substantially all of Seller's assets; (iv) received written notice of the attachment or other judicial seizure of all or substantially all of Seller's assets; (v) within twelve (12) months preceding the date of this Agreement, admitted in writing its inability to pay its debts as they come due; or (vi) made an offer of settlement, extension or composition to its creditors generally.

(iv)    <u>Consents</u>.   Neither the execution and the delivery of this Agreement nor Seller's performance hereunder is subject to any requirement that Seller obtain any consent, approval or authorization of, any governmental authority or third party that has not been obtained.

(v)    <u>Authority</u>.   Seller has full power and authority to enter into this Agreement, and to carry out its other obligations hereunder. Seller is duly organized and existing in good standing under the laws of the State of California.  The execution of this Agreement and its delivery to Seller and the performance hereof have been duly authorized and approved by Seller.

(vi)    <u>Litigation</u>.   Seller has received no notice of and there is no pending or, to Seller's actual knowledge, threatened litigation or governmental proceeding affecting Seller or the Property that relates to the Property, or the validity or enforceability of this Agreement.

(b)    <u>Buyer's Representations, Warranties and Covenants</u>.   The matters set forth in this Section constitute representations and warranties by Buyer that shall be true and correct as of the date hereof and the date of Close of Escrow and shall survive the Close of Escrow for a period of six (6) months thereafter.

(i)    <u>Binding Agreement</u>.   This Agreement will be binding and enforceable against Buyer in accordance with its terms, and upon Buyer's execution of the additional documents contemplated by this Agreement, they will be binding and enforceable against Buyer in accordance with their terms.

(ii)    <u>Other Agreements</u>.   Neither the execution and delivery of this Agreement nor the consummation of the purchase transaction contemplated herein will constitute a breach under any contract or agreement to which Buyer is a party.

(iii)    <u>No Bankruptcy Proceedings</u>.   Buyer has not:  (i) made a general assignment for the benefit of creditors; (ii) filed any voluntary petition in bankruptcy, or received notice of the filing of any involuntary petition in bankruptcy against Buyer; (iii) received written

notice of the appointment of a receiver to take possession of all or substantially all of Buyer's assets; (iv) received written notice of the attachment or other judicial seizure of all or substantially all of Buyer's assets; (v) within twelve (12) months preceding the date of this Agreement, admitted in writing its inability to pay its debts as they come due; or (vi) made an offer of settlement, extension or composition to its creditors generally.

   (iv)   <u>Consents</u>.   Neither the execution and the delivery of this Agreement nor Buyer's performance hereunder is subject to any requirement that Buyer obtain any consent, approval or authorization of any governmental authority or third party that has not been obtained.

   (v)   <u>Authority</u>. Buyer has full power and authority to enter into this Agreement, and to carry out its other obligations hereunder. Buyer is duly organized and existing in good standing under the laws of the State of California. The execution of this Agreement and its delivery to Seller and the performance hereof have been duly authorized and approved by Buyer.

   (vi)   <u>Financial Information</u>. The information contained in the financial statements and other documents furnished by Buyer to Seller in connection with this Agreement are true and correct and accurately reflect Buyer's and its principals' financial condition.

   (c)   <u>Disclaimers and Releases</u>.

   (i)   Buyer acknowledges and agrees that Seller is not the developer of the buildings constituting the Condominium Project and that Seller shall not be liable for any defects in design or construction of the Condominium Project, and, except as expressly provided in the Condominium Declaration, Buyer's remedy for any defect in design or construction shall be through the Condominium Association's enforcement of any construction warranties received from the contractor and assigned to the Condominium Association.

   (ii)   Except with respect to the limited representations and warranties of Seller set forth in Section 7(a) above, Buyer has not relied upon and will not rely upon, either directly or indirectly, any representation or warranty of Seller or any of its respective agents and acknowledges that no such representations have been made. Buyer is, or as of the expiration of the Feasibility Review Period will be, familiar with the Property and the Condominium Project. Subject only to Seller's express representations and warranties contained in Section 7(a) above, Buyer is relying solely upon, and as of the expiration of the Feasibility Review Period will have conducted, its own, independent inspection, investigation and analysis of the Property and the Condominium Project as it deems necessary or appropriate in so acquiring the Property from Seller, including, without limitation, the review of all Property Documents provided by Seller in connection with this transaction and Buyer's own analysis of any and all matters concerning the condition of the Property and the Condominium Project and its suitability for Buyer's intended purposes which Buyer deems relevant, and a review of all applicable laws, ordinances, rules and governmental regulations (including, but not limited to, those relative to development, construction and building, including without limitation, compliance with the Americans with Disabilities Act of 1990, as amended and all zoning and land use codes and regulations) affecting the development, use, occupancy or enjoyment of the Property. Buyer specifically acknowledges that the performance of additional improvements to the interior or exterior of the Property may trigger the code requirements for additional improvements to the Property, the building in which the Property is situated or certain portions of the Condominium Project, all of which will be the responsibility of Buyer.

(iii)    For the purposes of this Agreement, the term "**Environmental Laws**" means any and all federal, state and local statutes, ordinances, orders, rules, regulations, guidance documents, judgments, governmental authorizations, or any other requirements of governmental authorities, as may presently exist or as may be amended or supplemented, or hereafter enacted or promulgated, relating to the presence, release, generation, use, handling, treatment, storage, transportation or disposal of Hazardous Materials, or the protection of the environment or human, plant or animal health, including, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended by the Superfund Amendments and Reauthorization Act of 1986 (42 U.S.C.A. § 9601 et seq.), the Hazardous Materials Transportation Act (49 U.S.C. § 1801 et seq.), the Resource Conservation and Recovery Act (42 U.S.C. § 6901 et seq.), the Federal Water Pollution Control Act (33 U.S.C. § 1251 et seq.), the Clean Air Act (42 U.S.C. § 7401 et seq.), the Toxic Substances Control Act (15 U.S.C. § 2601 et seq.), the Oil Pollution Act (33 U.S.C. § 2701 et seq.), the Emergency Planning and Community Right-to-Know Act of 1986 (42 U.S.C. § 11001 et seq.), the Porter-Cologne Water Quality Control Act (Cal. Wat. Code § 13020 et seq.), the Safe Drinking Water and Toxic Enforcement Act of 1986 (Cal. Health & Safety Code § 25249.5 et seq.), the Hazardous Waste Control Act (Cal. Health & Safe Code § 25100 et seq.), the Hazardous Materials Release Response Plans & Inventory Act (Cal. Health & Safety Code § 25500 et seq.), and the Carpenter-Presley-Tanner Hazardous Substances Account Act (Cal. Health & Safety Code, § 25300 et seq.).  As used herein, the term "**Hazardous Material(s)**" includes, without limitation, any hazardous or toxic material, substance, irritant, chemical or waste, which is (A) defined, classified, designated, listed or otherwise considered under any Environmental Law as a "hazardous waste," "hazardous substance," "hazardous material," "extremely hazardous waste," "acutely hazardous waste," "radioactive waste," "biohazardous waste," "pollutant," "toxic pollutant," "contaminant," "restricted hazardous waste," "infectious waste," "toxic substance," or any other term or expression intended to define, list, regulate or classify substances by reason of properties harmful to health, safety or the indoor or outdoor environment, (B) toxic, ignitable, corrosive, reactive, explosive, flammable, infectious, radioactive, carcinogenic or mutagenic, and which is or becomes regulated by any local, state or federal governmental authority, (C) asbestos, (D) an oil, petroleum, petroleum based product or petroleum additive, derived substance or breakdown product, (E) urea formaldehyde foam insulation, (F) polychlorinated biphenyls (PCBs), (G) freon and other chlorofluorocarbons, (H) any drilling fluids, produced waters and other wastes associated with the exploration, development or production of crude oil, natural gas or geothermal resources, (I) lead-based paint and (J) mold, rot, fungi and bacterial matter.

(iv)    Except for those representations and warranties of Seller as provided in Section 7(a) above, hereby agrees that each of Seller, Seller's partners or members, as the case may be, and each of their partners, members, trustees, directors, officers, employees, representatives, property managers, asset managers, agents, attorneys, affiliated and related entities, heirs, successors and assigns (collectively, the "**Releasees**") shall be, and are hereby, fully and forever released and discharged from any and all liabilities, losses, claims (including third party claims), demands, damages (of any nature whatsoever), causes of action, costs, penalties, fines, judgments, attorneys' fees, consultants' fees and costs and experts' fees (collectively, the "**Claims**") with respect to any and all Claims, whether direct or indirect, known or unknown, foreseen or unforeseen, that may arise on account of or in any way be connected with the Property or the Condominium Project, including, without limitation, the physical, environmental and structural condition of the Property or the Condominium Project or any law or regulation applicable thereto, including, without limitation, any Claim or matter (regardless of when it first appeared) relating to or arising from (i) the presence of any environmental

problems, or the use, presence, storage, release, discharge, or migration of Hazardous Materials on, in, under or around the Condominium Project regardless of when such Hazardous Materials were first introduced in, on or about the Condominium Project or the past, present or future violation of any Environmental Laws, (ii) any patent or latent defects or deficiencies of any kind with respect to the Property or the Condominium Project, (iii) any and all matters related to the Property or the Condominium Project or any portion thereof, including without limitation, the condition and/or operation of the Property or the Condominium Project and each part thereof, (iv) the content or accuracy of any report, study, opinion or conclusion of any soils, toxic, environmental or other engineer or other person or entity who has examined the Property or the Condominium Project or any aspect thereof; (v) the content or accuracy of any information released to Buyer by an engineer or planner in connection with the development of the Property or the Condominium Project; (vi) the availability of building or other permits or approvals for the Property or the Condominium Project by any state or local governmental bodies with jurisdiction over the Property or the Condominium Project; (vii) the availability or capacity of sewer, water or other utility connections to the Property or the Condominium Project; (viii) any of the items (if any) delivered to Buyer pursuant to Buyer's review of the condition of the Property or the Condominium Project; (ix) the content or accuracy of any other development or construction cost, projection, financial or marketing analysis or other information (if any) given to Buyer by Seller or reviewed by Buyer with respect to the Property or the Condominium Project including, without limitation, any square footage calculations of the Unit; or (x) the presence of any protected, threatened or endangered organisms, plant life or species on the Property or the Condominium Project or the requirements of any governmental agency to mitigate the effects of development of the Property or the Condominium Project on any such plant life or organism or species. Buyer hereby waives and agrees not to commence any action, legal proceeding, cause of action or suits in law or equity, of whatever kind or nature, including, but not limited to, a private right of action under the federal superfund laws, 42 U.S.C. Sections 9601 et seq. and California Health and Safety Code Sections 25300 et seq. (as such laws and statutes may be amended, supplemented or replaced from time to time), directly or indirectly against the Releasees or their agents in connection with Claims described above and expressly waives the provisions of Section 1542 of the California Civil Code which provides:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR"

and all similar provisions or rules of law. Except for those representations and warranties of Seller as provided in Section 7(a) above, Buyer elects to and does assume all risk for such Claims heretofore and hereafter arising, whether now known or unknown by Buyer. Notwithstanding anything in this Agreement to the contrary, nothing shall operate to relieve any Releasees from any Claims based upon breach of any representation in Section 7(a) above or breach of this Agreement by Seller. In this connection and to the greatest extent permitted by law, Buyer hereby agrees, represents and warrants that Buyer realizes and acknowledges that factual matters now unknown to it may have given or may hereafter give rise to causes of action, claims, demands, debts, controversies, damages, costs, losses and expenses which are presently unknown, unanticipated and unsuspected, and Buyer further agrees, represents and warrants that the waivers and releases herein have been negotiated and agreed upon in light of that realization and that Buyer nevertheless hereby intends to release, discharge and acquit Seller and the Releasees from any such unknown Claims, debts, and controversies which might in any way be

included as a material portion of the consideration given to Seller by Buyer in exchange for Seller's performance hereunder. Without limiting the foregoing, if Buyer has knowledge of (a) a default in any of the covenants, agreements or obligations to be performed by Seller under this Agreement and/or (b) any breach or inaccuracy in any representation of Seller made in this Agreement, and Buyer nonetheless elects to proceed to consummate this transaction, then, upon the Close of Escrow, Buyer shall be conclusively deemed to have waived any such default and/or breach or inaccuracy and shall have no Claim against Seller or the Releasees or hereunder with respect thereto. Subject to the immediately preceding sentence, in the event that prior to Close of Escrow Buyer is informed or discovers a breach of any of Seller's representations in Section 7(a) above, Buyer shall be entitled to pursue its remedies under Section 11(b) below.

Seller has given Buyer material concessions regarding this transaction in exchange for Buyer agreeing to the foregoing provisions of this Section 7(c). Seller and Buyer have each initialed to further indicate their awareness and acceptance of each and every provision hereof.

(v)     The disclaimers, waivers and releases set forth in this Section 7(c) shall survive the Close of Escrow and shall not merge therein or into any documents executed in connection therewith.

| *cmorrison* | *Mmur* |
| --- | --- |
| cmorrison (Aug 11, 2020 19:17 EDT) | Andrew Kaplan (Aug 11, 2020 17:25 MDT) |
| **Buyer's Initials** | **Sellers' Initials** |

8.     **Conveyance.**

(a)     <u>Seller's Deliveries</u>.  Seller shall, not less than one (1) business day prior to the Closing Date, deliver to Escrow Agent each of the following:

(i)     A properly executed and acknowledged Grant Deed (the **"Deed"**) in the form attached hereto as <u>Exhibit A</u> conveying the Property to Buyer;

(ii)     A properly executed counterpart of an Assignment and Assumption of Leases in form and content of Exhibit "B" attached hereto;

(iii)     A certificate of non-foreign status and a California Withholding Exemption Certificate (collectively, **"Seller's Tax Certificates"**), duly executed by Seller;

(iv)     All other documents required to be delivered by Seller; and

(v)     Any other documents reasonably requested by Escrow Agent or Buyer to consummate the transaction contemplated herein.

(b)     <u>Buyer's Deliveries</u>.  Buyer also shall, not less than one (1) business day prior to the Closing Date, deliver to Escrow Agent each of the following:

(i)     Funds in the amount of the balance of the cash portion of the Purchase Price, after credit for the Earnest Money Deposit and adjustments for the prorations, fees, and costs allocated to Buyer hereunder;

(ii)     A properly executed counterpart of an Assignment and Assumption of Leases in form and content of Exhibit "B" attached hereto;

(iii)     All other documents required to be delivered by Buyer; and

(iv)     Any other documents reasonably requested by Escrow Agent or Seller to consummate the transaction contemplated herein.

(c)     <u>Close of Escrow</u>.  Escrow Agent shall close the Escrow WHEN AND ONLY WHEN each of the following conditions has been satisfied:

(i)     All funds, instruments, and documents required by this Agreement have been delivered to Escrow Agent; and

(ii)     Each of the conditions precedent set forth in this Agreement has been, or upon such Close of Escrow shall be, approved, satisfied or waived.

9.     **Charges and Prorations.**

(a)     <u>Proration</u>.  Real and personal property taxes and assessments for the Property shall be prorated on the basis that Seller is responsible for (i) all such taxes for the fiscal year of the applicable taxing authorities occurring prior to the "Current Tax Period" (as hereinafter defined) and (ii) that portion of such taxes for the Current Tax Period determined on the basis of the number of days which have elapsed from the first day of the Current Tax Period to the Close of Escrow, inclusive, whether or not the same shall be payable prior to the Close of Escrow.  The phrase **"Current Tax Period"** refers to the fiscal year of the applicable taxing authority in which the Close of Escrow occurs.  In the event that as of the Close of Escrow the actual tax bills for the year or years in question are not available and the amount of taxes to be prorated as aforesaid cannot be ascertained, then rates and assessed valuation of the previous year, with known changes, shall be used, and when the actual amount of taxes and assessments for the year or years in question shall be determinable, then such taxes and assessments will be reprorated between the parties to reflect the actual amount of such taxes and assessments.  Seller shall pay all documentary transfer taxes and recording fees payable in connection with the recordation of the Deed.

(b)     <u>Title Insurance</u>.  Upon Close of Escrow, if Buyer elects to obtain an Extended Owners Title Insurance Policy (provided that no such election shall extend the Close of Escrow), Seller shall pay the portion of the title premium allocated to a Standard Owners Title Insurance Policy, and Buyer shall pay the portion of the title premium in excess of the Standard Owner's Title Insurance Policy and the cost of any endorsements requested by Buyer and the cost of (and Buyer shall be responsible for obtaining) any requisite survey (which shall not delay the Close of Escrow).  Buyer shall also pay the premium for any Loan Policy of Title Insurance to be issued to Buyer's lender and any endorsements thereto that Buyer's lender may require.

(c)     <u>Other Closing Costs</u>.  All escrow fees, recording fees, and other closing costs shall be shared equally.

(d)     <u>Closing Statement</u>.  At least one (1) business day prior to the Close of Escrow the parties hereto shall agree upon all of the prorations to be made and submit a statement to the Escrow Agent setting forth the same.  In the event that any prorations, apportionments or computations made under this Section 9 shall require final adjustment, then the parties hereto shall make the appropriate adjustments promptly when accurate information becomes available and either party hereto shall be entitled to an adjustment to correct the same, which obligations shall survive the Close of Escrow.  Any corrected adjustment or proration will be paid in cash to the party entitled thereto.

Exhibit A, pg. 17

10.    **Commissions.**  Seller and Buyer represent and warrant each to the other that they have not dealt with any real estate broker or agent in connection with the purchase and sale transaction that is the subject matter of this Agreement other than Cushman & Wakefield (Jeff Sallen) representing Buyer, and Cushman & Wakefield (Dean Asaro and Brant T. Aberg) representing Seller.  Seller shall pay brokerage commissions to said brokers pursuant to separate agreement.  Each party agrees to indemnify, defend and hold harmless the other from and on account of any claims, demands, costs and expenses including, but not limited to, reasonable attorneys' fees, that may be asserted against, suffered or incurred by the indemnitee on account of the default by the indemnitor under this Section.  Seller's and Buyer's representations and warranties set forth in this Section shall survive the Close of Escrow or termination of this Agreement.

11.    **Default.**

(a)    <u>By Buyer</u>.  If Buyer fails to close the transaction contemplated hereby or otherwise breaches its obligations hereunder, then Seller may terminate this Agreement and retain the Earnest Money Deposits, plus accrued interest thereon as liquidated damages as provided below.

IF ESCROW FAILS TO CLOSE AS A RESULT OF A DEFAULT ON THE PART OF BUYER (AND NOT DUE TO A FAILURE OF AN EXPRESS CONDITION PRECEDENT FOR BUYER'S BENEFIT), SELLER WILL BE DAMAGED AND WILL BE ENTITLED TO COMPENSATION FOR THOSE DAMAGES.  SUCH DAMAGES WILL, HOWEVER, BE EXTREMELY DIFFICULT AND IMPRACTICAL TO ASCERTAIN FOR THE FOLLOWING REASONS:  (A) THE DAMAGES TO WHICH SELLER WOULD BE ENTITLED IN A COURT OF LAW WILL BE BASED IN PART ON THE DIFFERENCE BETWEEN THE ACTUAL VALUE OF THE PROPERTY AT THE TIME SET FOR THE CLOSE OF ESCROW AND THE PURCHASE PRICE FOR THE PROPERTY AS SET FORTH IN THIS AGREEMENT; (B) PROOF OF THE AMOUNT OF SUCH DAMAGES WILL BE BASED ON OPINIONS OF VALUE OF THE PROPERTY, WHICH CAN VARY IN SIGNIFICANT AMOUNTS; AND (C) IT IS IMPOSSIBLE TO PREDICT AS OF THE DATE ON WHICH THIS AGREEMENT IS MADE WHETHER THE VALUE OF THE PROPERTY WILL INCREASE OR DECREASE AS OF THE DATES SET FOR THE CLOSE OF ESCROW. FURTHERMORE, BUYER ACKNOWLEDGES SELLER HAD OTHER OPPORTUNITIES TO SELL THE PROPERTY AND RELIED UPON THE REPRESENTATIONS OF BUYER THAT IT WOULD PERFORM AND PURCHASE THE PROPERTY FROM SELLER. BUYER DESIRES TO LIMIT THE AMOUNT OF DAMAGES FOR WHICH BUYER MIGHT BE LIABLE SHOULD BUYER BREACH THIS AGREEMENT.  BUYER AND SELLER WISH TO AVOID THE COSTS AND LENGTHY DELAYS WHICH WOULD RESULT IF SELLER FILED A LAWSUIT TO COLLECT ITS DAMAGES FOR A BREACH OF THIS AGREEMENT.

THEREFORE, THE SUM REPRESENTED BY EARNEST MONEY DEPOSIT SHALL BE DEEMED TO CONSTITUTE A REASONABLE ESTIMATE OF SELLER'S DAMAGES UNDER THE PROVISIONS OF SECTIONS 1671, 1676 and 1677 OF THE CALIFORNIA CIVIL CODE AND, EXCEPT AS PROVIDED BELOW, AND SELLER'S SOLE AND EXCLUSIVE REMEDY IN THE EVENT OF THE FAILURE TO CLOSE ESCROW RESULTING FROM BUYER'S DEFAULT UNDER THIS AGREEMENT SHALL BE LIMITED TO SUCH AMOUNT; PROVIDED, HOWEVER, THE FOREGOING SHALL NOT LIMIT (I) BUYER'S OBLIGATIONS TO PAY TO SELLER ALL ATTORNEYS' FEES AND

COSTS OF SELLER TO ENFORCE THE PROVISIONS OF THIS SECTION 11 AND/OR BUYER'S INDEMNITY OBLIGATIONS UNDER THIS AGREEMENT, (II) SELLER'S RIGHT TO ATTORNEY'S FEES UNDER SECTION 17 OF THIS AGREEMENT OR (III) THE ABILITY AND RIGHT OF SELLER TO ENFORCE SUCH INDEMNITIES. BUYER AND SELLER HAVE REVIEWED THE EFFECT OF THIS PROVISION WITH LEGAL COUNSEL AND HAVE AGREED THAT SUCH DAMAGES ARE A REASONABLE AND FAIR ESTIMATE OF THE DAMAGES SELLER WILL SUSTAIN. BY INITIALING THIS PROVISION IN THE SPACES BELOW, SELLER AND BUYER EACH SPECIFICALLY AFFIRM THEIR RESPECTIVE AGREEMENTS CONTAINED IN THIS SECTION.

_cmorrison_
cmorrison (Aug 11, 2020 19:17 EDT) BUYER'S INITIALS          _Mmm_
Andrew Hayden (Aug 11, 2020 17:05 MDT) SELLER'S INITIALS

(b)    By Seller. IF SELLER FAILS TO COMPLETE THE SALE OF THE PROPERTY AS PROVIDED IN THIS AGREEMENT BY REASON OF ANY DEFAULT OF SELLER (AND NOT DUE TO A FAILURE OF AN EXPRESS CONDITION PRECEDENT), BUYER SHALL BE RELEASED FROM ITS OBLIGATION TO PURCHASE THE PROPERTY FROM SELLER, AND BUYER MAY EITHER (I) PROCEED AGAINST SELLER BY BRINGING AN ACTION FOR SPECIFIC PERFORMANCE UNDER THIS AGREEMENT WITHOUT ANY RIGHT TO SEEK DAMAGES OF ANY KIND OR NATURE (WHICH ACTION FOR SPECIFIC PERFORMANCE SHALL BE BROUGHT (IF AT ALL) NO LATER THAN SIXTY (60) DAYS AFTER SUCH DEFAULT BY SELLER AND SHALL BE DILIGENTLY PROSECUTED BY BUYER TO COMPLETION), OR (II) TERMINATE THIS AGREEMENT IN WHICH EVENT THE EARNEST MONEY DEPOSIT SHALL BE RETURNED TO BUYER, SELLER SHALL REIMBURSE BUYER FOR ITS ACTUAL AND DOCUMENTED OUT-OF-POCKET COSTS INCURRED IN CONNECTION WITH THIS AGREEMENT NOT TO EXCEED $5,000, AND BUYER SHALL PROMPTLY RETURN TO SELLER THE PROPERTY DOCUMENTS. BUYER AND SELLER HEREBY ACKNOWLEDGE AND AGREE THAT IT WOULD BE IMPRACTICAL AND/OR EXTREMELY DIFFICULT TO FIX OR ESTABLISH THE ACTUAL DAMAGE SUSTAINED BY BUYER AS A RESULT OF SUCH MATERIAL DEFAULT BY SELLER, AND AGREE THAT THE REMEDY SET FORTH IN CLAUSE (II) ABOVE IS A REASONABLE APPROXIMATION THEREOF. ACCORDINGLY, IN THE EVENT THAT SELLER BREACHES THIS AGREEMENT BY MATERIALLY DEFAULTING IN THE COMPLETION OF THE SALE, AND BUYER ELECTS NOT TO EXERCISE THE REMEDY SET FORTH IN CLAUSE (I) ABOVE BUT INSTEAD ELECTS THE REMEDY SET FORTH IN CLAUSE (II) ABOVE, SUCH SUMS SHALL CONSTITUTE AND BE DEEMED TO BE THE AGREED AND LIQUIDATED DAMAGES OF BUYER WHICH IS NOT INTENDED TO BE A FORFEITURE OR PENALTY, BUT IS INTENDED TO CONSTITUTE LIQUIDATED DAMAGES TO BUYER PURSUANT TO CALIFORNIA CIVIL CODE SECTIONS 1671, 1676 AND 1677. BUYER AGREES TO, AND DOES HEREBY, WAIVE ALL OTHER REMEDIES AGAINST SELLER WHICH BUYER MIGHT OTHERWISE HAVE AT LAW OR IN EQUITY BY REASON OF SUCH DEFAULT BY SELLER; PROVIDED, HOWEVER, THE FOREGOING SHALL NOT LIMIT SELLER'S OBLIGATIONS TO PAY BUYER ALL ATTORNEYS' FEES AND COSTS OF BUYER TO ENFORCE THE PROVISIONS OF THIS SECTION 11. BUYER AND SELLER HAVE REVIEWED THE EFFECT OF THIS PROVISION WITH LEGAL COUNSEL AND HAVE AGREED THAT SUCH DAMAGES ARE A REASONABLE AND FAIR ESTIMATE OF THE DAMAGES SELLER WILL SUSTAIN. BY INITIALING THIS PROVISION IN THE SPACES BELOW, SELLER AND BUYER

-14-

EACH SPECIFICALLY AFFIRM THEIR RESPECTIVE AGREEMENTS CONTAINED
IN THIS SECTION.

_____ SELLER'S INITIALS    _____ BUYER'S INITIALS

12.  **Notices.**  All notices required or permitted to be given hereunder shall be in
writing and may be given in person or by United States mail, by local or nationwide
delivery/courier service or by electronic transmission (for instance, telecopy/fax to the
telecopies/fax numbers indicated below).  Such notices and other communications shall be
deemed to be given and received as follows:  (a) upon actual receipt, if delivered personally; (b)
upon actual receipt, if transmitted by facsimile on a business day before 5:00 p.m. (California
time); provided a copy is concurrently sent by another method permitted hereunder; (c) upon the
next business day following transmission if transmitted by facsimile on a day which is not a
business day or if transmitted after 5:00 p.m. (California time) on a business day; or (d) the next
business day, if delivered by overnight courier, addressed to that party at his/her/their/its
designated address.  The designated address of a party shall be the address of that party shown
below or such other address within the United States of America that any party from time to time
may specify by written notice to the other parties at least fifteen (15) days prior to the effective
date of such change, but no such notice of change shall be effective unless and until received by
the other parties.  Seller and Buyer agree that any notice sent on their behalf by their attorney, if
listed below, shall serve as notice by the Seller or Buyer, as the case may be, to the other.

To Buyer:           Alkruman Holdings, LLC
                    9484 Chesapeake Drive, Suite 805
                    San Diego, CA 92123
                    Attn: Chuck Morrison
                    Telephone No.: _____
                    Facsimile No.: _____
                    Email: cm@cmorrison.email

To Seller:          PV Brown Deer, LLC
                    c/o PacVentures, Inc.
                    4350 La Jolla Village Drive, Suite 110
                    San Diego, CA 92122
                    Attn:  Andrew Kaplan and Kevin Wechter
                    Telephone No.:  (858) 625-0100
                    Facsimile No.:  (858) 625-9243
                    Email: kwechter@pacventures.com

If to Escrow Agent to:  Chicago Title Insurance Company
                    2365 Northside Drive, Ste.600
                    San Diego, Ca. 92108
                    Attn: Annmarie Lo Coco
                    Telephone No.:  (619)-521-3411
                    Facsimile No.:  (___) ___-____
                    Email: lococoa@ctt.com

Either party may, from time to time, change the address to which notice shall be sent by notice
given to the other party, except that no party may change its address to other than a street

address.  Any notice given that does not conform to this Section shall be effective only upon receipt.

13.    **Return of Property Information.**  If this Agreement terminates for any reason, Buyer shall, no later than five (5) days after the termination date: (i) return to Seller all items that Seller has delivered to Buyer (including, but not limited to, the Property Documents); and (ii) deliver copies of all inspection and assessment reports, including the environmental reports, related to the Property that Buyer completed or caused to be completed.  This Section 13 shall survive termination of this Agreement.

14.    **Forms of Instruments; Cooperation.**  Except as otherwise specified herein, the forms of all instruments required to close this transaction shall be those customarily used in similar transactions in San Diego County, California, and each party agrees promptly to execute such documents as may reasonably be requested by Escrow Agent or the other party and to perform such acts as may reasonably be necessary to carry out the purpose and intent of this Agreement.

15.    **Assignment by Buyer.**  This Agreement may not be assigned or transferred by Buyer without Seller's prior written consent, which may be withheld in Seller's sole discretion, and any attempt to transfer or assign this Agreement without Seller's prior written consent shall be void and of no force or effect and shall further constitute a material breach by Buyer under this Agreement. Notwithstanding the foregoing, Seller's consent to an assignment by Buyer to an entity that is under common control with , or is controlled by, Buyer, so long as such assignment occurs at least five (5) days before the Closing Date pursuant to a written instrument delivered to Seller in which the assignee assumes all of Buyer's obligations under this Agreement.  No such assignment shall relieve Buyer of any of its obligations hereunder.

16.    **Severability.**  Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be valid under applicable law, but if any provisions of this Agreement shall be invalid or prohibited, such provision shall be ineffective to the extent of such prohibition or invalidation, which shall not invalidate the remainder of such provision or the remaining provisions of this Agreement.

17.    **Attorneys' Fees.**  In the event either party commences litigation for the judicial interpretation, enforcement, termination, cancellation or rescission hereof, or for damages (including liquidated damages) for the breach hereof, then, in addition to any or all other relief awarded in such litigation, the prevailing party therein shall be entitled to a judgment against the other for an amount equal to reasonable attorneys' fees, expert witness fees, litigation related expenses, and court costs in such litigation.

18.    **Damage or Condemnation Prior to Closing.**  Seller shall promptly notify Buyer of any casualty to the Property or any condemnation proceeding commenced prior to the Close of Escrow.  If any such damage or proceeding relates to or may result in the loss of any material portion of the Property, Buyer may, in its sole discretion, elect either to:  (i) terminate this Agreement, in which event all funds deposited into Escrow by Buyer shall be returned to Buyer and neither party shall have any further rights or obligations hereunder except for those obligations that specifically survive termination, or (ii) continue the Agreement in effect, in which event upon the Close of Escrow and provided that Seller does not elect, in Seller's sole discretion, to utilize the same to reconstruct the Condominium Project or any portion thereof, which includes the Condominium, Buyer shall be entitled to any insurance proceeds, compensation, awards, or other payments or relief payable to Seller resulting from such casualty

or condemnation proceeding relating to the Condominium (and excluding any portion of such amounts payable with respect to any other portion of the Condominium Project) and there shall be no adjustment to the Purchase Price. Notwithstanding the foregoing, Seller also shall have the right, in Seller's sole discretion, to terminate this Agreement in the event of any such casualty or condemnation, in which such event all funds deposited into Escrow by Buyer shall be returned to Buyer and neither party shall have any further rights or obligations hereunder except for those obligations that specifically survive termination.

19.     **Entire Agreement**.  This Agreement contains the entire Agreement of the parties hereto with respect to the matters covered hereby and supersedes all prior arrangements and understandings between the parties, and no other agreement, statement or promise made by either party hereto which is not contained herein shall be binding or valid.

20.     **Time of Essence**.  Time is of the essence of every provision of this Agreement.

21.     **Representation by Counsel**.  Buyer and Seller each acknowledge that they have been, or have had the opportunity to be, represented by legal counsel in connection with this Agreement and that this Agreement is the product of extensive negotiations between the parties. Buyer and Seller therefore agree that the fact that this Agreement or one or more provisions hereof were drafted by one party or the other shall not affect the meaning or interpretation of this Agreement.

22.     **Inurement**.  This Agreement shall be binding upon and shall inure to the benefit of the parties hereto, their heirs, personal representatives, successors, and, subject to Section 15 hereof, assigns.

23.     **Governing Law**.  This Agreement shall be construed and enforced in accordance with the laws of the State of California.

24.     **Counterparts**.  The execution and delivery of this Agreement may be effectuated by the use of telecopy/fax transmission and the facsimile signature(s) created thereby shall be considered an original signature(s).  Further, this Agreement may be executed utilizing more than one counterpart of the signature page, and all such executed counterpart signature pages shall be attached to one Agreement and read having the same force and effect as though all the signatories had signed a single page.

25.     **Natural Hazard Disclosure Requirement Compliance**.  Buyer and Seller acknowledge that Seller may be required to disclose if the Property lies within the following natural hazard areas or zones:  (i) a special flood hazard area designated by the Federal Emergency Management Agency (California Civil Code Section 1103(c)(1)); (ii) an area of potential flooding (California Government Code Section 8589.4); (iii) a very high fire hazard severity zone (California Government Code Section 51178 et seq.); (iv) a wild land area that may contain substantial forest fire risks and hazards (Public Resources Code Section 4135); (v) earthquake fault zone (Public Resources Code Section 2622); or (vi) a seismic hazard zone (Public Resources Code Section 2694) (sometimes all of the preceding are herein collectively called the "**Natural Hazard Matters**").  Seller has engaged Escrow Agent ("**Disclosure Agent**"), to examine the maps and other information specifically made available to the public by government agencies for the purposes of enabling Seller to fulfill its disclosure obligations, if and to the extent such obligations exist, with respect to the natural hazards referred to in California Civil Code Section 1102.6a and to report the result of its examination to Buyer and Seller in writing.  The written report prepared by Disclosure Agent regarding the results of its

full examination shall fully and completely discharge Seller from Seller's disclosure obligations referred to herein, and, for the purpose of this Agreement, the provisions of Civil Code Section 1102.4 regarding non liability of Seller for errors or omissions not within its personal knowledge shall be deemed to apply and Disclosure Agent shall be deemed to be an expert, dealing with matters within the scope of its expertise with respect to the examination and written report regarding the natural hazards referred to above.  By executing this Agreement, Buyer hereby acknowledges that the receipt of such report shall fully and completely discharge Seller from its disclosure obligations referred to herein, and agrees to countersign the written report upon receipt thereof and deposit an executed original of the report with Escrow Agent prior to expiration of the Feasibility Review Period.

26.    **Energy Performance Disclosure Waiver.**  Buyer acknowledges that Seller may be required to disclose certain information concerning the energy performance of the Property pursuant to California Public Resources Code Section 25402.10 and the regulations adopted pursuant thereto (collectively the "Energy Disclosure Requirements").  Buyer hereby waives any rights under the Energy Disclosure Requirements and further waives any right to receive the Disclosure Summary Sheet, Statement of Energy Performance, Data Checklist, and Facility Summary, all as defined in the Energy Disclosure Requirements (collectively, the "**Energy Disclosure Information**").  Buyer hereby forever releases Seller of any liability under the Energy Disclosure Requirements, including, without limitation, any liability of Seller arising as a result of Seller's failure to provide to Buyer the Energy Disclosure Information.  Buyer's approval of the condition of the Property pursuant to the terms of this Agreement shall be deemed to be Buyer's approval of the energy performance of the Property.  The terms of this Section shall survive the recordation of the Deed or earlier termination of this Agreement.

**27.  Contingency.** This Agreement is contingent upon the right of first refusal of the existing tenant in the Property being waived or expiring.

**SIGNATURES ON NEXT PAGE**

Exhibit A, pg. 23

IN WITNESS WHEREOF, the parties hereto have executed this Purchase and Sale Agreement as of the date and year first above written.

**SELLER:**

PV Brown Deer LLC,
a California limited liability company

By:     PacVentures, Inc.,
        a California corporation,
        Manager

By: _____
Name: Andrew Kaplan
Title: CRO

**BUYER:**

Alkruman Holdings, LLC,
a Florida limited liability company

By: _____
Name: Chuck Morrison
Title: Manager

## AGREEMENT AND CONSENT BY ESCROW AGENT

The undersigned hereby agrees to (i) accept the foregoing Agreement as instructions to the undersigned, (ii) act as Escrow Agent under said Agreement in consideration of its fees normally charged in such transactions, (iii) as the party responsible for Close of Escrow the transaction contemplated hereby within the meaning of Section 6045(e)(2)(A) of the Internal Revenue Code of 1986, as amended (the "Code"), file all necessary information reports, returns and statements (collectively the "reports") regarding the transaction required by the Code, including, but not limited to, the reports required pursuant to Section 6045 of the Code, and (iv) be bound by said Agreement in the performance of its obligations as the Escrow Agent.

Dated this 12th day of August , 2020.

Chicago Title Insurance Company

By: _____
Name: Annemarie Lo Coco
Title: Escrow Officer

# EXHIBIT "A"

WHEN RECORDED MAIL TO:

_____

_____

_____

_____

_____
(Above Space for Recorder's Use Only)

## GRANT DEED

Documentary Transfer Tax not shown pursuant to Section 11932 of the Revenue and Taxation Code, as amended.

FOR VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, PV Brown Deer, LLC, a California limited liability company ("Grantor"), hereby GRANTS to _____, a _____ ("Grantee"), the real property located in the City of San Diego, County of San Diego, State of California, described in Schedule "1" attached hereto and incorporated herein by this reference.

Dated: _____

STATE OF _____   )
                           )
COUNTY OF _____   )

On _____, before me, _____,
(insert name of notary)
Notary Public, personally appeared  , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

PV Brown Deer, LLC,
a California limited liability company

By:    PacVentures, Inc.,
       a California corporation,
       Manager

By:_____
Name:_____
Title:_____

(This area for official notarial seal)

EXHIBIT "A"

-1-

## SCHEDULE "1"

## LEGAL DESCRIPTION

## STATEMENT OF TAX DUE AND REQUEST THAT TAX DECLARATION
## NOT BE MADE A PART OF THE PERMANENT RECORD IN THE
## OFFICE OF THE COUNTY RECORDER
## (PURSUANT TO SECTION 11932 OF THE REVENUE AND TAXATION CODE).

TO: SAN DIEGO COUNTY RECORDER

Request is hereby made in accordance with the provisions of Section 11932 of California Revenue and Taxation Code that the amount of the tax due not be shown on the original document which names:

Grantor:    PV Brown Deer, LLC, a California limited liability company

Grantee:    _____

The property described in the accompanying document is located in the City of San Diego, County of San Diego, State of California.

I HEREBY DECLARE THAT THE DOCUMENTARY TRANSFER TAX IS $_____.

THE TAX IS COMPUTED ON;

_____ X _____ FULL VALUE OF PROPERTY CONVEYED

_____ FULL VALUE LESS LIENS AND ENCUMBRANCES REMAINING AT TIME OF SALE

Chicago Title Insurance Company

By:_____
Name:_____
Title:_____

NOTE: After the permanent record is made, this form will be affixed to the conveying document and returned with it.

-2-

## EXHIBIT "B"

## ASSIGNMENT AND ASSUMPTION OF LEASES

THIS ASSIGNMENT AND ASSUMPTION OF LEASES ("Assignment") is made this ____ day of _____, 2020 by and between PV BROWN DEER, LLC, a California limited liability company ("Assignor"), and _____ ("Assignee").

WITNESSETH:

WHEREAS, Assignor and Assignee are parties to that certain Purchase and Sale Agreement ("Purchase Agreement") with an Effective Date of _____, 2020, respecting the sale of certain Property (as described in the Purchase Agreement). Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Purchase Agreement.

WHEREAS, under the Purchase Agreement, Assignor shall assign to Assignee and Assignee shall assume all of Assignor's right, title and interest in and to all leases for any portion of the Property.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor hereby assigns, sells, transfers, sets over and delivers unto Assignee all of Assignor's estate, right, title and interest as landlord in and to the leases identified on Schedule 1 attached hereto (the "Leases"), and Assignee hereby accepts such assignment.

1.      By acceptance of this Assignment, Assignee hereby assumes the performance of all of the terms, obligations, covenants and conditions of Assignor under the Leases arising after the close of escrow under the Purchase Agreement.

2.      To the fullest extent permitted by law and in addition to all other indemnities provided for at law or in equity or in the documentation of the transactions described in the Purchase Agreement, Assignee hereby agrees to indemnify, defend and hold harmless the Assignor from and against any and all claims losses, liabilities, demands, damages, and expenses of whatever nature, including attorneys' fees and costs, suffered or incurred by the Assignor by reason of any breach by Assignee of any of its obligations under this Assignment.

3.      To the fullest extent permitted by law and in addition to all other indemnities provided for at law or in equity or in the documentation of the transactions described in the Purchase Agreement, Assignor hereby agrees to indemnify, defend and hold harmless the Assignee from and against any and all claims losses, liabilities, demands, damages, and expenses of whatever nature, including attorneys' fees and costs, suffered or incurred by the Assignee by reason of any breach by Assignor of any of its obligations under this Assignment.

4.      In the event any party hereto institutes any action or proceeding against the other party with regard to this Assignment, the prevailing party in such action shall be entitled to recover, in addition to the cost of the suit, its actual attorneys' fees and costs.

5.     This Assignment shall be binding upon and inure to the benefit of the successors, assignees, personal representatives, heirs and legatees of all the respective parties thereto.

6.     This Assignment may be executed in counterparts, each of which shall be an original, and all of which counterparts, taken together, shall constitute one and the same agreement.

IN WITNESS WHEREOF, Assignor and Assignee do hereby execute this Assignment as of the date first written above.


"ASSIGNOR"                PV BROWN DEER, LLC,
                          a California limited liability company

                          By:  PacVentures, Inc.,
                               a California corporation
                               (Manager)

                               By:_____
                                    Andrew M. Kaplan, CEO


"ASSIGNEE"                _____
                          a _____

                          By:_____
                          Name: _____
                          Title: _____


-2-

## SCHEDULE "1"

### LEASES

Exhibit A, pg. 30

# PV Brown Deer LLC - Alkruman Holdings LLC PSA_2020-08-10

Final Audit Report                                      2020-08-11

| | |
|---|---|
| Created: | 2020-08-11 |
| By: | Aubrey Mitsch (Aubrey.Mitsch@cushwake.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAs5ho4pUa4NqgYPdyrqXOaflO1etEMc6O |

## "PV Brown Deer LLC - Alkruman Holdings LLC PSA_2020-08-10 " History

🖺 Document created by Aubrey Mitsch (Aubrey.Mitsch@cushwake.com)
   2020-08-11 - 11:10:19 PM GMT- IP address: 104.129.206.114

🖾 Document emailed to cmorrison (cm@cmorrison.email) for signature
   2020-08-11 - 11:14:08 PM GMT

🖺 Email viewed by cmorrison (cm@cmorrison.email)
   2020-08-11 - 11:15:16 PM GMT- IP address: 97.103.233.80

🖋 Document e-signed by cmorrison (cm@cmorrison.email)
   Signature Date: 2020-08-11 - 11:17:50 PM GMT - Time Source: server- IP address: 97.103.233.80

🖾 Document emailed to Andrew Kaplan (akaplan@pacventures.com) for signature
   2020-08-11 - 11:17:52 PM GMT

🖺 Email viewed by Andrew Kaplan (akaplan@pacventures.com)
   2020-08-11 - 11:23:55 PM GMT- IP address: 159.118.126.98

🖋 Document e-signed by Andrew Kaplan (akaplan@pacventures.com)
   Signature Date: 2020-08-11 - 11:25:21 PM GMT - Time Source: server- IP address: 159.118.126.98

⊘ Signed document emailed to Andrew Kaplan (akaplan@pacventures.com), jeffrey.sallen@cushwake.com, Aubrey Mitsch (Aubrey.Mitsch@cushwake.com), ron.cervi@crownco.biz, and 1 more
   2020-08-11 - 11:25:21 PM GMT

Adobe Sign

**CHICAGO TITLE COMPANY**
**COMMERCIAL DIVISION**

**RECORDATION REQUESTED BY:**
First-Citizens Bank & Trust Company
DAC 20
PO Box 26592
Raleigh, NC  27611-6592

**WHEN RECORDED MAIL TO:**
First Citizens Bank
Loan Servicing Department-DAC20
PO Box 26592
Raleigh, NC  27611-6592

**SEND TAX NOTICES TO:**
ALKRUNON, LLC a Florida Limited Liability
Company
9484 CHESAPEAKE DRIVE, SUITE 805
SAN DIEGO, CA  92123

**DOC# 2020-0619239**

Oct 13, 2020   04:19 PM
OFFICIAL RECORDS
Ernest J. Dronenburg, Jr.,
SAN DIEGO COUNTY RECORDER
FEES: $68.00   (SB2 Atkins: $0.00)

PAGES: 19

**FOR RECORDER'S USE ONLY**

00135173-993-SD2



*\#\#\#\#\#\#\#\#\#\#\#\#\#\#\#\#108510072020\#\#\#\#\#\#\#\#\#\#\#\#\#01*

## DEED OF TRUST

THIS DEED OF TRUST is dated October 8, 2020, among ALKRUNON, LLC WHOSE ADDRESS IS 9484 CHESAPEAKE, SUITE 805, SAN DIEGO CA 92123 ("Trustor"); First-Citizens Bank & Trust Company, whose address is DAC 20, PO Box 26592, Raleigh, NC  27611-6592 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and Neuse, Incorporated, whose address is 100 East Tryon Road, Raleigh, NC  27603 (referred to below as "Trustee").

CONVEYANCE AND GRANT. For valuable consideration, Trustor irrevocably grants, transfers and assigns to Trustee in trust, with power of sale, for the benefit of Lender as Beneficiary, all of Trustor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in SAN DIEGO County, State of California:

See the exhibit or other description document which is attached to this Deed of Trust and made a part of this Deed of Trust as if fully set forth herein.

The Real Property or its address is commonly known as 9155 BROWN DEER RD., UNITS 2 & 3, SAN DIEGO, CA  92121.

Trustor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Trustor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. This is an absolute assignment of Rents made in connection with an obligation secured by real property pursuant to California Civil Code Section 2938. In addition, Trustor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS OF THE TRUSTOR UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST. THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

Exempt from fee per GC 27388.1 (a) (2);
recorded concurrently in connection with
a transfer subject to the imposition of
documentary transfer tax



*###################108510072020#############02*

## DEED OF TRUST
### (Continued)

Page 2

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Deed of Trust, Trustor shall pay to Lender all amounts secured by this Deed of Trust as they become due, and shall strictly and in a timely manner perform all of Trustor's obligations under the Note, this Deed of Trust, and the Related Documents.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Trustor agrees that Trustor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.** Until the occurrence of an Event of Default, Trustor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

**Duty to Maintain.** Trustor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Trustor represents and warrants to Lender that: (1) During the period of Trustor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Trustor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Trustor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Trustor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Trustor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Trustor or to any other person. The representations and warranties contained herein are based on Trustor's due diligence in investigating the Property for Hazardous Substances. Trustor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Trustor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Trustor's ownership or interest in the Property, whether or not the same was or should have been known to Trustor. The provisions of this section of the Deed of Trust, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Trustor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Trustor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.



*###################10851007202O#############03*

## DEED OF TRUST
### (Continued)

Page 3

**Removal of Improvements.** Trustor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Trustor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Trustor's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.** Trustor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Trustor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Trustor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Trustor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Trustor agrees neither to abandon or leave unattended the Property. Trustor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Trustor is a corporation, partnership or limited liability company, transfer also includes any restructuring of the legal entity (whether by merger, division or otherwise) or any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Trustor. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

**Payment.** Trustor shall pay when due (and in all events at least ten (10) days prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Trustor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due and except as otherwise provided in this Deed of Trust.

**Right to Contest.** Trustor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Trustor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Trustor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and



*################108510072020################04*

### DEED OF TRUST
### (Continued)

attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Trustor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Trustor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Trustor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Trustor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Trustor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Trustor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Deed of Trust.

**Maintenance of Insurance.** Trustor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Trustor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Trustee and Lender being named as additional insureds in such liability insurance policies. Additionally, Trustor shall maintain such other insurance, including but not limited to hazard, business interruption, and boiler insurance, as Lender may reasonably require. Notwithstanding the foregoing, in no event shall Trustor be required to provide hazard insurance in excess of the replacement value of the improvements on the Real Property. Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Trustor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Trustor or any other person. Should the Real Property be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area, Trustor agrees to obtain and maintain flood insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan. Flood insurance may be purchased under the National Flood Insurance Program, from private insurers providing "private flood insurance" as defined by applicable federal flood insurance statutes and regulations, or from another flood insurance provider that is both acceptable to Lender in its sole discretion and permitted by applicable federal flood insurance statutes and regulations.

**Application of Proceeds.** Trustor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Trustor fails to do so within fifteen (15) days of the casualty. If in Lender's sole judgment Lender's security interest in the Property has been impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the

*###################108510072020#############05*

## DEED OF TRUST
### (Continued)

Property. If the proceeds are to be applied to restoration and repair, Trustor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Trustor from the proceeds for the reasonable cost of repair or restoration if Trustor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Trustor as Trustor's interests may appear.

**Trustor's Report on Insurance.** Upon request of Lender, however not more than once a year, Trustor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Trustor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Trustor fails to comply with any provision of this Deed of Trust or any Related Documents, including but not limited to Trustor's failure to discharge or pay when due any amounts Trustor is required to discharge or pay under this Deed of Trust or any Related Documents, Lender on Trustor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Trustor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Deed of Trust also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon the occurrence of any Event of Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Deed of Trust:

**Title.** Trustor warrants that: (a) Trustor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Trustor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Trustor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Trustor's title or the interest of Trustee or Lender under this Deed of Trust, Trustor shall defend the action at Trustor's expense. Trustor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Trustor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.



*###################108510072020###############06*

## DEED OF TRUST
### (Continued)

Page 6

**Compliance With Laws.** Trustor warrants that the Property and Trustor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Trustor in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature, and shall remain in full force and effect until such time as Trustor's Indebtedness shall be paid in full.

**CONDEMNATION.** The following provisions relating to eminent domain and inverse condemnation proceedings are a part of this Deed of Trust:

**Proceedings.** If any eminent domain or inverse condemnation proceeding is commenced affecting the Property, Trustor shall promptly notify Lender in writing, and Trustor shall promptly take such steps as may be necessary to pursue or defend the action and obtain the award. Trustor may be the nominal party in any such proceeding, but Lender shall be entitled, at its election, to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Trustor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If any award is made or settlement entered into in any condemnation proceeding affecting all or any part of the Property or by any proceeding or purchase in lieu of condemnation, Lender may at its election, and to the extent permitted by law, require that all or any portion of the award or settlement be applied to the Indebtedness and to the repayment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation proceedings.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

**Current Taxes, Fees and Charges.** Upon request by Lender, Trustor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Trustor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (2) a specific tax on Trustor which Trustor is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Trustor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Trustor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as

*################108510072020#############07*

### DEED OF TRUST
### (Continued)

Page 7

a security agreement are a part of this Deed of Trust:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Trustor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. Trustor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Trustor shall not remove, sever or detach the Personal Property from the Property. Upon default, Trustor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Trustor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Trustor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Trustor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Trustor's obligations under the Note, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust as first and prior liens on the Property, whether now owned or hereafter acquired by Trustor. Unless prohibited by law or Lender agrees to the contrary in writing, Trustor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Trustor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Trustor and at Trustor's expense. For such purposes, Trustor hereby irrevocably appoints Lender as Trustor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Trustor pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Trustor under this Deed of Trust, Lender shall execute and deliver to Trustee a request for full reconveyance and shall execute and deliver to Trustor suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Lender may charge Trustor a reasonable reconveyance fee at the time of reconveyance.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Deed of Trust:

**Payment Default.** Trustor fails to make any payment when due under the Indebtedness.



*###################108510072020###############08*

**DEED OF TRUST**
**(Continued)**

Page 8

**Other Defaults.** Trustor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Deed of Trust or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Trustor.

**Compliance Default.** Failure to comply with any other term, obligation, covenant or condition contained in this Deed of Trust, the Note or in any of the Related Documents.

**Default on Other Payments.** Failure of Trustor within the time required by this Deed of Trust to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Default in Favor of Third Parties.** Should Trustor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Trustor's property or Trustor's ability to repay the Indebtedness or Trustor's ability to perform Trustor's obligations under this Deed of Trust or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Trustor or on Trustor's behalf under this Deed of Trust or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Deed of Trust or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The dissolution of Trustor's (regardless of whether election to continue is made), any member withdraws from the limited liability company, or any other termination of Trustor's existence as a going business or the death of any member, the insolvency of Trustor, the appointment of a receiver for any part of Trustor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Trustor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Trustor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Trustor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Trustor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Trustor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Trustor under the terms of any other agreement between Trustor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Trustor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Trustor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.



*###################108510072020#############09*

## DEED OF TRUST
### (Continued)

Page 9

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Trustor under this Deed of Trust, after Trustor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Foreclosure by Sale.** Upon an Event of Default under this Deed of Trust, Beneficiary may declare the entire Indebtedness secured by this Deed of Trust immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold the Property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed of Trust, the Note, other documents requested by Trustee, and all documents evidencing expenditures secured hereby. After the lapse of such time as may then be required by law following the recordation of the notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell the Property at the time and place fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of the Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement in accordance with applicable law. Trustee shall deliver to such purchaser its deed conveying the Property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee or Beneficiary may purchase at such sale. After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

**Judicial Foreclosure.** With respect to all or any part of the Real Property, Lender shall have the right in lieu of foreclosure by power of sale to foreclose by judicial foreclosure in accordance with and to the full extent provided by California law.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code, including without limitation the right to recover any deficiency in the manner and to the full extent provided by California law.

**Collect Rents.** Lender shall have the right, without notice to Trustor to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Trustor irrevocably designates Lender as Trustor's attorney-in-fact to endorse instruments received in payment thereof in the name of Trustor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any



*###################108510072020#############10*

## DEED OF TRUST
## (Continued)

Page 10

part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Tenancy at Sufferance.** If Trustor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Trustor, Trustor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or available at law or in equity.

**Notice of Sale.** Lender shall give Trustor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Sale of the Property.** To the extent permitted by applicable law, Trustor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Trustor also will pay any court costs, in addition to all other sums provided by law.

**Rights of Trustee.** Trustee shall have all of the rights and duties of Lender as set forth in this section.

**POWERS AND OBLIGATIONS OF TRUSTEE.** The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

**Powers of Trustee.** In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Trustor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the



*###############108510072020#############12*

## DEED OF TRUST
### (Continued)

(i) extend or shorten the maturity date, (j) increase the principal amount, face amount, and/or credit limit of the instrument evidencing the obligation, and/or (k) any combination of the foregoing. To the extent permitted by law, the obligation as so changed from time to time and all future advances and re-advances relating thereto shall be and continue to be secured by this instrument with a priority as of the date this instrument is recorded, regardless of whether any record of such change is filed or recorded or when funds are advanced or re-advanced.

FUTURE ADVANCES. This instrument secures not only existing indebtednesses and advances made contemporaneously with the execution of this instrument, but also future advances, whether obligatory, optional, or both, and whether made under open-end credit agreements or otherwise, to the same extent as if such future advances were made contemporaneously with the execution of this instrument, even if no advance is made at the time of the execution of this instrument and even if no indebtedness is outstanding at the time any advance is made. Any advances (whether obligatory, optional, or both) made by Lender under the terms of any Note, Credit Agreement or other instrument or obligation secured by this instrument, and any modification, amendment, extension, or renewal thereof, together with interest thereon, shall be secured by this instrument with a priority as of the date this instrument is recorded.

ADDITIONAL COLLATERAL; SECURITY AGREEMENT. Trustor hereby grants and conveys to Lender a Uniform Commercial Code security interest in the following additional collateral (collectively, the "Additional Collateral"), whether now owned or hereafter acquired by Trustor: (a) all Personal Property, (b) all Rents, (c) all building materials, supplies, inventory, equipment, fixtures, furnishings and/or other goods (but excluding any household goods) intended for use, used, or usable in the construction, repair, renovation, operation or maintenance of improvements constructed or to be constructed on the Real Property, (d) all construction, engineering, and architectural contracts and all plans, drawings and specifications relating to the construction, repair or renovation of improvements on the Real Property, and (e) all attachments, accessories and accessions to any of the foregoing and all replacements of and proceeds from the foregoing. This instrument shall constitute a Security Agreement as to the Additional Collateral, and Lender shall have all of the rights with respect thereto of a secured party under the Uniform Commercial Code as enacted and amended from time to time in the state in which the Real Property is located. Lender is authorized to file at Trustor's expense such financing statements and other filings as Lender shall deem appropriate to perfect and continue Lender's security interest in the Additional Collateral. Trustor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Trustor shall not remove, sever or detach any Additional Collateral from the Real Property, and Trustor shall assemble all Additional Collateral not affixed to the Property in a manner and at a place reasonably convenient to Trustor and Lender and make it available to Lender within three days after receipt of written demand from Lender to the extent permitted by applicable law. The mailing addresses of Trustor (debtor) and Lender (secured party) from which information concerning the security interest granted by this instrument may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust. This provision is in addition to (and does not supersede) any other provision of this instrument granting Lender a security interest in personal property.

TRUSTOR'S ADDITIONAL WAIVERS. To the extent permitted by applicable law, Trustor also expressly waives all benefits, claims, rights and defenses Trustor may have or acquire that are based on: (A) any statutory or common law provision limiting the liability of or requiring the discharge or exoneration of a guarantor or surety; (B) the law of suretyship or impairment of collateral, including any benefits, claims, rights or defenses Guarantor may have or acquire pursuant to sections 3-419 and 3-605 of the Uniform Commercial Code as adopted and amended from time to time by the various states; (C) any statutory or common law provision that releases, discharges, or limits the liability of a remaining obligor following the release of a joint obligor; (D) homestead or exemption laws and any rights thereunder with respect to any collateral taken as security for the



*###################108510072020############13*

## DEED OF TRUST
### (Continued)

Indebtedness; (E) any "one action," "anti-deficiency" or other statutory or common law provision limiting the right of Lender to obtain a judgment against or to otherwise proceed against any person or entity obligated for payment of the Indebtedness (including Trustor, if that is the case), whether before or after the foreclosure, sale or other disposition of any collateral taken as security for the Indebtedness; and (F) any legal or equitable doctrine or principle of marshalling. Lender shall not be required to sell or dispose of collateral in inverse order of alienation or in any other particular order. Without affecting or lessening Lender's rights under this instrument, Lender may do or not do any of the following with respect to the Indebtedness or Note without Trustor's knowledge, consent or joinder: (A) grant extensions of time for payment, (B) grant renewals, (C) permit modifications of payment terms or other terms or conditions, (D) permit assumptions of the Indebtedness or Note, (E) release one or more borrowers or guarantors from liability, and (F) exchange or release any collateral or other security.

**INFORMATION ABOUT OTHER LIENS.** Lender is authorized to obtain such information about other liens or claims of lien on the Real Property as Lender may reasonably request from the each creditor or other person or entity that has, claims to have, or asserts a lien on the Real Property. The information requested may include, but is not limited to, the nature of the lien or claim of lien, the circumstances under which the lien or claim of lien arose, and the amount required to satisfy the lien or claim of lien. The creditors or other persons or entities that have, claim to have, or assert a lien on the Real Property are authorized and directed to promptly provide to Lender the information requested by Lender. This provision applies whether the lien or claim of lien is superior or subordinate in priority to the lien of this instrument.

**RIGHT TO CURE.** Prior to accelerating the Indebtedness secured by this instrument, Lender shall give such notice and opportunity to cure as may be required by the Note or Credit Agreement secured by this instrument. The provisions of this section shall not supersede or limit the application of any controlling provisions of state law concerning notice of default, the right to cure, or the right to reinstate, and nothing in this instrument shall be deemed a waiver of those provisions; provided, however, that the provisions of the Note or Credit Agreement and any such state law requirements shall run concurrently.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

**Amendments.** This Deed of Trust, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust. No alteration of or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Trustor's residence, Trustor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Trustor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

**Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Governing Law.** This Deed of Trust will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law



*###################108510072020################14*

## DEED OF TRUST
### (Continued)

provisions. **This Deed of Trust has been accepted by Lender in the State of California.**

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Deed of Trust unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Deed of Trust shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Deed of Trust. No prior waiver by Lender, nor any course of dealing between Lender and Trustor, shall constitute a waiver of any of Lender's rights or of any of Trustor's obligations as to any future transactions. Whenever the consent of Lender is required under this Deed of Trust, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Deed of Trust to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Deed of Trust. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Deed of Trust shall not affect the legality, validity or enforceability of any other provision of this Deed of Trust.

**Successors and Assigns.** Subject to any limitations stated in this Deed of Trust on transfer of Trustor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Trustor, Lender, without notice to Trustor, may deal with Trustor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Trustor from the obligations of this Deed of Trust or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Deed of Trust. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Deed of Trust shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Beneficiary.** The word "Beneficiary" means First-Citizens Bank & Trust Company , and its successors and assigns.

**Borrower.** The word "Borrower" means ALKRUNON, LLC a Florida Limited Liability Company and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Trustor, Lender, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C.



*###################108510072020###############15*

# DEED OF TRUST
## (Continued)

Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., Chapters 6.5 through 7.7 of Division 20 of the California Health and Safety Code, Section 25100, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Trustor's obligations or expenses incurred by Trustee or Lender to enforce Trustor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust.

**Lender.** The word "Lender" means First-Citizens Bank & Trust Company , its successors and assigns.

**Note.** The word "Note" means the promissory note dated October 8, 2020, **in the original principal amount of $1,926,560.00** from Trustor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Trustor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all



*################108510072020#############16*

## DEED OF TRUST
### (Continued)

Page 16

other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness; except that the words do not mean any guaranty or environmental agreement, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future leases, rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property together with the cash proceeds of the Rents.

**Trustee.** The word "Trustee" means Neuse, Incorporated, whose address is 100 East Tryon Road, Raleigh, NC 27603 and any substitute or successor trustees.

**Trustor.** The word "Trustor" means ALKRUNON, LLC a Florida Limited Liability Company.

**TRUSTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND TRUSTOR AGREES TO ITS TERMS.**

**TRUSTOR:**


**ALKRUNON, LLC A FLORIDA LIMITED LIABILITY COMPANY**

By: _____

CHARLES   E MORRISON, Manager of ALKRUNON, LLC a
Florida Limited Liability Company



*###################108510072020###############17*

## DEED OF TRUST
### (Continued)

Page 17

---

### CERTIFICATE OF ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy or validity of that document.

STATE OF _California_                )
                                     ) SS
COUNTY OF _Riverside_                )

On _October 09_____, 20_20_ before me, _Karla A Hernandez, Notary Public_,
                                                (here insert name and title of the officer)
personally appeared **CHARLES  E MORRISON**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

**WITNESS my hand and official seal.**

Signature _____

KARLA A. HERNANDEZ
COMM. # 2311167
NOTARY PUBLIC - CALIFORNIA
RIVERSIDE COUNTY
COMM. EXPIRES NOV. 26, 2023

(Seal)



*##################108510072020##############18*

## DEED OF TRUST
### (Continued)

Page 18

---

**(DO NOT RECORD)**

### REQUEST FOR FULL RECONVEYANCE
(To be used only when obligations have been paid in full)

To: _____, Trustee

The undersigned is the legal owner and holder of all Indebtedness secured by this Deed of Trust. All sums secured by this Deed of Trust have been fully paid and satisfied. You are hereby directed, upon payment to you of any sums owing to you under the terms of this Deed of Trust or pursuant to any applicable statute, to cancel the Note secured by this Deed of Trust (which is delivered to you together with this Deed of Trust), and to reconvey, without warranty, to the parties designated by the terms of this Deed of Trust, the estate now held by you under this Deed of Trust. Please mail the reconveyance and Related Documents to:

_____.

Date: _____    Beneficiary: _____

By: _____

Its: _____

---

LaserPro, Ver. 20.1.0.034   Copr. Finastra USA Corporation 1997, 2020.   All Rights Reserved.   - CA
F:\LPL\CFI\LPL\G01.FC  TR-6399043  PR-463

# EXHIBIT "A"

**Order No.:**   73720011817
**Title No.:**    00135173-993

**For APN/Parcel ID(s):  343-350-03-03 and**

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF SAN DIEGO, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

A CONDOMINIUM COMPRISED OF:

PARCEL 1: 343-350-03-03

THAT PORTION OF PARCEL 25 OF PARCEL MAP NO. 12573, IN THE CITY OF SAN DIEGO, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, FEBRUARY 18, 1983 AND CORRECTED BY CERTIFICATE OF CORRECTION RECORDED
NOVEMBER 28, 1984 AS FILE NO. 84-443361 OFFICIAL RECORDS AND PER CERTIFICATE OF COMPLIANCE, DOCUMENT NO. 2018-0315605 RECORDED AUGUST 2, 2018 DESCRIBED AS FOLLOWS:

AN UNDIVIDED 17.84% PERCENTAGE INTEREST AS TENANT-IN-COMMON IN AND TO THE "COMMON AREA" AS DEFINED AND DELINEATED ON THE BROWN DEER ROAD MASTER CONDOMINIUM PLAN RECORDED ON AUGUST 17, 2018 AS DOCUMENT NO. 2018-0338430 OF OFFICIAL RECORDS (THE "CONDOMINIUM PLAN"); AND AS SAID COMMON AREA IS DEFINED IN THE DECLARATION OF
COVENANTS, CONDITIONS AND RESTRICTIONS AND ESTABLISHMENT OF RECIPROCAL EASEMENTS FOR BROWN DEER ROAD CONDOMINIUMS (THE "DECLARATION") RECORDED ON AUGUST 17, 2018 AS DOCUMENT NO. 2018-0338431 BOTH OF OFFICIAL RECORDS, IN THE OFFICE OF THE COUNTY
RECORDER OF SAID COUNTY.

EXCEPTING FROM A PORTION OF THE ABOVE-DESCRIBED LAND ALL COAL, OIL, GAS, PETROLEUM AND OTHER HYDROCARBON SUBSTANCES IN AND UNDER SUCH PROPERTY, A PREDECESSOR IN TITLE, ITS SUCCESSORS AND/OR ASSIGNS, RETAINING THE EXCLUSIVE TITLE AND RIGHT TO REMOVE
SAID SUBSTANCES, TOGETHER WITH SOLE RIGHT TO NEGOTIATE AND CONCLUDE LEASES AND AGREEMENTS WITH RESPECT TO ALL SUCH SUBSTANCES UNDER THE PROPERTY AND TO USE THOSE PORTIONS OF THE PROPERTY WHICH UNDERLIE A PLANE PARALLEL TO AND 500 FEET BELOW
THE PRESENT SURFACE OF THE PROPERTY FOR THE PURPOSE OF PROSPECTING FOR, DEVELOPING AND/OR EXTRACTING SUCH SUBSTANCES FROM THE PROPERTY BY MEANS OF WELLS DRILLED INTO OR THROUGH SAID PORTIONS OF THE PROPERTY FROM DRILL SITES LOCATED ON OTHER
PROPERTY, IT BEING EXPRESSLY UNDERSTOOD AND AGREED THAT SUCH PREDECESSOR IN TITLE, ITS SUCCESSORS AND/OR ASSIGNS, SHALL HAVE NO RIGHT TO ENTER UPON THE SURFACE OF THE PROPERTY OR TO USE THE PROPERTY OR ANY PORTION THEREOF ABOVE THE LEVEL OF THE
AFORESAID PLANE AS RESERVED IN DEED RECORDED OCTOBER 8, 1982 AS FILE NO. 82-309734 OF OFFICIAL RECORDS.

PARCEL 2:

# EXHIBIT "A"
### (continued)

CONDOMINIUM UNIT 3 AS DEFINED AND DELINEATED ON THE CONDOMINIUM PLAN AND DEFINED IN THE DECLARATION REFERRED TO IN PARCEL 1 ABOVE.

PARCEL 3:

EASEMENTS APPURTENANT TO PARCEL 2 ABOVE AS DEFINED IN THE DECLARATION OR THE CONDOMINIUM PLAN REFERRED TO IN PARCEL 1 ABOVE.