| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| JENNIFER WITHERELL CRASTZ (SBN 185487) JESSICA MICKELSEN SIMON (SBN 277581) HEMAR, ROUSSO & HEALD, LLP 15910 Ventura Blvd., 12th Floor Encino, California 91436 Telephone: (818) 501-3800 Facsimile: (818) 501-2985 Email: jcrastz@hrhlaw.com Email: jsimon@hrhlaw.com ☐ *Individual appearing without attorney* ☒ *Attorney for:* Centerstone SBA Lending, Inc. | |

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA - RIVERSIDE DIVISION

| In re: CROWNCO, INC. | CASE NO.: 6:24-bk-16205-SY |
|---|---|
| | CHAPTER:7 |
| | **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (PERSONAL PROPERTY)** |
| Debtor(s). | DATE: 09/17/2025 TIME: 9:30 am COURTROOM: 302 |

| **Movant:** CENTERSTONE SBA LENDING, INC. |
|---|

1. **Hearing Location**:

   ☐ 255 East Temple Street, Los Angeles, CA 90012       ☐ 411 West Fourth Street, Santa Ana, CA 92701
   ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367   ☐ 1415 State Street, Santa Barbara, CA 93101
   ☒ 3420 Twelfth Street, Riverside, CA 92501

2. Notice is given to the Debtor and trustee (if any)(Responding Parties), their attorneys (if any), and other interested parties that on the date and time and in the courtroom stated above, Movant will request that this court enter an order granting relief from the automatic stay, as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached motion.

3. To file a response to the motion, you may obtain an approved court form at www.cacb.uscourts.gov/forms for use in preparing your response (optional LBR form F 4001-1.RFS.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

4. When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above.

5. If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion.

6. ☒ This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1(d).  If you wish to oppose this motion, you must file a written response to this motion with the court and serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above no less than 14 days before the hearing and appear at the hearing of this motion.

7. ☐ This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b).  If you wish to oppose this motion, you must file and serve a response no later than (*date*) _____ and (*time*) _____; and, you may appear at the hearing.

   a. ☐ An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

   b. ☐ An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (if any).

   c. ☐ An application for order setting hearing on shortened notice and remains pending.  After the court has ruled on that application, you will be served with another notice or an order that will specify the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.

Date:  08/21/2025

HEMAR, ROUSSO & HEALD, LLP
Printed name of law firm (if applicable)

JENNIFER WITHERELL CRASTZ
Printed name of individual Movant or attorney for Movant

_____
Signature of individual Movant or attorney for Movant

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                                Page 2                                F 4001-1.RFS.PP.MOTION

# MOTION FOR RELIEF FROM THE AUTOMATIC STAY AS TO PERSONAL PROPERTY

1. Movant has a perfected security interest in the Property.

2. **The Property at Issue (Property):**

   a. ☐ Vehicle (*year, manufacturer, type, and model*):

      *Vehicle Identification Number*:
      *Location of vehicle (if known)*:

   b. ☐ Equipment (*manufacturer, type, and characteristics*):

      *Serial number(s)*:

      *Location (if known)*:

   c. ☒ Other Personal Property (*type, identifying information, and location*):
      Debtor's business assets, in debtor's possession, including accounts receivable.

3. **Bankruptcy Case History:**

   a. ☒ A voluntary bankruptcy petition   ☐ An involuntary bankruptcy petition
      under chapter  ☐ 7  ☒ 11  ☐ 12  ☐ 13  was filed on (*date*) __10/16/2024__.

   b. ☒ An order to convert this case to chapter  ☒ 7  ☐ 11  ☐ 12  ☐ 13  was entered on (*date*) __4/1/2025__.

   c. ☐ Plan was confirmed on (*date*) _____.

4. **Grounds for Relief from Stay:**

   a. ☒ Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant the requested relief from stay as follows:

      (1) ☐ Movant's interest in the Property is not adequately protected.

         (A) ☐ Movant's interest in the Property is not protected by an adequate equity cushion.

         (B) ☐ The fair market value of the Property is declining and payments are not being made to Movant
             sufficient to protect Movant's interest against that decline.

         (C) ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's
             obligation to insure the collateral under the terms of Movant's contract with Debtor.

         (D) ☐ Other (*see attached continuation page*).

      (2) ☐ The bankruptcy case was filed in bad faith.

         (A) ☐ Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case
             commencement documents.

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                                    Page 3                          **F 4001-1.RFS.PP.MOTION**

(B) ☐ The Property was transferred to the Debtor either just before the bankruptcy filing or after the filing.

(C) ☐ A non-individual entity was created just prior to the bankruptcy petition date for the sole purpose of filing this bankruptcy case.

(D) ☐ Other bankruptcy cases were filed in which an interest in the Property was asserted.

(E) ☐ The Debtor filed only a few case commencement documents with the bankruptcy petition.  Schedules and statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

(3) ☐ *(Chapter 12 or 13 cases only)*  All payments on account of the Property are being made through the plan and plan payments have not been made to the chapter 12 or chapter 13 trustee for payments due ☐ postpetition preconfirmation   ☐ postpetition postconfirmation.

(4) ☐ The lease has matured, been rejected or deemed rejected by operation of law.

(5) ☐ The Debtor filed a statement of intention that indicates the Debtor intends to surrender the Property.

(6) ☐ Movant regained possession of the Property on (*date*) _____, which is ☐ prepetition ☐ postpetition.

(7) ☒ For other cause for relief from stay:  This case is nearly a year old and nothing has been done by the debtor or the trustee to collect on accounts receivable and the likelihood of collectibility decreases as each day passes.

b. ☒ Pursuant to 11 U.S.C. § 362(d)(2)(A), the Debtor has no equity in the Property; and, pursuant to 11 U.S.C. § 362(d)(2)(B), the Property is not necessary for an effective reorganization.

5. **Grounds for Annulment of the Stay.**  Movant took postpetition actions against the Property or the Debtor.

a. ☐ These actions were taken before Movant knew that the bankruptcy petition had been filed and Movant would have been entitled to relief from stay to proceed with those actions,

b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions,

c. ☐ Other (*specify*):

6. ☒ **Evidence in Support of Motion: *(Declaration(s) must be signed under penalty of perjury and attached to this motion)***

a. The PERSONAL PROPERTY DECLARATION on page 6 of this motion.

b. ☒ Supplemental declaration(s).  *See* Declaration of Jessica M. Simon filed concurrently herewith.

c. ☒ The statements made by the Debtor under penalty of perjury concerning Movant's claims and the Property as set forth in the Debtor's case commencement documents.  Authenticated copies of the relevant portions of the case commencement documents are attached as Exhibit(s)  4-Schedule D .

d. ☐ Other:

7. **An optional Memorandum of Points and Authorities is attached to this motion.**

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                                           Page 4                              **F 4001-1.RFS.PP.MOTION**

**Movant requests the following relief:**

1. Relief from the stay is granted under:  ☒ 11 U.S.C. § 362(d)(1)  ☒ 11 U.S.C. § 362(d)(2)

2. ☒ Movant (and any successors or assigns) may proceed under applicable nonbankruptcy law to enforce its remedies to repossess and sell the Property.

3. ☐ Confirmation that there is no stay in effect.

4. ☐ The stay is annulled retroactive to the petition date.  Any postpetition actions taken by Movant to enforce its remedies regarding the Property do not constitute a violation of the stay.

5. ☐ The co-debtor stay of 11 U.S.C. § 1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, on the same terms and conditions as to the Debtor.

6. ☒ The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

7. ☐ The order is binding in any other bankruptcy case purporting to affect the Property filed not later than 2 years after the date of entry of such order, except that a debtor in a subsequent case may move for relief from the order based upon changed circumstances or for good cause shown, after notice and hearing.

8. ☐ The order is binding and effective in any bankruptcy case commenced by or against the Debtor for a period of 180 days, so that no further automatic stay shall arise in that case as to the Property.

9. ☐ The order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days, so that no further stay shall arise in that case as to the Property.

10. ☐ The order is binding and effective in any future bankruptcy case, no matter who the debtor may be
    ☐ without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

11. ☐ If relief from stay is not granted, the court orders adequate protection.

12. ☐ See continuation page for other relief requested

Date:  08/21/2025

HEMAR, ROUSSO & HEALD, LLP
Print name of law firm

JENNIFER WITHERELL CRASTZ
Print name of individual Movant or attorney for Movant


Signature of individual Movant or attorney for Movant

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                                    Page 5                          **F 4001-1.RFS.PP.MOTION**

# PERSONAL PROPERTY DECLARATION

I, (*name of declarant*)  JASMINE KIM _____, declare:

1.  I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto.  I am over 18 years of age.  I have knowledge regarding Movant's interest in the Property (*specify*):

    a.  ☐  I am the Movant.

    b.  ☒  I am employed by Movant as (*title and capacity*): Executive Vice President & Chief Credit Officer

    c.  ☐  Other (*specify*):


2.  a.  ☐  I am one of the custodians of the books, records and files of Movant that pertain to loans, leases, or extensions of credit given to Debtor concerning the Property.  I have personally worked on books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the acts, conditions or events to which they relate.  Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event.  The business records are available for inspection and copies can be submitted to the court if required.

    b.  ☐  Other (see attached):


3.  The Property is:

    a.  ☐  Vehicle (*year, manufacturer, type, model and year*):

        *Vehicle Identification Number*:
        *Location of vehicle (if known)*:

    b.  ☐  Equipment (*manufacturer, type, and characteristics*):

        *Serial number(s)*:
        *Location (if known)*:

    c.  ☒  Other personal property (*type, identifying information, and location*):

        Debtor's business assets, in debtor's possession, including accounts receivable.

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

4.  The nature of Debtor's interest in the Property is:

   a.  ☒  Sole owner

   b.  ☐  Co-owner (*specify*):

   c.  ☐  Lessee

   d.  ☐  Other (*specify*):

   e.  ☐  Debtor ☐ did ☐ did not   list the Property in the schedules filed in this case.

5.  ☐  The lease matured or was rejected on (*date*) _____:

   a.  ☐  rejected

     (1)  ☐  by operation of law.

     (2)  ☐  by order of the court.

   b.  ☐  matured.

6.  Movant has a perfected security interest in the Property.

   a.  ☒  A true and correct copy of the promissory note or other document that evidences the debt owed by the Debtor to Movant is attached as Exhibit __1__.

   b.  ☐  The Property is a motor vehicle, boat, or other personal property for which a certificate of title is provided for by state law. True and correct copies of the following items are attached to this motion:

     (1)  ☐  Certificate of title ("pink slip") (Exhibit _____).

     (2)  ☐  Vehicle or other lease agreement (Exhibit _____).

     (3)  ☐  Security agreement (Exhibit _____).

     (4)  ☐  Other evidence of a security interest (Exhibit _____).

   c.  ☒  The Property is equipment, intangibles, or other personal property for which a certificate of title is not provided for by state law. True and correct copies of the following items are attached to this motion:

     (1)  ☒  Security agreement (Exhibit __2__).

     (2)  ☒  UCC-1 financing statement (Exhibit __3__).

     (3)  ☐  UCC financing statement search results (Exhibit _____).

     (4)  ☐  Recorded or filed leases (Exhibit _____).

     (5)  ☐  Other evidence of perfection of a security interest (Exhibit _____).

   d.  ☐  The Property is consumer goods.  True and correct copies of the following items are attached to this motion:

     (1)  ☐  Credit application (Exhibit _____).

     (2)  ☐  Purchase agreement (Exhibit _____).

     (3)  ☐  Account statement showing payments made and balance due (Exhibit _____).

     (4)  ☐  Other evidence of perfection of a security interest (*if necessary under state law*) (Exhibit _____).

   e.  ☐  Other liens against the Property are attached as Exhibit _____.

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                                   Page 7                          **F 4001-1.RFS.PP.MOTION**

7. Status of Movant's debt:

    a.   The amount of the monthly payment: $ __35,080.01__ .

    b.   Number of payments that became due and were not tendered:   ☒6 prepetition  ☒11 postpetition.

    c.   Total amount in arrears: $ __599,686.76__ .

    d.   Last payment received on (*date*): __12/16/2024__ .

    e.   Future payments due by the anticipated hearing date (*if applicable*): _____
       An additional payment of $ __35,080.01__ will come due on (*date*) __09/01/2025__ , and on
       the __1st__ day of each month thereafter.  If the payment is not received by the __10th__
       day of the month, a late charge of $ __1,754.00__ will be charged under the terms of the loan.

8. ☒ Attached as Exhibit __5__ is a true and correct copy of a POSTPETITION payment history that accurately
    reflects the dates and amounts of all payments made by the Debtor since the petition date.

9. Amount of Movant's debt:

    a.   Principal:......................................................................................... $ __1,637,808.09__
    b.   Accrued interest: ........................................................................... $ __243,520.59__
    c.   Costs (attorney's fees, late charges, other costs):............................ $ __34,760.14__
    d.   Advances (property taxes, insurance): ............................................ $ _____
    e.   TOTAL CLAIM as of __08/11/2025__ :............................................... $ __1,916,088.82__

10. ☒ (*Chapter 7 and 11 cases only*) Valuation: The fair market value of the Property is: $ __278,128.00__ (accounts receivable)
    This valuation is based upon the following supporting evidence:

    a.   ☐ This is the value stated for property of this year, make, model, and general features in the reference guide
       most commonly used source for valuation data used by Movant in the ordinary course of its business for
       determining the value of this type of property.  True and correct copies of the relevant excerpts of the most
       recent edition of the reference guide are attached as Exhibit _____ .

    b.   ☐ This is the value determined by an appraisal or other expert evaluation.  True and correct copies of the
       expert's report and/or declaration are attached as Exhibit _____ .

    c.   ☒ The Debtor's admissions in the Debtor's schedules filed in the case.  True and correct copies of the relevant
       portions of the Debtor's schedules are attached as Exhibit __6__ .

    d.   ☐ Other basis for valuation (*specify*): _____

---

**NOTE:**  If valuation is contested, supplemental declarations providing additional foundation for the
            opinions of value should be submitted.

---

11. Calculation of equity in Property:

    a.   ☒ **11 U.S.C. § 362(d)(1) - Equity Cushion:**

       I calculate that the value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s)
       senior to Movant's debt is $ __0.00__ and is __0__ % of the fair market value of the
       Property.

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                       Page 8                       **F 4001-1.RFS.PP.MOTION**

b. ☒ **11 U.S.C. § 362(d)(2)(A) - Equity**:

By subtracting the total amount of all liens on the Property from the value of the Property as set forth in Paragraph 10 above, I calculate that the Debtor's equity in the Property is $ 0.00 _____ .

12. ☒ The fair market value of the Property is declining because:
Neither Debtor nor the Trustee have attempted to collect on the A/R since the bankruptcy case was filed. The more time that passes, the less collectible the A/R will be.

13. ☐ The Debtor's intent is to surrender the Property.  A true and correct copy of the Debtor's statement of intentions is attached as Exhibit _____ .

14. ☐ Movant regained possession of the Property on (*date*) _____, which is:  ☐ prepetition  ☐ postpetition.

15. ☐ (*Chapter 12 or 13 cases only*) Status of Movant's debt and other bankruptcy case information:

a. The 341(a) meeting of creditors is currently scheduled for (or concluded on) (*date*) _____
A plan confirmation hearing is currently scheduled for (or concluded on) (*date*) _____
The plan was confirmed on (*if applicable*) (*date*) _____

b. Postpetition preconfirmation payments due BUT REMAINING UNPAID after the filing of the case:

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

(See attachment for additional breakdown of information attached as Exhibit _____ .)

c. Postconfirmation payments due BUT REMAINING UNPAID after the plan confirmation date (*if applicable*):

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

d. Postpetition advances or other charges due but unpaid:      $
(*For details of type and amount, see Exhibit _____*)

e. Attorneys' fees and costs:      $
(*For details of type and amount, see Exhibit _____*)

f. Less suspense account or partial paid balance:      $ [            ]

TOTAL POSTPETITION DELINQUENCY:      $

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                              Page 9                              **F 4001-1.RFS.PP.MOTION**

g. ☐ The entire claim is provided for in the chapter 12 or 13 plan and postpetition plan payments are delinquent. The plan payment history is attached as Exhibit _____. See attached declaration(s) of chapter 12 trustee or 13 trustee regarding receipt of payments under the plan (*attach LBR form F 4001-1.DEC.AGENT.TRUSTEE*).

16. ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with Debtor.

17. ☐ The bankruptcy case was filed in bad faith:

a. ☐ Movant is the only creditor or one of few creditors listed in the Debtor's case commencement documents.

b. ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

c. ☐ The Debtor filed only a few case commencement documents. Schedules and a statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

d. ☐ Other (*specify*):


18. ☐ The filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

a. ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval. See attached continuation page for facts establishing the scheme.

b. ☐ Multiple bankruptcy cases affecting the Property:

(1) Case name: _____
Chapter: _____    Case number: _____
Date filed: _____    Date discharged: _____    Date dismissed: _____
Relief from stay regarding the Property ☐ was  ☐ was not  granted.

(2) Case name: _____
Chapter: _____    Case number: _____
Date filed: _____    Date discharged: _____    Date dismissed: _____
Relief from stay regarding the Property ☐ was  ☐ was not  granted.

(3) Case name: _____
Chapter: _____    Case number: _____
Date filed: _____    Date discharged: _____    Date dismissed: _____
Relief from stay regarding the Property ☐ was  ☐ was not  granted.

☐ See attached continuation page for more information about other bankruptcy cases affecting the Property.

☐ See attached continuation page for additional facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, and defraud creditors.

19. ☐ Enforcement actions taken after the bankruptcy petition was filed are specified in the attached supplemental declaration(s).

a. ☐ These actions were taken before Movant knew the bankruptcy case had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*                                            Page 10                                            **F 4001-1.RFS.PP.MOTION**

b. ☐ Although Movant knew the bankruptcy case was filed, Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

c. ☐ For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 8-26-2025 | JASMINE KIM | |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                                    Page 11                                    **F 4001-1.RFS.PP.MOTION**

# EXHIBIT 1

 U.S. Small Business Administration

# NOTE

| SBA Loan # | 7009 |
|---|---|
| SBA Loan Name | CROWNCO INC. |
| Date | 05-22-2019 |
| Loan Amount | $2,580,000.00 |
| Interest Rate | Variable |
| Borrower | CROWNCO INC. and CHARLES E MORRISON |
| Operating Company | N/A |
| Lender | CENTERSTONE SBA LENDING, INC. |

**1.PROMISE TO PAY:**

In return for the Loan, Borrower promises to pay to the order of Lender the amount of **Two Million Five Hundred Eighty Thousand and 00/100** Dollars , interest on the unpaid principal balance, and all other amounts required by this Note.

**2.DEFINITIONS:**

"Collateral" means any property taken as security for payment of this Note or any guarantee of this Note.

"Guarantor" means each person or entity that signs a guarantee of payment of this Note.

"Loan" means the loan evidenced by this Note.

"Loan Documents" means the documents related to this loan signed by Borrower, any Guarantor, or anyone who pledges collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.

**3.PAYMENT TERMS:**

Borrower must make all payments at the place Lender designates. The payment terms for this Note are:

The interest rate on this Note will fluctuate. The initial interest rate is **8.15%** per year. This initial rate is the Prime Rate in effect on the first business day of the month in which SBA received the loan application, plus **2.65%**. The initial interest rate must remain in effect until the first change period begins unless changed in accordance with SOP 50 10.

Borrower must pay one payment of interest only on the disbursed principal balance **one** month from the month of initial disbursement on this Note; payment must be made on the **first calendar day** in the month it is due.

Borrower must pay principal and interest payments of **$31,680.00** every month beginning **two** months from the month of initial disbursement on this Note; payments must be made on the **first calendar day** in the months they are due.

Lender will apply each installment payment first to pay interest accrued to the day Lender receives the payment, then to bring principal current, then to pay any late fees, and will apply any remaining balance to reduce principal.

The interest rate will be adjusted **every calendar quarter** (the "change period"), beginning **July 1, 2019** (date of first rate adjustment).

The "Prime Rate" is the Prime Rate in effect on the first business day of the month (as published in the **Wall Street Journal** newspaper ) in which SBA received the application, or the first day of the month in which any interest rate change occurs. Base Rates will be rounded to two decimal places with .004 being rounded down and .005 being rounded up.

The adjusted interest rate will be **2.65%** above the Prime Rate. Lender will adjust the interest rate on the first calendar day of each change period. The change in interest rate is effective on that day whether or not Lender gives Borrower notice of the change.

The interest rate identified in the Note may not be changed during the life of the Loan unless changed in accordance with SOP 50 10.

The interest rate adjustment period may only be changed in accordance with SOP 50 10.

Lender must adjust the payment amount at least annually as needed to amortize principal over the remaining term of the note.

If SBA purchases the guaranteed portion of the unpaid principal balance, the interest rate becomes fixed at the rate in effect at the time of the earliest uncured payment default. If there is no uncured payment default, the rate becomes fixed at the rate in effect at the time of purchase.

**Loan Prepayment:**

Notwithstanding any provision in this Note to the contrary:

> **Borrower may prepay this Note.** Borrower may prepay 20 percent or less of the unpaid principal balance at any time without notice. If Borrower prepays more than 20 percent and the Loan has been sold on the secondary market, Borrower must:
>
> > a. Give Lender written notice;
> >
> > b. Pay all accrued interest; and
> >
> > c. If the prepayment is received less than 21 days from the date Lender receives the notice, pay an amount equal to 21 days' interest from the date lender receives the notice, less any interest accrued during the 21 days and paid under subparagraph b., above.
>
> If Borrower does not prepay within 30 days from the date Lender receives the notice, Borrower must give Lender a new notice.

All remaining principal and accrued interest is due and payable **10 years** from **date of initial disbursement.**

**Late Charge:** If a payment on this Note is more than **10 days** late, Lender may charge Borrower a late fee of up to **5.00%** of the unpaid portion of the regularly scheduled payment.

**4.DEFAULT:**  Borrower is in default under this Note if Borrower does not make a payment when due under this Note, or if Borrower or Operating Company:

A.  Fails to do anything required by this Note and other Loan Documents;

B.  Defaults on any other loan with Lender;

C.  Does not preserve, or account to Lender's satisfaction for, any of the Collateral or its proceeds;

D.  Does not disclose, or anyone acting on their behalf does not disclose, any material fact to Lender or SBA;

E.  Makes, or anyone acting on their behalf makes, a materially false or misleading representation to Lender or SBA;

F.  Defaults on any loan or agreement with another creditor, if Lender believes the default may materially affect Borrower's ability to pay this Note;

G.  Fails to pay any taxes when due

H.  Becomes the subject of a proceeding under any bankruptcy or insolvency law;

I.  Has a receiver or liquidator appointed for any part of their business or property;

J.  Makes an assignment for the benefit of creditors;

K.  Has any adverse change in financial condition or business operation that Lender believes may materially affect Borrower's ability to pay this Note;

L.  Reorganizes, merges, consolidates, or otherwise changes ownership or business structure without Lender's prior written consent; or

M.  Becomes the subject of a civil or criminal action that Lender believes may materially affect Borrower's ability to pay this Note.

**5.LENDER'S RIGHTS IF THERE IS A DEFAULT:**  Without notice or demand and without giving up any of its rights, Lender may:

A.  Require immediate payment of all amounts owing under this Note;

B.  Collect all amounts owing from any Borrower or Guarantor;

C.  File suit and obtain judgment;

D.  Take possession of any Collateral; or

E.  Sell, lease, or otherwise dispose of, any Collateral at public or private sale, with or without advertisement.

**6.LENDER'S GENERAL POWERS:**  Without notice and without Borrower's consent, Lender may:

A.  Bid on or buy the Collateral at its sale or the sale of another lienholder, at any price it chooses;

B.  Incur expenses to collect amounts due under this Note, enforce the terms of this Note or any other Loan Document, and preserve or dispose of the Collateral. Among other things, the expenses may include payments for property taxes, prior liens, insurance, appraisals, environmental remediation costs, and reasonable attorney's fees and costs. If Lender incurs such expenses, it may demand immediate repayment from Borrower or add the expenses to the principal balance;

C.  Release anyone obligated to pay this Note;

D.  Compromise, release, renew, extend or substitute any of the Collateral; and

E.  Take any action necessary to protect the Collateral or collect amounts owing on this Note.

**7.WHEN FEDERAL LAW APPLIES:**   When SBA is the holder, this Note will be interpreted and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Note, Borrower may not claim or assert against SBA any local or state law to deny any obligation, defeat any claim of SBA, or preempt federal law.

**8.SUCCESSORS AND ASSIGNS:**   Under this Note, Borrower and Operating Company include the successors of each, and Lender includes its successors and assigns.

**9.GENERAL PROVISIONS:**

**A.**   All individuals and entities signing this Note are jointly and severally liable.

**B.**   Borrower waives all suretyship defenses.

**C.**   Borrower must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

**D.**   Lender may exercise any of its rights separately or together, as many times and in any order it chooses. Lender may delay or forgo enforcing any of its rights without giving up any of them.

**E.**   Borrower may not use an oral statement of Lender or SBA to contradict or alter the written terms of this Note.

**F.**   If any part of this Note is unenforceable, all other parts remain in effect.

**G.**   To the extent allowed by law, Borrower waives all demands and notices in connection with this Note, including presentment, demand, protest, and notice of dishonor. Borrower also waives any defenses based upon any claim that Lender did not obtain any guarantee; did not obtain, perfect, or maintain a lien upon Collateral; impaired Collateral; or did not obtain the fair market value of Collateral at a sale.

**10.STATE-SPECIFIC PROVISIONS:**
NONE

**11. BORROWER'S NAME(S) AND SIGNATURE(S):**

By signing below, each individual or entity becomes obligated under this Note as Borrower.

BORROWER:

X _____
CHARLES E MORRISON

CROWNCO INC.

By _____
CHARLES E MORRISON, President &
Secretary of CROWNCO INC.

# BUSINESS LOAN AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $2,580,000.00 | 05-22-2019 | 05-01-2044 | ▮▮▮▮ | | | KRY | K.Y. |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:**  CROWNCO INC.
CHARLES E MORRISON
26697 PIERCE CIRCLE
MURRIETA, CA  92562

**Lender:**  CENTERSTONE SBA LENDING, INC.
700 S. FLOWER ST., SUITE 950
LOS ANGELES, CA  90017

THIS BUSINESS LOAN AGREEMENT dated May 22, 2019, is made and executed between CROWNCO INC. and CHARLES E MORRISON ("Borrower") and CENTERSTONE SBA LENDING, INC. ("Lender") on the following terms and conditions. Borrower has received prior commercial loans from Lender or has applied to Lender for a commercial loan or loans or other financial accommodations, including those which may be described on any exhibit or schedule attached to this Agreement. Borrower understands and agrees that: (A) in granting, renewing, or extending any Loan, Lender is relying upon Borrower's representations, warranties, and agreements as set forth in this Agreement; (B) the granting, renewing, or extending of any Loan by Lender at all times shall be subject to Lender's sole judgment and discretion; and (C) all such Loans shall be and remain subject to the terms and conditions of this Agreement.

**TERM.** This Agreement shall be effective as of May 22, 2019, and shall continue in full force and effect until such time as all of Borrower's Loans in favor of Lender have been paid in full, including principal, interest, costs, expenses, attorneys' fees, and other fees and charges, or until such time as the parties may agree in writing to terminate this Agreement.

**CONDITIONS PRECEDENT TO EACH ADVANCE.** Lender's obligation to make the initial Advance and each subsequent Advance under this Agreement shall be subject to the fulfillment to Lender's satisfaction of all of the conditions set forth in this Agreement and in the Related Documents.

**Loan Documents.** Borrower shall provide to Lender the following documents for the Loan: (1) the Note; (2) Security Agreements granting to Lender security interests in the Collateral; (3) financing statements and all other documents perfecting Lender's Security Interests; (4) evidence of insurance as required below; (5) together with all such Related Documents as Lender may require for the Loan; all in form and substance satisfactory to Lender and Lender's counsel.

**Payment of Fees and Expenses.** Borrower shall have paid to Lender all fees, charges, and other expenses which are then due and payable as specified in this Agreement or any Related Document.

**Representations and Warranties.** The representations and warranties set forth in this Agreement, in the Related Documents, and in any document or certificate delivered to Lender under this Agreement are true and correct.

**No Event of Default.** There shall not exist at the time of any Advance a condition which would constitute an Event of Default under this Agreement or under any Related Document.

**MULTIPLE BORROWERS.** This Agreement has been executed by multiple obligors who are referred to in this Agreement individually, collectively and interchangeably as "Borrower." Unless specifically stated to the contrary, the word "Borrower" as used in this Agreement, including without limitation all representations, warranties and covenants, shall include all Borrowers. Borrower understands and agrees that, with or without notice to any one Borrower, Lender may (A) make one or more additional secured or unsecured loans or otherwise extend additional credit with respect to any other Borrower; (B) with respect to any other Borrower alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any indebtedness, including increases and decreases of the rate of interest on the indebtedness; (C) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral; (D) release, substitute, agree not to sue, or deal with any one or more of Borrower's or any other Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) determine how, when and what application of payments and credits shall be made on any indebtedness; (F) apply such security and direct the order or manner of sale of any Collateral, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) sell, transfer, assign or grant participations in all or any part of the Loan; (H) exercise or refrain from exercising any rights against Borrower or others, or otherwise act or refrain from acting; (I) settle or compromise any indebtedness; and (J) subordinate the payment of all or any part of any of Borrower's indebtedness to Lender to the payment of any liabilities which may be due Lender or others.

**REPRESENTATIONS AND WARRANTIES.** Borrower represents and warrants to Lender, as of the date of this Agreement, as of the date of each disbursement of loan proceeds, as of the date of any renewal, extension or modification of any Loan, and at all times Borrower's indebtedness exists:

**Organization.** CROWNCO INC. is a corporation for profit which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of California. CROWNCO INC. is duly authorized to transact business in all other states in which CROWNCO INC. is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which CROWNCO INC. is doing business. Specifically, CROWNCO INC. is, and at all times shall be, duly qualified as a foreign corporation in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition. CROWNCO INC. has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage. CROWNCO INC. maintains its principal office at 26697 PIERCE CIRCLE, MURRIETA, CA 92562. Unless CROWNCO INC. has designated otherwise in writing, this is the principal office at which CROWNCO INC. keeps its books and records including its records concerning the Collateral. CROWNCO INC. will notify Lender prior to any change in the location of CROWNCO INC.'s state of organization or any change in CROWNCO INC.'s name. CROWNCO INC. shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to CROWNCO INC. and CROWNCO INC.'s business activities.

CHARLES E MORRISON maintains an office at 41699 BROAD OAK STREET, MURRIETA, CA 92562. Unless CHARLES E MORRISON has designated otherwise in writing, the principal office is the office at which CHARLES E MORRISON keeps its books and records including its records concerning the Collateral. CHARLES E MORRISON will notify Lender prior to any change in the location of CHARLES E MORRISON's principal office address or any change in CHARLES E MORRISON's name. CHARLES E MORRISON shall do all things necessary to comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to CHARLES E MORRISON and CHARLES E MORRISON's business activities.

# BUSINESS LOAN AGREEMENT
## (Continued)

Loan No: 207                                                                                           Page 2

---

**Assumed Business Names.** Borrower has filed or recorded all documents or filings required by law relating to all assumed business names used by Borrower. Excluding the name of Borrower, the following is a complete list of all assumed business names under which Borrower does business:

| Borrower | Assumed Business Name | Filing Location | Date |
|----------|----------------------|-----------------|------|
| CHARLES E MORRISON | | | |

**Authorization.** Borrower's execution, delivery, and performance of this Agreement and all the Related Documents do not conflict with, result in a violation of, or constitute a default under (1) any provision of (a) Borrower's articles of incorporation or organization, or bylaws, or (b) any agreement or other instrument binding upon Borrower or (2) any law, governmental regulation, court decree, or order applicable to Borrower or to Borrower's properties.

**Financial Information.** Each of Borrower's financial statements supplied to Lender truly and completely disclosed Borrower's financial condition as of the date of the statement, and there has been no material adverse change in Borrower's financial condition subsequent to the date of the most recent financial statement supplied to Lender. Borrower has no material contingent obligations except as disclosed in such financial statements.

**Legal Effect.** This Agreement constitutes, and any instrument or agreement Borrower is required to give under this Agreement when delivered will constitute legal, valid, and binding obligations of Borrower enforceable against Borrower in accordance with their respective terms.

**Properties.** Except as contemplated by this Agreement or as previously disclosed in Borrower's financial statements or in writing to Lender and as accepted by Lender, and except for property tax liens for taxes not presently due and payable, Borrower owns and has good title to all of Borrower's properties free and clear of all Security Interests, and has not executed any security documents or financing statements relating to such properties. All of Borrower's properties are titled in Borrower's legal name, and Borrower has not used or filed a financing statement under any other name for at least the last five (5) years.

**Hazardous Substances.** Except as disclosed to and acknowledged by Lender in writing, Borrower represents and warrants that: (1) During the period of Borrower's ownership of the Collateral, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from any of the Collateral. (2) Borrower has no knowledge of, or reason to believe that there has been (a) any breach or violation of any Environmental Laws; (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Collateral by any prior owners or occupants of any of the Collateral; or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters. (3) Neither Borrower nor any tenant, contractor, agent or other authorized user of any of the Collateral shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from any of the Collateral; and any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations, and ordinances, including without limitation all Environmental Laws. Borrower authorizes Lender and its agents to enter upon the Collateral to make such inspections and tests as Lender may deem appropriate to determine compliance of the Collateral with this section of the Agreement. Any inspections or tests made by Lender shall be at Borrower's expense and for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Borrower or to any other person. The representations and warranties contained herein are based on Borrower's due diligence in investigating the Collateral for hazardous waste and Hazardous Substances. Borrower hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Borrower becomes liable for cleanup or other costs under any such laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Agreement or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release of a hazardous waste or substance on the Collateral. The provisions of this section of the Agreement, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the termination, expiration or satisfaction of this Agreement and shall not be affected by Lender's acquisition of any interest in any of the Collateral, whether by foreclosure or otherwise.

**Litigation and Claims.** No litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Borrower is pending or threatened, and no other event has occurred which may materially adversely affect Borrower's financial condition or properties, other than litigation, claims, or other events, if any, that have been disclosed to and acknowledged by Lender in writing.

**Taxes.** To the best of Borrower's knowledge, all of Borrower's tax returns and reports that are or were required to be filed, have been filed, and all taxes, assessments and other governmental charges have been paid in full, except those presently being or to be contested by Borrower in good faith in the ordinary course of business and for which adequate reserves have been provided.

**Lien Priority.** Unless otherwise previously disclosed to Lender in writing, Borrower has not entered into or granted any Security Agreements, or permitted the filing or attachment of any Security Interests on or affecting any of the Collateral directly or indirectly securing repayment of Borrower's Loan and Note, that would be prior or that may in any way be superior to Lender's Security Interests and rights in and to such Collateral.

**Binding Effect.** This Agreement, the Note, all Security Agreements (if any), and all Related Documents are binding upon the signers thereof, as well as upon their successors, representatives and assigns, and are legally enforceable in accordance with their respective terms.

**AFFIRMATIVE COVENANTS.** Borrower covenants and agrees with Lender that, so long as this Agreement remains in effect, Borrower will:

**Notices of Claims and Litigation.** Promptly inform Lender in writing of (1) all material adverse changes in Borrower's financial condition, and (2) all existing and all threatened litigation, claims, investigations, administrative proceedings or similar actions affecting Borrower or any Guarantor which could materially affect the financial condition of Borrower or the financial condition of any Guarantor.

**Financial Records.** Maintain its books and records in accordance with GAAP, applied on a consistent basis, and permit Lender to examine and audit Borrower's books and records at all reasonable times.

**Financial Statements.** Furnish Lender with the following:

**Annual Statements.** As soon as available after the end of each fiscal year, Borrower's balance sheet and income statement for the year ended, prepared by Borrower in form satisfactory to Lender.

**Tax Returns.** As soon as available after the applicable filing date for the tax reporting period ended, Borrower's Federal and other governmental tax returns, prepared by a tax professional satisfactory to Lender.

## BUSINESS LOAN AGREEMENT
### (Continued)

Loan No:   207

Page 3

---

**Additional Requirements.** Borrower shall cause Guarantor to provide Lender with a signed copy of year-end financial statements within 120 days of the fiscal year end or federal tax returns within 30 days of the legal federal filing due date.

All financial reports required to be provided under this Agreement shall be prepared in accordance with GAAP, applied on a consistent basis, and certified by Borrower as being true and correct.

**Additional Information.** Furnish such additional information and statements, as Lender may request from time to time.

**Additional Requirements.** 1. Monthly loan payments must be automatically debited from the borrower's checking account at other bank during the term of loan.

**Insurance.** Maintain fire and other risk insurance, public liability insurance, and such other insurance as Lender may require with respect to Borrower's properties and operations, in form, amounts, coverages and with insurance companies acceptable to Lender. Borrower, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Borrower or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest for the Loans, Borrower will provide Lender with such lender's loss payable or other endorsements as Lender may require.

**Insurance Reports.** Furnish to Lender, upon request of Lender, reports on each existing insurance policy showing such information as Lender may reasonably request, including without limitation the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the properties insured; (5) the then current property values on the basis of which insurance has been obtained, and the manner of determining those values; and (6) the expiration date of the policy. In addition, upon request of Lender (however not more often than annually), Borrower will have an independent appraiser satisfactory to Lender determine, as applicable, the actual cash value or replacement cost of any Collateral. The cost of such appraisal shall be paid by Borrower.

**Other Agreements.** Comply with all terms and conditions of all other agreements, whether now or hereafter existing, between Borrower and any other party and notify Lender immediately in writing of any default in connection with any other such agreements.

**Loan Proceeds.** Use all Loan proceeds solely for Borrower's business operations, unless specifically consented to the contrary by Lender in writing.

**Taxes, Charges and Liens.** Pay and discharge when due all of its indebtedness and obligations, including without limitation all assessments, taxes, governmental charges, levies and liens, of every kind and nature, imposed upon Borrower or its properties, income, or profits, prior to the date on which penalties would attach, and all lawful claims that, if unpaid, might become a lien or charge upon any of Borrower's properties, income, or profits. Provided however, Borrower will not be required to pay and discharge any such assessment, tax, charge, levy, lien or claim so long as (1) the legality of the same shall be contested in good faith by appropriate proceedings, and (2) Borrower shall have established on Borrower's books adequate reserves with respect to such contested assessment, tax, charge, levy, lien, or claim in accordance with GAAP.

**Performance.** Perform and comply, in a timely manner, with all terms, conditions, and provisions set forth in this Agreement, in the Related Documents, and in all other instruments and agreements between Borrower and Lender. Borrower shall notify Lender immediately in writing of any default in connection with any agreement.

**Operations.** Maintain executive and management personnel with substantially the same qualifications and experience as the present executive and management personnel; provide written notice to Lender of any change in executive and management personnel; conduct its business affairs in a reasonable and prudent manner.

**Environmental Studies.** Promptly conduct and complete, at Borrower's expense, all such investigations, studies, samplings and testings as may be requested by Lender or any governmental authority relative to any substance, or any waste or by-product of any substance defined as toxic or a hazardous substance under applicable federal, state, or local law, rule, regulation, order or directive, at or affecting any property or any facility owned, leased or used by Borrower.

**Compliance with Governmental Requirements.** Comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the conduct of Borrower's properties, businesses and operations, and to the use or occupancy of the Collateral, including without limitation, the Americans With Disabilities Act. Borrower may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Borrower has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Collateral are not jeopardized. Lender may require Borrower to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Inspection.** Permit employees or agents of Lender at any reasonable time to inspect any and all Collateral for the Loan or Loans and Borrower's other properties and to examine or audit Borrower's books, accounts, and records and to make copies and memoranda of Borrower's books, accounts, and records. If Borrower now or at any time hereafter maintains any records (including without limitation computer generated records and computer software programs for the generation of such records) in the possession of a third party, Borrower, upon request of Lender, shall notify such party to permit Lender free access to such records at all reasonable times and to provide Lender with copies of any records it may request, all at Borrower's expense.

**Compliance Certificates.** Unless waived in writing by Lender, provide Lender at least annually, with a certificate executed by Borrower's chief financial officer, or other officer or person acceptable to Lender, certifying that the representations and warranties set forth in this Agreement are true and correct as of the date of the certificate and further certifying that, as of the date of the certificate, no Event of Default exists under this Agreement.

**Environmental Compliance and Reports.** Borrower shall comply in all respects with any and all Environmental Laws; not cause or permit to exist, as a result of an intentional or unintentional action or omission on Borrower's part or on the part of any third party, on property owned and/or occupied by Borrower, any environmental activity where damage may result to the environment, unless such environmental activity is pursuant to and in compliance with the conditions of a permit issued by the appropriate federal, state or local governmental authorities; shall furnish to Lender promptly and in any event within thirty (30) days after receipt thereof a copy of any notice, summons, lien, citation, directive, letter or other communication from any governmental agency or instrumentality concerning any intentional or unintentional action or omission on Borrower's part in connection with any environmental activity whether or not there is damage to the environment and/or other natural resources.

**Additional Assurances.** Make, execute and deliver to Lender such promissory notes, mortgages, deeds of trust, security agreements, assignments, financing statements, instruments, documents and other agreements as Lender or its attorneys may reasonably request to evidence and secure the Loans and to perfect all Security Interests.

**RECOVERY OF ADDITIONAL COSTS.** If the imposition of or any change in any law, rule, regulation, guideline, or generally accepted accounting principle, or the interpretation or application of any thereof by any court, administrative or governmental authority, or standard-setting

# BUSINESS LOAN AGREEMENT
## (Continued)

Loan No:   207                                                                                      Page 4

organization (including any request or policy not having the force of law) shall impose, modify or make applicable any taxes (except federal, state or local income or franchise taxes imposed on Lender), reserve requirements, capital adequacy requirements or other obligations which would  (A)  increase the cost to Lender for extending or maintaining the credit facilities to which this Agreement relates,  (B)  reduce the amounts payable to Lender under this Agreement or the Related Documents, or  (C)  reduce the rate of return on Lender's capital as a consequence of Lender's obligations with respect to the credit facilities to which this Agreement relates, then Borrower agrees to pay Lender such additional amounts as will compensate Lender therefor, within five (5) days after Lender's written demand for such payment, which demand shall be accompanied by an explanation of such imposition or charge and a calculation in reasonable detail of the additional amounts payable by Borrower, which explanation and calculations shall be conclusive in the absence of manifest error.

**LENDER'S EXPENDITURES.**  If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Borrower fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Borrower's failure to discharge or pay when due any amounts Borrower is required to discharge or pay under this Agreement or any Related Documents, Lender on Borrower's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on any Collateral and paying all costs for insuring, maintaining and preserving any Collateral.  All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Borrower.  All such expenses will become a part of the Indebtedness and, at Lender's option, will  (A)  be payable on demand;  (B)  be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either  (1)  the term of any applicable insurance policy; or  (2)  the remaining term of the Note; or  (C)  be treated as a balloon payment which will be due and payable at the Note's maturity.

**NEGATIVE COVENANTS.**  Borrower covenants and agrees with Lender that while this Agreement is in effect, Borrower shall not, without the prior written consent of Lender:

   **Indebtedness and Liens.**  (1)  Except for trade debt incurred in the normal course of business and indebtedness to Lender contemplated by this Agreement, create, incur or assume indebtedness for borrowed money, including capital leases,  (2)  sell, transfer, mortgage, assign, pledge, lease, grant a security interest in, or encumber any of Borrower's assets (except as allowed as Permitted Liens), or  (3)  sell with recourse any of Borrower's accounts, except to Lender.

   **Continuity of Operations.**  (1)  Engage in any business activities substantially different than those in which Borrower is presently engaged,  (2)  cease operations, liquidate, merge or restructure as a legal entity (whether by division or otherwise), consolidate with or acquire any other entity, change its name, convert to another type of entity or redomesticate, dissolve or transfer or sell Collateral out of the ordinary course of business, or  (3)  pay any dividends on Borrower's stock (other than dividends payable in its stock), provided, however that notwithstanding the foregoing, but only so long as no Event of Default has occurred and is continuing or would result from the payment of dividends, if Borrower is a "Subchapter S Corporation" (as defined in the Internal Revenue Code of 1986, as amended), Borrower may pay cash dividends on its stock to its shareholders from time to time in amounts necessary to enable the shareholders to pay income taxes and make estimated income tax payments to satisfy their liabilities under federal and state law which arise solely from their status as Shareholders of a Subchapter S Corporation because of their ownership of shares of Borrower's stock, or purchase or retire any of Borrower's outstanding shares or alter or amend Borrower's capital structure.

   **Loans, Acquisitions and Guaranties.**  (1)  Loan, invest in or advance money or assets to any other person, enterprise or entity,  (2)  purchase, create or acquire any interest in any other enterprise or entity, or  (3)  incur any obligation as surety or guarantor other than in the ordinary course of business.

   **Agreements.**  Enter into any agreement containing any provisions which would be violated or breached by the performance of Borrower's obligations under this Agreement or in connection herewith.

**CESSATION OF ADVANCES.**  If Lender has made any commitment to make any Loan to Borrower, whether under this Agreement or under any other agreement, Lender shall have no obligation to make Loan Advances or to disburse Loan proceeds if:  (A)  Borrower or any Guarantor is in default under the terms of this Agreement or any of the Related Documents or any other agreement that Borrower or any Guarantor has with Lender;  (B)  Borrower or any Guarantor dies, becomes incompetent or becomes insolvent, files a petition in bankruptcy or similar proceedings, or is adjudged a bankrupt;  (C)  there occurs a material adverse change in Borrower's financial condition, in the financial condition of any Guarantor, or in the value of any Collateral securing any Loan; or  (D)  any Guarantor seeks, claims or otherwise attempts to limit, modify or revoke such Guarantor's guaranty of the Loan or any other loan with Lender; or  (E)  Lender in good faith deems itself insecure, even though no Event of Default shall have occurred.

**DEFAULT.**  Each of the following shall constitute an Event of Default under this Agreement:

   **Payment Default.**  Borrower fails to make any payment when due under the Loan.

   **Other Defaults.**  Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

   **Default in Favor of Third Parties.**  Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's or any Grantor's property or Borrower's or any Grantor's ability to repay the Loans or perform their respective obligations under this Agreement or any of the Related Documents.

   **False Statements.**  Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

   **Insolvency.**  The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

   **Defective Collateralization.**  This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

   **Creditor or Forfeiture Proceedings.**  Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender.  However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**BUSINESS LOAN AGREEMENT**
(Continued)

Loan No:   207                                                                                    Page 5

---

**Events Affecting Guarantor.**  Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Change in Ownership.**  Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.**  A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Loan is impaired.

**Insecurity.**  Lender in good faith believes itself insecure.

**Right to Cure.**  If any default, other than a default on Indebtedness, is curable and if Borrower or Grantor, as the case may be, has not been given a notice of a similar default within the preceding twelve (12) months, it may be cured if Borrower or Grantor, as the case may be, after Lender sends written notice to Borrower or Grantor, as the case may be, demanding cure of such default:  (1)  cure the default within fifteen (15) days; or  (2)  if the cure requires more than fifteen (15) days, immediately initiate steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continue and complete all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**EFFECT OF AN EVENT OF DEFAULT.**  If any Event of Default shall occur, except where otherwise provided in this Agreement or the Related Documents, all commitments and obligations of Lender under this Agreement or the Related Documents or any other agreement immediately will terminate (including any obligation to make further Loan Advances or disbursements), and, at Lender's option, all Indebtedness immediately will become due and payable, all without notice of any kind to Borrower, except that in the case of an Event of Default of the type described in the "Insolvency" subsection above, such acceleration shall be automatic and not optional.  In addition, Lender shall have all the rights and remedies provided in the Related Documents or available at law, in equity, or otherwise.  Except as may be prohibited by applicable law, all of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently.  Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Borrower or of any Grantor shall not affect Lender's right to declare a default and to exercise its rights and remedies.

**MISCELLANEOUS PROVISIONS.**  The following miscellaneous provisions are a part of this Agreement:

**Amendments.**  This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement.  No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.**  Borrower agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement.  Lender may hire or pay someone else to help enforce this Agreement, and Borrower shall pay the costs and expenses of such enforcement.  Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services.  Borrower also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.**  Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Consent to Loan Participation.**  Borrower agrees and consents to Lender's sale or transfer, whether now or later, of one or more participation interests in the Loan to one or more purchasers, whether related or unrelated to Lender.  Lender may provide, without any limitation whatsoever, to any one or more purchasers, or potential purchasers, any information or knowledge Lender may have about Borrower or about any other matter relating to the Loan, and Borrower hereby waives any rights to privacy Borrower may have with respect to such matters.  Borrower additionally waives any and all notices of sale of participation interests, as well as all notices of any repurchase of such participation interests.  Borrower also agrees that the purchasers of any such participation interests will be considered as the absolute owners of such interests in the Loan and will have all the rights granted under the participation agreement or agreements governing the sale of such participation interests.  Borrower further waives all rights of offset or counterclaim that it may have now or later against Lender or against any purchaser of such a participation interest and unconditionally agrees that either Lender or such purchaser may enforce Borrower's obligation under the Loan irrespective of the failure or insolvency of any holder of any interest in the Loan.  Borrower further agrees that the purchaser of any such participation interests may enforce its interests irrespective of any personal claims or defenses that Borrower may have against Lender.

**Applicable Law.**  The Loan secured by this lien was made under a United States Small Business Administration (SBA) nationwide program which uses tax dollars to assist small business owners.  If the United States is seeking to enforce this document, then under SBA regulations:  (a) When SBA is the holder of the Note, this document and all documents evidencing or securing this Loan will be construed in accordance with federal law.  (b) Lender or SBA may use local or state procedures for purposes such as filing papers, recording documents, giving notice, foreclosing liens, and other purposes.  By using these procedures, SBA does not waive any federal immunity from local or state control, penalty, tax or liability.  No Borrower or Guarantor may claim or assert against SBA any local or state law to deny any obligation of Borrower, or defeat any claim of SBA with respect to this Loan.  Any clause in this document requiring arbitration is not enforceable when SBA is the holder of the Note secured by this instrument.

**Choice of Venue.**  If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of LOS ANGELES County, State of California.

**Joint and Several Liability.**  All obligations of Borrower under this Agreement shall be joint and several, and all references to Borrower shall mean each and every Borrower.  This means that each Borrower signing below is responsible for all obligations in this Agreement.  Where any one or more of the parties is a corporation, partnership, limited liability company or similar entity, it is not necessary for Lender to inquire into the powers of any of the officers, directors, partners, members, or other agents acting or purporting to act on the entity's behalf, and any obligations made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Agreement.

**No Waiver by Lender.**  Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender.  No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right.  A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement.  No prior waiver by Lender, nor any course of dealing between Lender and Borrower, or between Lender and any Grantor, shall constitute a waiver of any of Lender's rights or of any of Borrower's or any Grantor's obligations as to any future transactions.  Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.**  Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier,

## BUSINESS LOAN AGREEMENT
### (Continued)

Loan No:    207                                                                                               Page 6

---

or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Borrower agrees to keep Lender informed at all times of Borrower's current address. Unless otherwise provided or required by law, if there is more than one Borrower, any notice given by Lender to any Borrower is deemed to be notice given to all Borrowers.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any person or circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other person or circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.** All covenants and agreements by or on behalf of Borrower contained in this Agreement or any Related Documents shall bind Borrower's successors and assigns and shall inure to the benefit of Lender and its successors and assigns. Borrower shall not, however, have the right to assign Borrower's rights under this Agreement or any interest therein, without the prior written consent of Lender.

**Survival of Representations and Warranties.** Borrower understands and agrees that in making the Loan, Lender is relying on all representations, warranties, and covenants made by Borrower in this Agreement or in any certificate or other instrument delivered by Borrower to Lender under this Agreement or the Related Documents. Borrower further agrees that regardless of any investigation made by Lender, all such representations, warranties and covenants will survive the making of the Loan and delivery to Lender of the Related Documents, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full, or until this Agreement shall be terminated in the manner provided above, whichever is the last to occur.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code. Accounting words and terms not otherwise defined in this Agreement shall have the meanings assigned to them in accordance with generally accepted accounting principles as in effect on the date of this Agreement:

**Advance.** The word "Advance" means a disbursement of Loan funds made, or to be made, to Borrower or on Borrower's behalf on a line of credit or multiple advance basis under the terms and conditions of this Agreement.

**Agreement.** The word "Agreement" means this Business Loan Agreement, as this Business Loan Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Business Loan Agreement from time to time.

**Borrower.** The word "Borrower" means CROWNCO INC. and CHARLES E MORRISON and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all property and assets granted as collateral security for a Loan, whether real or personal property, whether granted directly or indirectly, whether granted now or in the future, and whether granted in the form of a security interest, mortgage, collateral mortgage, deed of trust, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien, charge, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever, whether created by law, contract, or otherwise.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., Chapters 6.5 through 7.7 of Division 20 of the California Health and Safety Code, Section 25100, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**GAAP.** The word "GAAP" means generally accepted accounting principles.

**Grantor.** The word "Grantor" means each and all of the persons or entities granting a Security Interest in any Collateral for the Loan, including without limitation all Borrowers granting such a Security Interest.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Loan.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Borrower is responsible under this Agreement or under any of the Related Documents.

**Lender.** The word "Lender" means CENTERSTONE SBA LENDING, INC., its successors and assigns.

**Loan.** The word "Loan" means any and all loans and financial accommodations from Lender to Borrower whether now or hereafter existing, and however evidenced, including without limitation those loans and financial accommodations described herein or described on any exhibit or schedule attached to this Agreement from time to time.

**Note.** The word "Note" means the Note dated May 22, 2019 and executed by CROWNCO INC. and CHARLES E MORRISON in the principal amount of $2,580,000.00, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and

## BUSINESS LOAN AGREEMENT
### (Continued)

Loan No:    207

**Lender.** The word "Lender" means CENTERSTONE SBA LENDING, INC., its successors and assigns.

**Loan.** The word "Loan" means any and all loans and financial accommodations from Lender to Borrower whether now or hereafter existing, and however evidenced, including without limitation those loans and financial accommodations described herein or described on any exhibit or schedule attached to this Agreement from time to time.

**Note.** The word "Note" means the Note dated May 22, 2019 and executed by CROWNCO INC. and CHARLES E MORRISON in the principal amount of $2,580,000.00, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Permitted Liens.** The words "Permitted Liens" mean (1) liens and security interests securing Indebtedness owed by Borrower to Lender; (2) liens for taxes, assessments, or similar charges either not yet due or being contested in good faith; (3) liens of materialmen, mechanics, warehousemen, or carriers, or other like liens arising in the ordinary course of business and securing obligations which are not yet delinquent; (4) purchase money liens or purchase money security interests upon or in any properly acquired or held by Borrower in the ordinary course of business to secure indebtedness outstanding on the date of this Agreement or permitted to be incurred under the paragraph of this Agreement titled "Indebtedness and Liens"; (5) liens and security interests which, as of the date of this Agreement, have been disclosed to and approved by the Lender in writing; and (6) those liens and security interests which in the aggregate constitute an immaterial and insignificant monetary amount with respect to the net value of Borrower's assets.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Loan.

**Security Agreement.** The words "Security Agreement" mean and include without limitation any agreements, promises, covenants, arrangements, understandings or other agreements, whether created by law, contract, or otherwise, evidencing, governing, representing, or creating a Security Interest.

**Security Interest.** The words "Security Interest" mean, without limitation, any and all types of collateral security, present and future, whether in the form of a lien, charge, encumbrance, mortgage, deed of trust, security deed, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever whether created by law, contract, or otherwise.

BORROWER ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS BUSINESS LOAN AGREEMENT AND BORROWER AGREES TO ITS TERMS. THIS BUSINESS LOAN AGREEMENT IS DATED MAY 22, 2019.

BORROWER:

CROWNCO INC.

By: _____
    CHARLES E MORRISON, President & Secretary of
    CROWNCO INC.

X _____
    CHARLES E MORRISON, Individually

LENDER:

CENTERSTONE SBA LENDING, INC.

By: _____
    KRISTIN YOON, CREDIT UNDERWRITER

# EXHIBIT 2

# COMMERCIAL SECURITY AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $2,580,000.00 | 05-22-2019 | 05-01-2044 | ▉ | | | KRY | F-Y |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:**  CROWNCO INC.
CHARLES E MORRISON
26697 PIERCE CIRCLE
MURRIETA, CA 92562

**Lender:**  CENTERSTONE SBA LENDING, INC.
700 S. FLOWER ST., SUITE 850
LOS ANGELES, CA 90017

**Grantor:**  CROWNCO INC.
26697 PIERCE CIRCLE
MURRIETA, CA 92562

---

**THIS COMMERCIAL SECURITY AGREEMENT** dated May 22, 2019, is made and executed among CROWNCO INC. ("Grantor"); CROWNCO INC. and CHARLES E MORRISON ("Borrower"); and CENTERSTONE SBA LENDING, INC. ("Lender").

**GRANT OF SECURITY INTEREST.** For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

**COLLATERAL DESCRIPTION.** The word "Collateral" as used in this Agreement means the following described property, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located, in which Grantor is giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:

All inventory, equipment, accounts (including but not limited to all health-care-insurance receivables), chattel paper, instruments (including but not limited to all promissory notes), letter-of-credit rights, letters of credit, documents, deposit accounts, investment property, money, other rights to payment and performance, and general intangibles (including but not limited to all software and all payment intangibles); all oil, gas and other minerals before extraction; all oil, gas, other minerals and accounts constituting as-extracted collateral; all fixtures; all timber to be cut; all attachments, accessions, accessories, fittings, increases, tools, parts, repairs, supplies, and commingled goods relating to the foregoing property, and all additions, replacements of and substitutions for all or any part of the foregoing property; all insurance refunds relating to the foregoing property; all good will relating to the foregoing property; all records and data and embedded software relating to the foregoing property, and all equipment, inventory and software to utilize, create, maintain and process any such records and data on electronic media; and all supporting obligations relating to the foregoing property; all whether now existing or hereafter arising, whether now owned or hereafter acquired or whether now or hereafter subject to any rights in the foregoing property; and all products and proceeds (including but not limited to all insurance payments) of or relating to the foregoing property.

All Equipment, see Exhibit "A" attached hereto and made a part of

In addition, the word "Collateral" also includes all the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:

(A)  All accessions, attachments, accessories, tools, parts, supplies, replacements of and additions to any of the collateral described herein, whether added now or later.

(B)  All products and produce of any of the property described in this Collateral section.

(C)  All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.

(D)  All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

(E)  All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

**FUTURE ADVANCES.** In addition to the Note, this Agreement secures all future advances made by Lender to Borrower regardless of whether the advances are made a) pursuant to a commitment or b) for the same purposes.

**BORROWER'S WAIVERS AND RESPONSIBILITIES.** Except as otherwise required under this Agreement or by applicable law, (A) Borrower agrees that Lender need not tell Borrower about any action or inaction Lender takes in connection with this Agreement; (B) Borrower assumes the responsibility for being and keeping informed about the Collateral; and (C) Borrower waives any defenses that may arise because of any action or inaction of Lender, including without limitation any failure of Lender to realize upon the Collateral or any delay by Lender in realizing upon the Collateral; and Borrower agrees to remain liable under the Note no matter what action Lender takes or fails to take under this Agreement.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES.** Grantor warrants that: (A) this Agreement is executed at Borrower's request and not at the request of Lender; (B) Grantor has the full right, power and authority to enter into this Agreement and to pledge the Collateral to Lender; (C) Grantor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and (D) Lender has made no representation to Grantor about Borrower or Borrower's creditworthiness.

**GRANTOR'S WAIVERS.** Except as prohibited by applicable law, Grantor waives any right to require Lender to (A) make any presentment, protest, demand, or notice of any kind, including notice of change of any terms of repayment of the Indebtedness, default by Borrower or any other guarantor or surety, any action or nonaction taken by Borrower, Lender, or any other guarantor or surety of Borrower, or the creation of new or additional Indebtedness; (B) proceed against any person, including Borrower, before proceeding against Grantor; (C) proceed against any collateral for the Indebtedness, including Borrower's collateral, before proceeding against Grantor; (D) apply any payments or proceeds received against the Indebtedness in any order; (E) give notice of the terms, time, and place of any sale of any collateral pursuant to the Uniform Commercial Code or any other law governing such sale; (F) disclose any information about the Indebtedness, the Borrower, any collateral, or any other guarantor or surety, or about any action or nonaction of Lender; or (G) pursue any remedy or course of action in Lender's power whatsoever.

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

Loan No:    207    Page 2

Grantor also waives any and all rights or defenses arising by reason of (A) any disability or other defense of Borrower, any other guarantor or surety or any other person; (B) the cessation from any cause whatsoever, other than payment in full, of the Indebtedness; (C) the application of proceeds of the Indebtedness by Borrower for purposes other than the purposes understood and intended by Grantor and Lender; (D) any act of omission or commission by Lender which directly or indirectly results in or contributes to the discharge of Borrower or any other guarantor or surety, or the indebtedness, or the loss or release of any collateral by operation of law or otherwise; (E) any statute of limitations in any action under this Agreement or on the Indebtedness; or (F) any modification or change in terms of the Indebtedness, whatsoever, including without limitation, the renewal, extension, acceleration, or other change in the time payment of the Indebtedness is due and any change in the interest rate.

Grantor waives all rights and defenses arising out of an election of remedies by Lender even though that election of remedies, such as a non-judicial foreclosure with respect to security for a guaranteed obligation, has destroyed Grantor's rights of subrogation and reimbursement against Borrower by operation of Section 580d of the California Code of Civil Procedure or otherwise.

Grantor waives all rights and defenses that Grantor may have because Borrower's obligation is secured by real property. This means among other things: (1) Lender may collect from Grantor without first foreclosing on any real property collateral pledged by Borrower ; and (2) If Lender forecloses on any real property collateral pledged by the Borrower : (A) The amount of the Borrower's obligation may be reduced only by the price for which the collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price; (B) The Lender may collect from the Grantor even if the Lender, by foreclosing on the real property collateral, has destroyed any right the Grantor may have to collect from the borrower. This is an unconditional and irrevocable waiver of any rights and defenses the Grantor may have because the Borrower's obligation is secured by real property. These rights and defenses include, but are not limited to, any rights and defenses based upon Sections 580a, 580b, 580d, or 726 of the Code of Civil Procedure.

Grantor understands and agrees that the foregoing waivers are unconditional and irrevocable waivers of substantive rights and defenses to which Grantor might otherwise be entitled under state and federal law. The rights and defenses waived include, without limitation, those provided by California laws of suretyship and guaranty, anti-deficiency laws, and the Uniform Commercial Code. Grantor further understands and agrees that this Agreement is a separate and independent contract between Grantor and Lender, given for full and ample consideration, and is enforceable on its own terms. Grantor acknowledges that Grantor has provided these waivers of rights and defenses with the intention that they be fully relied upon by Lender. Until all Indebtedness is paid in full, Grantor waives any right to enforce any remedy Grantor may have against Borrower or any other guarantor, surety, or other person, and further, Grantor waives any right to participate in any collateral for the Indebtedness now or hereafter held by Lender.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL.** With respect to the Collateral, Grantor represents and promises to Lender that:

**Perfection of Security Interest.** Grantor agrees to take whatever actions are requested by Lender to perfect and continue Lender's security interest in the Collateral. Upon request of Lender, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral, and Grantor will note Lender's interest upon any and all chattel paper and instruments if not delivered to Lender for possession by Lender. **This is a continuing Security Agreement and will continue in effect even though all or any part of the Indebtedness is paid in full and even though for a period of time Borrower may not be indebted to Lender.**

**Notices to Lender.** Grantor will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (1) change in Grantor's name; (2) change in Grantor's assumed business name(s); (3) change in the management of the Corporation Grantor; (4) change in the authorized signer(s); (5) change in Grantor's principal office address; (6) change in Grantor's state of organization; (7) conversion of Grantor to a new or different type of business entity; or (8) change in any other aspect of Grantor that directly or indirectly relates to any agreements between Grantor and Lender. No change in Grantor's name or state of organization will take effect until after Lender has received notice.

**No Violation.** The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party, and its certificate or articles of incorporation and bylaws do not prohibit any term or condition of this Agreement.

**Enforceability of Collateral.** To the extent the Collateral consists of accounts, chattel paper, or general intangibles, as defined by the Uniform Commercial Code, the Collateral is enforceable in accordance with its terms, is genuine, and fully complies with all applicable laws and regulations concerning form, content and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral. At the time any account becomes subject to a security interest in favor of Lender, the account shall be a good and valid account representing an undisputed, bona fide indebtedness incurred by the account debtor, for merchandise held subject to delivery instructions or previously shipped or delivered pursuant to a contract of sale, or for services previously performed by Grantor with or for the account debtor. So long as this Agreement remains in effect, Grantor shall not, without Lender's prior written consent, compromise, settle, adjust, or extend payment under or with regard to any such Accounts. There shall be no setoffs or counterclaims against any of the Collateral, and no agreement shall have been made under which any deductions or discounts may be claimed concerning the Collateral except those disclosed to Lender in writing.

**Location of the Collateral.** Except in the ordinary course of Grantor's business, Grantor agrees to keep the Collateral (or to the extent the Collateral consists of intangible property such as accounts or general intangibles, the records concerning the Collateral) at Grantor's address shown above or at such other locations as are acceptable to Lender. Upon Lender's request, Grantor will deliver to Lender in form satisfactory to Lender a schedule of real properties and Collateral locations relating to Grantor's operations, including without limitation the following: (1) all real property Grantor owns or is purchasing; (2) all real property Grantor is renting or leasing; (3) all storage facilities Grantor owns, rents, leases, or uses; and (4) all other properties where Collateral is or may be located.

**Removal of the Collateral.** Except in the ordinary course of Grantor's business, including the sales of inventory, Grantor shall not remove the Collateral from its existing location without Lender's prior written consent. To the extent that the Collateral consists of vehicles, or other titled property, Grantor shall not take or permit any action which would require application for certificates of title for the vehicles outside the State of California, without Lender's prior written consent. Grantor shall, whenever requested, advise Lender of the exact location of the Collateral.

**Transactions Involving Collateral.** Except for inventory sold or accounts collected in the ordinary course of Grantor's business, or as otherwise provided for in this Agreement, Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral. While Grantor is not in default under this Agreement, Grantor may sell inventory, but only in the ordinary course of its business and only to buyers who qualify as a buyer in the ordinary course of business. A sale in the ordinary course of Grantor's business does not include a transfer in partial or total satisfaction of a debt or any bulk sae. Grantor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of Lender. This includes security interests even if junior in right to the security interests granted under this Agreement. Unless waived by Lender, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Lender to any sale or other disposition. Upon receipt, Grantor shall immediately deliver any such proceeds to Lender.

# COMMERCIAL SECURITY AGREEMENT
## (Continued)

Loan No:    207                                                                                                Page 3

---

**Title.** Grantor represents and warrants to Lender that Grantor holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement. No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement or to which Lender has specifically consented. Grantor shall defend Lender's rights in the Collateral against the claims and demands of all other persons.

**Repairs and Maintenance.** Grantor agrees to keep and maintain, and to cause others to keep and maintain, the Collateral in good order, repair and condition at all times while this Agreement remains in effect. Grantor further agrees to pay when due all claims for work done on, or services rendered or material furnished in connection with the Collateral so that no lien or encumbrance may ever attach to or be filed against the Collateral.

**Inspection of Collateral.** Lender and Lender's designated representatives and agents shall have the right at all reasonable times to examine and inspect the Collateral wherever located.

**Taxes, Assessments and Liens.** Grantor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the Indebtedness, or upon any of the other Related Documents. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized in Lender's sole opinion. If the Collateral is subjected to a lien which is not discharged within fifteen (15) days, Grantor shall deposit with Lender cash, a sufficient corporate surety bond or other security satisfactory to Lender in an amount adequate to provide for the discharge of the lien plus any interest, costs, attorneys' fees or other charges that could accrue as a result of foreclosure or sale of the Collateral. In any contest Grantor shall defend itself and Lender and shall satisfy any final adverse judgment before enforcement against the Collateral. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings. Grantor further agrees to furnish Lender with evidence that such taxes, assessments, and governmental and other charges have been paid in full and in a timely manner. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized.

**Compliance with Governmental Requirements.** Grantor shall comply promptly with all laws, ordinances, rules and regulations of all governmental authorities, now or hereafter in effect, applicable to the ownership, production, disposition, or use of the Collateral, including all laws or regulations relating to the undue erosion of highly-erodible land or relating to the conversion of wetlands for the production of an agricultural product or commodity. Grantor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Lender's interest in the Collateral, in Lender's opinion, is not jeopardized.

**Hazardous Substances.** Grantor represents and warrants that the Collateral never has been, and never will be so long as this Agreement remains a lien on the Collateral, used in violation of any Environmental Laws or for the generation, manufacture, storage, transportation, treatment, disposal, release or threatened release of any Hazardous Substance. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Collateral for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any Environmental Laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims and losses resulting from a breach of this provision of this Agreement. This obligation to indemnify and defend shall survive the payment of the Indebtedness and the satisfaction of this Agreement.

**Maintenance of Casualty Insurance.** Grantor shall procure and maintain all risks insurance, including without limitation fire, theft and liability coverage together with such other insurance as Lender may require with respect to the Collateral, in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days' prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such a notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest, Grantor will provide Lender with such loss payable or other endorsements as Lender may require. If Grantor at any time fails to obtain or maintain any insurance as required under this Agreement, Lender may (but shall not be obligated to) obtain such insurance as Lender deems appropriate, including if Lender so chooses "single interest insurance," which will cover only Lender's interest in the Collateral.

**Application of Insurance Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Collateral, whether or not such casualty or loss is covered by insurance. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. All proceeds of any insurance on the Collateral, including accrued proceeds thereon, shall be held by Lender as part of the Collateral. If Lender consents to repair or replacement of the damaged or destroyed Collateral, Lender shall, upon satisfactory proof of expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration. If Lender does not consent to repair or replacement of the Collateral, Lender shall retain a sufficient amount of the proceeds to pay all of the Indebtedness, and shall pay the balance to Grantor. Any proceeds which have not been disbursed within six (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the Indebtedness.

**Insurance Reserves.** Lender may require Grantor to maintain with Lender reserves for payment of insurance premiums, which reserves shall be created by monthly payments from Grantor of a sum estimated by Lender to be sufficient to produce, at least fifteen (15) days before the premium due date, amounts at least equal to the insurance premiums to be paid. If fifteen (15) days before payment is due, the reserve funds are insufficient, Grantor shall upon demand pay any deficiency to Lender. The reserve funds shall be held by Lender as a general deposit and shall constitute a non-interest-bearing account which Lender may satisfy by payment of the insurance premiums required to be paid by Grantor as they become due. Lender does not hold the reserve funds in trust for Grantor, and Lender is not the agent of Grantor for payment of the insurance premiums required to be paid by Grantor. The responsibility for the payment of premiums shall remain Grantor's sole responsibility.

**Insurance Reports.** Grantor, upon request of Lender, shall furnish to Lender reports on each existing policy of insurance showing such information as Lender may reasonably request including the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured; (5) the then current value on the basis of which insurance has been obtained and the manner of determining that value; and (6) the expiration date of the policy. In addition, Grantor shall upon request by Lender (however not more often than annually) have an independent appraiser satisfactory to Lender determine, as applicable, the cash value or replacement cost of the Collateral.

**Financing Statements.** Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement.

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

Loan No:    207                                                                                                              Page 4

---

Grantor will promptly notify Lender of any change to Grantor's name or the name of any individual Grantor, any individual who is a partner for a Grantor, and any individual who is a trustee or settlor or trustor for a Grantor under this Agreement. Grantor will also promptly notify Lender of any change to the name that appears on the most recently issued, unexpired driver's license or state-issued identification card, any expiration of the most recently issued driver's license or state-issued identification card for Grantor or any individual for whom Grantor is required to provide notice regarding name changes.

**GRANTOR'S RIGHT TO POSSESSION AND TO COLLECT ACCOUNTS.** Until default and except as otherwise provided below with respect to accounts, Grantor may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents, provided that Grantor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by Lender is required by law to perfect Lender's security interest in such Collateral. Until otherwise notified by Lender, Grantor may collect any of the Collateral consisting of accounts. At any time and even though no Event of Default exists, Lender may exercise its rights to collect the accounts and to notify account debtors to make payments directly to Lender for application to the Indebtedness. If Lender at any time has possession of any Collateral, whether before or after an Event of Default, Lender shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Lender takes such action for that purpose as Grantor shall request or as Lender, in Lender's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Grantor shall not of itself be deemed to be a failure to exercise reasonable care. Lender shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, nor to protect, preserve or maintain any security interest given to secure the Indebtedness.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Other Defaults.** Borrower or Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower or Grantor.

**Default in Favor of Third Parties.** Borrower or Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's or Grantor's property or ability to perform their respective obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or Grantor or on Borrower's or Grantor's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The death of Borrower or Grantor or the dissolution or termination of Borrower's or Grantor's existence as a going business, the insolvency of Borrower or Grantor, the appointment of a receiver for any part of Borrower's or Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or Grantor or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Borrower's or Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower or Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower or Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or guarantor, endorser, surety, or accommodation party dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Borrower's or Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment, is curable and if Grantor has not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if Grantor, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Agreement, at any time thereafter, Lender shall have all the rights of a secured party under the California Uniform Commercial Code. In addition and without limitation, Lender may exercise any one or more of the following rights and remedies:

**Accelerate Indebtedness.** Lender may declare the entire Indebtedness, including any prepayment penalty which Borrower would be required to pay, immediately due and payable, without notice of any kind to Borrower or Grantor.

**Assemble Collateral.** Lender may require Grantor to deliver to Lender all or any portion of the Collateral and any and all certificates of title

# COMMERCIAL SECURITY AGREEMENT
## (Continued)

Loan No:    207    Page 5

and other documents relating to the Collateral. Lender may require Grantor to assemble the Collateral and make it available to Lender at a place to be designated by Lender. Lender also shall have full power to enter upon the property of Grantor to take possession of and remove the Collateral. If the Collateral contains other goods not covered by this Agreement at the time of repossession, Grantor agrees Lender may take such other goods, provided that Lender makes reasonable efforts to return them to Grantor after repossession.

**Sell the Collateral.** Lender shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in Lender's own name or that of Grantor. Lender may sell the Collateral at public auction or private sale. Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give Grantor, and other persons as required by law, reasonable notice of the time and place of any public sale, or the time after which any private sale or any other disposition of the Collateral is to be made. However, no notice need be provided to any person who, after Event of Default occurs, enters into and authenticates an agreement waiving that person's right to notification of sale. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition. All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from date of expenditure until repaid.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the rents from the Collateral and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Collateral exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Collect Revenues, Apply Accounts.** Lender, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral. Lender may at any time in Lender's discretion transfer any Collateral into Lender's own name or that of Lender's nominee and receive the payments, rents, income, and revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as Lender may determine. Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, choses in action, or similar property, Lender may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as Lender may determine, whether or not Indebtedness or Collateral is then due. For these purposes, Lender may, on behalf of and in the name of Grantor, receive, open and dispose of mail addressed to Grantor; change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment, or storage of any Collateral. To facilitate collection, Lender may notify account debtors and obligors on any Collateral to make payments directly to Lender.

**Obtain Deficiency.** If Lender chooses to sell any or all of the Collateral, Lender may obtain a judgment against Borrower for any deficiency remaining on the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this Agreement. Borrower shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper.

**Other Rights and Remedies.** Lender shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as may be amended from time to time. In addition, Lender shall have and may exercise any or all other rights and remedies it may have available at law, in equity, or otherwise.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

MISCELLANEOUS PROVISIONS. The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Applicable Law.** The Loan secured by this lien was made under a United States Small Business Administration (SBA) nationwide program which uses tax dollars to assist small business owners. If the United States is seeking to enforce this document, then under SBA regulations: (a) When SBA is the holder of the Note, this document and all documents evidencing or securing this Loan will be construed in accordance with federal law. (b) Lender or SBA may use local or state procedures for purposes such as filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using these procedures, SBA does not waive any federal immunity from local or state control, penalty, tax or liability. No Borrower or Guarantor may claim or assert against SBA any local or state law to deny any obligation of Borrower, or defeat any claim of SBA with respect to this Loan. Any clause in this document requiring arbitration is not enforceable when SBA is the holder of the Note secured by this instrument.

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of LOS ANGELES County, State of California.

**Joint and Several Liability.** All obligations of Borrower and Grantor under this Agreement shall be joint and several, and all references to Grantor shall mean each and every Grantor, and all references to Borrower shall mean each and every Borrower. This means that each Borrower and Grantor signing below is responsible for all obligations in this Agreement. Where any one or more of the parties is a corporation, partnership, limited liability company or similar entity, it is not necessary for Lender to inquire into the powers of any of the officers, directors, partners, members, or other agents acting or purporting to act on the entity's behalf, and any obligations made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Agreement.

**Preference Payments.** Any monies Lender pays because of an asserted preference claim in Borrower's or Grantor's bankruptcy will become a part of the Indebtedness and, at Lender's option, shall be payable by Borrower and Grantor as provided in this Agreement.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

Loan No:    207                                                                                                                    Page 6

and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Power of Attorney.** Grantor hereby appoints Lender as Grantor's irrevocable attorney-in-fact for the purpose of executing any documents necessary to perfect, amend, or to continue the security interest granted in this Agreement or to demand termination of filings of other secured parties. Lender may at any time, and without further authorization from Grantor, file a carbon, photographic or other reproduction of any financing statement or of this Agreement for use as a financing statement. Grantor will reimburse Lender for all expenses for the perfection and the continuation of the perfection of Lender's security interest in the Collateral.

**Waiver of Co-Obligor's Rights.** If more than one person is obligated for the Indebtedness, Grantor irrevocably waives, disclaims and relinquishes all claims against such other person which Grantor has or would otherwise have by virtue of payment of the Indebtedness or any part thereof, specifically including but not limited to all rights of indemnity, contribution or exoneration.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Agreement.** The word "Agreement" means this Commercial Security Agreement, as this Commercial Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Commercial Security Agreement from time to time.

**Borrower.** The word "Borrower" means CROWNCO INC. and CHARLES E MORRISON and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Default.** The word "Default" means the Default set forth in this Agreement in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., Chapters 6.5 through 7.7 of Division 20 of the California Health and Safety Code, Section 25100, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**Grantor.** The word "Grantor" means CROWNCO INC..

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Borrower is responsible under this Agreement or under any of the Related Documents. Specifically, without limitation, Indebtedness includes the future advances set forth in the Future Advances provision of this Agreement together with all interest thereon.

**Lender.** The word "Lender" means CENTERSTONE SBA LENDING, INC., its successors and assigns.

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

Loan No:    207

Page 7

---

**Note.** The word "Note" means the Note dated May 22, 2019 and executed by CROWNCO INC. and CHARLES E MORRISON in the principal amount of $2,580,000.00, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

BORROWER AND GRANTOR HAVE READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS COMMERCIAL SECURITY AGREEMENT AND AGREE TO ITS TERMS. THIS AGREEMENT IS DATED MAY 22, 2019.

GRANTOR:

CROWNCO INC.

By: _____
CHARLES E MORRISON, President & Secretary of
CROWNCO INC.

BORROWER:

CROWNCO INC.

By: _____
CHARLES E MORRISON, President & Secretary of
CROWNCO INC.

X _____
CHARLES E MORRISON, Individually

# EXHIBIT 3

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Phone: 213-805-6554 Fax:

**B. E-MAIL CONTACT AT FILER (optional)**
Erin.lee@TEAMCENTERSTONE.COM

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)** 36130 - CENTERSTONE

Centerstone SBA Lending, Inc.      70034521
700 S. Flower Street
Suite 850                          CALI
Los Angeles, CA  90017

File with: Secretary of State, CA

Lien Solutions
Representation of filing

**This filing is Completed**
File Number : 197713414330
File Date   : 21-May-2019

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| CROWNCO INC. | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| | | | | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 26697 PIERCE CIRCLE | MURRIETA | CA | 92562 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| | | | | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| | | | | |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Centerstone SBA Lending, Inc. | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| | | | | |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 700 S. Flower Street, Suite 850 | Los Angeles | CA | 90017 | USA |

4. COLLATERAL: This financing statement covers the following collateral:
All inventory, equipment, accounts (including but not limited to all health-care-insurance receivables), chattel paper, instruments (including but not limited to all promissory notes), letter-of-credit rights, letters of credit, documents, deposit accounts, investment property, money, other rights to payment and performance, and general intangibles (including but not limited to all software and all payment intangibles); all oil, gas and other minerals before extraction; all oil, gas, other minerals and accounts constituting as-extracted collateral; all fixtures; all timber to be cut; all attachments, accessions, accessories, fittings, increases, tools, parts, repairs, supplies, and commingled goods relating to the foregoing property, and all additions, replacements of and substitutions for all or any part of the foregoing property; all insurance refunds relating to the foregoing property; all good will relating to the foregoing property; all records and data and embedded software relating to the foregoing property, and all equipment, inventory and software to utilize, create, maintain and process any such records and data on electronic media; and all supporting obligations relating to the foregoing property; all whether now existing or hereafter arising, whether now owned or hereafter acquired or whether now or hereafter subject to any rights in the foregoing property; and all products and proceeds (including but not limited to all insurance payments) of or relating to the foregoing property.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
70034521        ERL 11207                                    11207

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

Prepared by Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

Lien Solutions
Representation of filing

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Phone: 213-805-6554 Fax:

**This filing is Completed**
File Number : 197713626153
File Date  : 22-May-2019

**B. E-MAIL CONTACT AT FILER (optional)**
Erin.lee@TEAMCENTERSTONE.COM

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**    36130 - CENTERSTONE

Centerstone SBA Lending, Inc.        70054107
700 S. Flower Street
Suite 850                            CALI
Los Angeles, CA  90017

File with: Secretary of State, CA

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1. DEBTOR'S NAME: Provide only <u>one</u> Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| CROWNCO INC. | | | | |
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 26697 PIERCE CIRCLE | MURRIETA | CA | 92562 | USA |

2. DEBTOR'S NAME: Provide only <u>one</u> Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only <u>one</u> Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Centerstone SBA Lending, Inc. | | | | |
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 700 S. Flower Street, Suite 850 | Los Angeles | CA | 90017 | USA |

4. COLLATERAL: This financing statement covers the following collateral:
ALL EQUIPMENT, SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART OF

5. Check <u>only</u> if applicable and check <u>only</u> one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions)  ☐ being administered by a Decedent's Personal Representative

| 6a. Check <u>only</u> if applicable and check <u>only</u> one box: | | | 6b. Check <u>only</u> if applicable and check <u>only</u> one box: | |
|---|---|---|---|---|
| ☐ Public-Finance Transaction | ☐ Manufactured-Home Transaction | ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien | ☐ Non-UCC Filing |

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
70054107          ERL 11207                                    11207

Prepared by Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282

## EXHIBIT "A"

| Vehicle # | Year | Make | Model | VIN |
|---|---|---|---|---|
| Vehicle #102 | 2006 | Chevrolet | Dump | 1GBJC34D66E146722 |
| ~~Vehicle #103~~ | ~~2010~~ | ~~Chevrolet~~ | ~~Silverado~~ | ~~1GCSCPEX4AZ122906~~ |
| Vehicle #112 | 2008 | Ford | Box | 1FDWE35L78DA79246 |
| Vehicle #114 | 2013 | Ford | Transit | NM0LS7AN4DT152603 |
| Vehicle #115 | 2014 | Ford | Transit | NM0LS7AN8DT155486 |
| Vehicle #116 | 2014 | Honda | Accord | 1HGCR2F5XEA261348 |
| Vehicle #119 | 2013 | Ford | Transit | NM0LS7AN6DT167250 |
| Vehicle #120 | 2007 | Toyota | Tacoma | 5TENX22N37Z334488 |
| Vehicle #125 | 2018 | Chevrolet | Dump | 1GB3CYCY6JF143414 |

_____                    5/22/19

Signature                                    Date

# EXHIBIT 4

**Fill in this information to identify the case:**

Debtor name    **Crownco, Inc.**

United States Bankruptcy Court for the:    CENTRAL DISTRICT OF CALIFORNIA

Case number (if known)

☐ Check if this is an
amended filing

Official Form 206D

## Schedule D: Creditors Who Have Claims Secured by Property    12/15

Be as complete and accurate as possible.

**1. Do any creditors have claims secured by debtor's property?**

☐ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.

☑ Yes. Fill in all of the information below.

**Part 1:    List Creditors Who Have Secured Claims**

2. **List in alphabetical order all creditors who have secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim.

| | Column A | Column B |
|---|---|---|
| | **Amount of claim** | **Value of collateral that supports this claim** |
| | Do not deduct the value of collateral. | |

| 2.1 | **Xerox** | Describe debtor's property that is subject to a lien | **$3,000.00** | **$3,110.00** |
|---|---|---|---|---|

Creditor's Name

**P.O. Box 202882
Dallas, TX 75320-2882**

Creditor's mailing address

**2019 Xerox AL 8055 Printer**

Describe the lien

**Equipment lease**

Is the creditor an insider or related party?

☑ No
☐ Yes

Creditor's email address, if known

Is anyone else liable on this claim?

**Date debt was incurred**

☑ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Last 4 digits of account number
CI19**

Do multiple creditors have an interest in the same property?

☑ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

As of the petition filing date, the claim is:
Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

| 2.2 | **Centerstone** | Describe debtor's property that is subject to a lien | $1,647,808.09 | Unknown |
|---|---|---|---|---|

Creditor's Name

**700 S. Flower Street
Suite 850**

Creditor's mailing address

**All un-incumbered property of the Debtor.**

Describe the lien

**UCC-1 Lien: 19-7713414330; 19-7713626153**

Is the creditor an insider or related party?

☑ No
☐ Yes

Creditor's email address, if known

Is anyone else liable on this claim?

**Date debt was incurred
05/22/2019**

☐ No
☑ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Last 4 digits of account number
7009;and**

Do multiple creditors have an interest in the same property?

As of the petition filing date, the claim is:
Check all that apply

| Debtor | **Crownco, Inc.** | | Case number (if known) | |
|---|---|---|---|---|
| | Name | | | |

□ No
□ Yes. Specify each creditor, including this creditor and its relative priority.

■ Contingent
■ Unliquidated
■ Disputed

---

| 2.3 | **Enterprise** | Describe debtor's property that is subject to a lien | $6,380.82 | $11,174.00 |
|---|---|---|---|---|
| | Creditor's Name | **2019 Nissan Frontier  License No. 06864R2;** | | |

**2019 Nissan Frontier  License No. 4187242;**
**2019 Nissan Cargo 1500 License No 88865V2;**
**2019 NIssan Cargo 1500 License No 90837V2;**
**2019 NIssan Cargo 1500 License No ; 2019**
**NIssan Cargo 1500 License**

**1400 N. Kellog Dr**
**Ste G**
**Anaheim, CA 92807-1984**

Creditor's mailing address

Describe the lien
**Lease and Maintanance Agreement**
**Is the creditor an insider or related party?**
■ No
□ Yes

Creditor's email address, if known

**Is anyone else liable on this claim?**
■ No
□ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Date debt was incurred**

**Last 4 digits of account number**

**Do multiple creditors have an interest in the same property?**
■ No
□ Yes. Specify each creditor, including this creditor and its relative priority.

As of the petition filing date, the claim is:
Check all that apply
■ Contingent
□ Unliquidated
□ Disputed

---

| 2.4 | **U.S. Small Business Administration** | Describe debtor's property that is subject to a lien | $2,555,128.14 | Unknown |
|---|---|---|---|---|
| | Creditor's Name | **UCC Filng No. 207780144164** | | |

**Office of General Counsel**
**312 North Spring Street,**
**5th Floor**
**Los Angeles, CA 90012**

**Blanket Lien: All**

Creditor's mailing address

Describe the lien
**UCC-1 Lien Holder**
**Is the creditor an insider or related party?**
■ No
□ Yes

Creditor's email address, if known

**Is anyone else liable on this claim?**
□ No

**Date debt was incurred**

**05/23/2020 [UCC Filing**

---

# EXHIBIT 5

Friday Aug 22, 2025  1:45 PM

CROWNCO INC.                                Account          11207
CHARLES MORRISON Joint Owner                Balance      1,637,808.09
36625 KEVIN RD SUITE 149
WILDOMAR CA 92595

| Date | Description | Amount | Balance | Grp | Org Grp |
|------|-------------|--------|---------|-----|---------|
|      | RBS Present | Reference |       |     |         |
| 05/28/2019 | Opening Advance | 2,580,000.00 | 2,580,000.00 | 1 | |
|      | 0 05/28/2019 | | | | |
| 05/29/2019 | Def Fee Exp Cr Adj | 30.74 | 2,580,000.00 | I | |
|      | 0 | FASB 91 Exp | | | |
| Fee Code  2 Fee Sequence   1 | | | | | |
| 06/03/2019 | Regular Payment | 2,304.33 | 2,580,000.00 | 1 | |
|      | 0 06/03/2019 EFF 06/01/2019 | | | | |
| Prin | 0.00   Int | 2,304.33 | | | |
| 07/01/2019 | Rate Change | 0.00 | 2,580,000.00 | | |
|      | 0 | 8.1500- 8.1500 | | | |
| 07/05/2019 | Regular Payment | 31,680.00 | 2,567,906.79 | 1 | |
|      | 0 | ACH ███████ 2 | | | |
| Prin | 12,093.21   Int | 19,586.79 | | | |
| 08/05/2019 | Regular Payment | 31,691.29 | 2,553,990.34 | 1 | |
|      | 0 | ACH ███████ 3 | | | |
| Prin | 13,916.45   Int | 17,774.84 | | | |
| 09/05/2019 | Regular Payment | 31,691.29 | 2,539,977.56 | 1 | |
|      | 0 | ACH ███████ 3 | | | |
| Prin | 14,012.78   Int | 17,678.51 | | | |
| 10/01/2019 | Rate Change | 0.00 | 2,539,977.56 | | |
|      | 0 | 8.1500- 7.6500 | | | |
| 10/07/2019 | Regular Payment | 31,691.29 | 2,526,226.17 | 1 | |
|      | 0 | ACH ███████ 3 | | | |
| Prin | 13,751.39   Int | 17,939.90 | | | |
| 10/11/2019 | Reg Pymnt-No Dt | 4,500.00 | 2,523,844.05 | 1 | |
|      | 0 10/11/2019 PROCEEDS FROM SALE | | | | |
| Prin | 2,382.12   Int | 2,117.88 | | | |
| 11/05/2019 | Regular Payment | 31,031.83 | 2,506,036.47 | 1 | |
|      | 0 | ACH ███████ 5 | | | |
| Prin | 17,807.58   Int | 13,224.25 | | | |
| 12/05/2019 | Regular Payment | 31,031.83 | 2,490,761.77 | 1 | |
|      | 0 | ACH ███████ 5 | | | |
| Prin | 15,274.70   Int | 15,757.13 | | | |
| 01/01/2020 | Rate Change | 0.00 | 2,490,761.77 | | |
|      | 0 | 7.6500- 7.4000 | | | |
| 01/06/2020 | Regular Payment | 31,031.83 | 2,476,349.81 | 1 | |
|      | 0 | ACH ███████ 5 | | | |
| Prin | 14,411.96   Int | 16,619.87 | | | |
| 02/05/2020 | Regular Payment | 30,656.55 | 2,460,754.89 | 1 | |

```
                      0              ACH ███████      6
     Prin        15,594.92   Int        15,061.63
03/05/2020 Regular Payment              30,656.55       2,444,566.23         1
```

Friday Aug 22, 2025  1:45 PM

```
CROWNCO INC.                              Account            11207
CHARLES MORRISON Joint Owner              Balance     1,637,808.09
36625 KEVIN RD SUITE 149
WILDOMAR CA 92595

Date      Description              Amount          Balance     Grp  Org Grp
          RBS Present      Reference
```

| Date | Description | RBS Present | Reference | Amount | Balance | Grp | Org Grp |
|---|---|---|---|---|---|---|---|
| | | 0 | ACH ▆▆▆▆▆  6 | | | | |
| Prin | 16,188.66 | Int | | 14,467.89 | | | |
| 04/01/2020 | Rate Change | 0 | 7.4000- 5.9000 | 0.00 | 2,444,566.23 | | |
| 04/06/2020 | Regular Payment | 0 | ACH ▆▆▆▆▆  6 | 30,656.55 | 2,429,266.92 | 1 | |
| Prin | 15,299.31 | Int | | 15,357.24 | | | |
| 04/07/2020 | Regular Payment Rev | 0 | EFF 04/06/2020 Auto Rev XXXXXX1207 | 30,656.55 | 2,444,566.23 | 1 | 1 |
| Prin | 15,299.31 | Int | | 15,357.24 | | | |
| 04/29/2020 | Regular Payment | 0 04/29/2020 | | 30,656.55 | 2,438,355.34 | 1 | |
| Prin | 6,210.89 | Int | | 24,445.66 | | | |
| 04/30/2020 | Reg Pymnt-No Dt | 0 04/30/2020 | PROCEEDS FROM SALE | 12,000.00 | 2,426,749.49 | 1 | |
| Prin | 11,605.85 | Int | | 394.15 | | | |
| 05/26/2020 | Regular Payment | 0 05/26/2020 | | 28,824.62 | 2,408,123.87 | 1 | |
| Prin | 18,625.62 | Int | | 10,199.00 | | | |
| 06/19/2020 | Regular Payment | 0 06/19/2020 | | 28,824.62 | 2,388,641.45 | 1 | |
| Prin | 19,482.42 | Int | | 9,342.20 | | | |
| 07/01/2020 | Rate Change | 0 | 5.9000- 5.9000 | 0.00 | 2,388,641.45 | | |
| 07/22/2020 | Regular Payment | 0 07/22/2020 | | 28,824.62 | 2,372,558.43 | 1 | |
| Prin | 16,083.02 | Int | | 12,741.60 | | | |
| 08/20/2020 | Regular Payment | 0 08/20/2020 | | 28,681.12 | 2,354,999.08 | 1 | |
| Prin | 17,559.35 | Int | | 11,121.77 | | | |
| 09/24/2020 | Regular Payment | 0 09/24/2020 | | 28,681.12 | 2,339,641.45 | 1 | |
| Prin | 15,357.63 | Int | | 13,323.49 | | | |
| 10/01/2020 | Rate Change | 0 | 5.9000- 5.9000 | 0.00 | 2,339,641.45 | | |
| 10/05/2020 | Regular Payment | 0 | ACH ▆▆▆▆▆  8 | 28,681.12 | 2,315,120.41 | 1 | |
| Prin | 24,521.04 | Int | | 4,160.08 | | | |
| 11/05/2020 | Regular Payment | | | 28,684.48 | 2,298,036.90 | 1 | |

```
                         0              ACH ███████      9
    Prin        17,083.51    Int          11,600.97
12/07/2020 Regular Payment             28,684.48        2,281,239.25         1
```

Friday Aug 22, 2025  1:45 PM

CROWNCO INC.                              Account          11207
CHARLES MORRISON Joint Owner              Balance      1,637,808.09
36625 KEVIN RD SUITE 149
WILDOMAR CA 92595

| Date | Description | Amount | Balance | Grp | Org Grp |
|------|-------------|--------|---------|-----|---------|
| | RBS Present | Reference | | | |
| | 0 | ACH ████████ 9 | | | |
| Prin | 16,797.65 Int | 11,886.83 | | | |
| 01/01/2021 Rate Change | | 0.00 | 2,281,239.25 | | |
| | 0 | 5.90000000 To 5.90000000 | | | |
| 01/05/2021 Regular Payment | | 28,684.48 | 2,263,248.47 | 1 | |
| | 0 | ACH ████████ 9 | | | |
| Prin | 17,990.78 Int | 10,693.70 | | | |
| 01/12/2021 Prin Pymnt - No Dt | | 22,000.00 | 2,241,248.47 | 1 | |
| | 0 | 01/12/2021 PROCEEDS FROM SALE | | | |
| 02/05/2021 Regular Payment | | 19,685.66 | 2,232,818.51 | 1 | |
| | 0 | 02/05/2021 | | | |
| Prin | 8,429.96 Int | 11,255.70 | | | |
| 02/18/2021 Regular Payment | | 9,000.00 | 2,228,510.48 | 1 | |
| | 0 | 02/18/2021 | | | |
| Prin | 4,308.03 Int | 4,691.97 | | | |
| 03/05/2021 Regular Payment | | 19,685.66 | 2,214,228.20 | 1 | |
| | 0 | 03/05/2021 | | | |
| Prin | 14,282.28 Int | 5,403.38 | | | |
| 03/17/2021 Regular Payment | | 9,000.00 | 2,209,523.20 | 1 | |
| | 0 | 03/17/2021 | | | |
| Prin | 4,705.00 Int | 4,295.00 | | | |
| 04/01/2021 Rate Change | | 0.00 | 2,209,523.20 | | |
| | 0 | 5.90000000 To 5.90000000 | | | |
| 04/05/2021 Regular Payment | | 28,685.66 | 2,187,623.50 | 1 | |
| | 0 | ACH ████████ 10 | | | |
| Prin | 21,899.70 Int | 6,785.96 | | | |
| 05/05/2021 Regular Payment | | 28,397.72 | 2,169,834.25 | 1 | |
| | 0 | ACH ████████ 11 | | | |
| Prin | 17,789.25 Int | 10,608.47 | | | |
| 06/07/2021 Regular Payment | | 28,397.72 | 2,153,010.96 | 1 | |
| | 0 | ACH ████████ 11 | | | |
| Prin | 16,823.29 Int | 11,574.43 | | | |
| 07/01/2021 Rate Change | | 0.00 | 2,153,010.96 | | |
| | 0 | 5.90000000 To 5.90000000 | | | |
| 07/06/2021 Regular Payment | | 28,397.72 | 2,134,705.85 | 1 | |
| | 0 | ACH ████████ 11 | | | |
| Prin | 18,305.11 Int | 10,092.61 | | | |
| 08/05/2021 Regular Payment | | 28,398.60 | 2,116,659.11 | 1 | |
| | 0 | ACH ████████ 12 | | | |

```
   Prin        18,046.74   Int        10,351.86
09/07/2021 Regular Payment             28,398.60      2,099,551.29        1
                0              ACH ████████  12
```

Friday Aug 22, 2025  1:45 PM

```
CROWNCO INC.                          Account           11207
CHARLES MORRISON Joint Owner          Balance      1,637,808.09
36625 KEVIN RD SUITE 149
WILDOMAR CA 92595
```

| Date | Description | | Amount | Balance | Grp | Org Grp |
|------|-------------|---|--------|---------|-----|---------|
| | RBS Present | | Reference | | | |
| Prin | 17,107.82 | Int | 11,290.78 | | | |
| 10/01/2021 Rate Change | | | 0.00 | 2,099,551.29 | | |
| | 0 | | 5.90000000 To 5.90000000 | | | |
| 10/05/2021 Regular Payment | | | 28,398.60 | 2,080,655.32 | 1 | |
| | 0 | | ACH ▬▬▬▬ 12 | | | |
| Prin | 18,895.97 | Int | 9,502.63 | | | |
| 11/05/2021 Regular Payment | | | 28,399.54 | 2,062,681.86 | 1 | |
| | 0 | | ACH ▬▬▬▬ 13 | | | |
| Prin | 17,973.46 | Int | 10,426.08 | | | |
| 12/06/2021 Regular Payment | | | 28,399.54 | 2,044,618.33 | 1 | |
| | 0 | | ACH ▬▬▬▬ 13 | | | |
| Prin | 18,063.53 | Int | 10,336.01 | | | |
| 01/01/2022 Rate Change | | | 0.00 | 2,044,618.33 | | |
| | 0 | | 5.90000000 To 5.90000000 | | | |
| 01/05/2022 Regular Payment | | | 28,399.54 | 2,026,133.79 | 1 | |
| | 0 | | ACH ▬▬▬▬ 13 | | | |
| Prin | 18,484.54 | Int | 9,915.00 | | | |
| 02/07/2022 Regular Payment | | | 28,400.39 | 2,008,541.30 | 1 | |
| | 0 | | ACH ▬▬▬▬ 14 | | | |
| Prin | 17,592.49 | Int | 10,807.90 | | | |
| 03/07/2022 Regular Payment | | | 28,400.39 | 1,989,231.62 | 1 | |
| | 0 | | ACH ▬▬▬▬ 14 | | | |
| Prin | 19,309.68 | Int | 9,090.71 | | | |
| 04/01/2022 Rate Change | | | 0.00 | 1,989,231.62 | | |
| | 0 | | 5.90000000 To 6.15000000 | | | |
| 04/05/2022 Regular Payment | | | 28,400.39 | 1,970,210.59 | 1 | |
| | 0 | | ACH ▬▬▬▬ 14 | | | |
| Prin | 19,021.03 | Int | 9,379.36 | | | |
| 05/05/2022 Regular Payment | | | 28,638.13 | 1,951,531.47 | 1 | |
| | 0 | | ACH ▬▬▬▬ 15 | | | |
| Prin | 18,679.12 | Int | 9,959.01 | | | |
| 06/06/2022 Regular Payment | | | 28,638.13 | 1,933,415.57 | 1 | |
| | 0 | | ACH ▬▬▬▬ 15 | | | |
| Prin | 18,115.90 | Int | 10,522.23 | | | |
| 07/01/2022 Rate Change | | | 0.00 | 1,933,415.57 | | |
| | 0 | | 6.15000000 To 7.40000000 | | | |
| 07/05/2022 Regular Payment | | | 28,638.13 | 1,914,489.55 | 1 | |
| | 0 | | ACH ▬▬▬▬ 15 | | | |
| Prin | 18,926.02 | Int | 9,712.11 | | | |

```
08/05/2022 Regular Payment              29,801.37      1,896,720.61          1
                     0          ACH ██████████    16
    Prin       17,768.94   Int        12,032.43
```

Friday Aug 22, 2025  1:45 PM

```
CROWNCO INC.                              Account        11207
CHARLES MORRISON Joint Owner              Balance     1,637,808.09
36625 KEVIN RD SUITE 149
WILDOMAR CA 92595
```

| Date | Description | Amount | Balance | Grp | Org Grp |
|------|-------------|--------|---------|-----|---------|
| | RBS Present | Reference | | | |
| 09/06/2022 | Regular Payment | 29,801.37 | 1,879,224.54 | 1 | |
| | 0 | ACH ▉ 16 | | | |
| Prin | 17,496.07  Int | 12,305.30 | | | |
| 10/01/2022 | Rate Change | 0.00 | 1,879,224.54 | | |
| | 0 | 7.40000000 To  8.90000000 | | | |
| 10/05/2022 | Regular Payment | 29,801.37 | 1,860,780.90 | 1 | |
| | 0 | ACH ▉ 16 | | | |
| Prin | 18,443.64  Int | 11,357.73 | | | |
| 11/07/2022 | Regular Payment | 31,185.17 | 1,844,568.64 | 1 | |
| | 0 | ACH ▉ 18 | | | |
| Prin | 16,212.26  Int | 14,972.91 | | | |
| 12/05/2022 | Regular Payment | 31,185.17 | 1,825,977.07 | 1 | |
| | 0 | ACH ▉ 18 | | | |
| Prin | 18,591.57  Int | 12,593.60 | | | |
| 01/01/2023 | Rate Change | 0.00 | 1,825,977.07 | | |
| | 0 | 8.90000000 To 10.15000000 | | | |
| 01/05/2023 | Regular Payment | 31,185.17 | 1,808,844.42 | 1 | |
| | 0 | ACH ▉ 18 | | | |
| Prin | 17,132.65  Int | 14,052.52 | | | |
| 02/06/2023 | Regular Payment | 32,326.37 | 1,792,614.29 | 1 | |
| | 0 | ACH ▉ 19 | | | |
| Prin | 16,230.13  Int | 16,096.24 | | | |
| 03/06/2023 | Regular Payment | 32,326.37 | 1,774,245.75 | 1 | |
| | 0 | ACH ▉ 19 | | | |
| Prin | 18,368.54  Int | 13,957.83 | | | |
| 04/01/2023 | Rate Change | 0.00 | 1,774,245.75 | | |
| | 0 | 10.15000000 To 10.65000000 | | | |
| 04/05/2023 | Regular Payment | 32,326.37 | 1,756,818.19 | 1 | |
| | 0 | ACH ▉ 19 | | | |
| Prin | 17,427.56  Int | 14,898.81 | | | |
| 05/05/2023 | Regular Payment | 32,551.73 | 1,739,644.63 | 1 | |
| | 0 | ACH ▉ 20 | | | |
| Prin | 17,173.56  Int | 15,378.17 | | | |
| 06/05/2023 | Regular Payment | 32,551.73 | 1,722,828.35 | 1 | |
| | 0 | ACH ▉ 20 | | | |
| Prin | 16,816.28  Int | 15,735.45 | | | |
| 07/01/2023 | Rate Change | 0.00 | 1,722,828.35 | | |
| | 0 | 10.65000000 To 10.90000000 | | | |
| 07/05/2023 | Regular Payment | 32,551.73 | 1,705,404.47 | 1 | |

```
                    0            ACH ████████   20
   Prin        17,423.88   Int       15,127.85
07/07/2023 Regular Payment Rev       32,551.73      1,722,828.35       1          1
```

Friday Aug 22, 2025  1:45 PM

```
CROWNCO INC.                          Account          11207
CHARLES MORRISON Joint Owner          Balance     1,637,808.09
36625 KEVIN RD SUITE 149
WILDOMAR CA 92595
```

| Date | Description | Amount | Balance | Grp | Org Grp |
|------|-------------|--------|---------|-----|---------|
| | RBS Present | Reference | | | |
| | 0 | EFF 07/05/2023 Auto Rev XXXXXX1207 | | | |
| Prin  17,423.88  Int | | 15,127.85 | | | |
| 07/11/2023 Late Charge | | 1,627.59 | 1,722,828.35 | | |
| | 0 | Automatic | | | |
| 07/12/2023 Regular Payment | | 32,551.73 | 1,709,005.88 | 1 | |
| | 0 07/12/2023 | | | | |
| Prin  13,822.47  Int | | 18,729.26 | | | |
| 08/07/2023 Regular Payment | | 33,007.80 | 1,689,267.46 | 1 | |
| | 0 | ACH ███████  21 | | | |
| 09/05/2023 Regular Payment | | 33,007.80 | 1,670,889.18 | 1 | |
| | 0 | ACH ███████  21 | | | |
| Prin  18,378.28  Int | | 14,629.52 | | | |
| 09/07/2023 Regular Payment Rev | | 33,007.80 | 1,689,267.46 | 1 | 1 |
| | 0 | EFF 09/05/2023 Auto Rev XXXXXX1207 | | | |
| Prin  18,378.28  Int | | 14,629.52 | | | |
| 09/11/2023 Late Charge | | 1,650.39 | 1,689,267.46 | | |
| | 0 | Automatic | | | |
| 09/27/2023 Regular Payment | | 33,007.80 | 1,681,987.44 | 1 | |
| | 0 09/27/2023 | | | | |
| Prin  7,280.02  Int | | 25,727.78 | | | |
| 09/27/2023 Late Charge Payment | | 1,650.59 | 1,681,987.44 | 1 | |
| | 0 09/27/2023 | | | | |
| 10/01/2023 Rate Change | | 0.00 | 1,681,987.44 | | |
| | 0 | 10.90000000 To 11.15000000 | | | |
| 10/05/2023 Regular Payment | | 33,007.80 | 1,653,044.06 | 1 | |
| | 0 | ACH ███████  21 | | | |
| Prin  28,943.38  Int | | 4,064.42 | | | |
| 10/11/2023 Regular Payment Rev | | 33,007.80 | 1,681,987.44 | 1 | 1 |
| | 0 | EFF 10/05/2023 Auto Rev XXXXXX1207 | | | |
| Prin  28,943.38  Int | | 4,064.42 | | | |
| 10/11/2023 Late Charge | | 1,650.39 | 1,681,987.44 | | |
| | 0 10/19/2023 | | | | |
| 10/19/2023 Regular Payment | | 33,007.80 | 1,660,237.43 | 1 | |
| | 0 | | | | |
| Prin  21,750.01  Int | | 11,257.79 | | | |
| 11/13/2023 Late Charge | | 1,661.16 | 1,660,237.43 | | |
| | 0 | Automatic | | | |
| 11/29/2023 Regular Payment | | 33,223.25 | 1,647,808.09 | 1 | |

```
                      0  11/29/2023
   Prin        12,429.34    Int        20,793.91
12/11/2023 Late Charge              1,661.16        1,647,808.09
```

Friday Aug 22, 2025  1:45 PM

```
CROWNCO INC.                          Account           11207
CHARLES MORRISON Joint Owner          Balance      1,637,808.09
36625 KEVIN RD SUITE 149
WILDOMAR CA 92595

Date      Description            Amount         Balance     Grp  Org Grp
              RBS Present     Reference
================================================================================
              0              Automatic
01/01/2024 Rate Change           0.00      1,647,808.09
              0              11.15000000 To 11.15000000
01/02/2024 Regular Payment    39,823.35    1,625,099.37       1
              0 01/02/2024
    Prin    22,708.72  Int        17,114.63
01/03/2024 Regular Payment Rev 39,823.35   1,647,808.09       1      1
              0              EFF 01/02/2024 Auto Rev XXXXXX1207
    Prin    22,708.72  Int        17,114.63
01/03/2024 Late Charge Payment  6,600.00   1,647,808.09       2
              0              EFF 01/02/2024 Auto Rev XXXXXX1207
01/03/2024 Regular Payment    33,223.35    1,631,699.37       3
              0              EFF 01/02/2024 Auto Rev XXXXXX1207
    Prin    16,108.72  Int        17,114.63
01/05/2024 Regular Payment Rev 33,223.35   1,647,808.09       1      3
              0              EFF 01/03/2024 Auto Rev XXXXXX1207
    Prin    16,108.72  Int        17,114.63
01/05/2024 Late Chg Pmt Rev     6,600.00   1,647,808.09       2      2
              0              EFF 01/03/2024 Auto Rev XXXXXX1207
01/08/2024 Late Charge Payment  6,600.10   1,647,808.09       1
              0 01/08/2024
01/08/2024 Regular Payment    33,223.25    1,634,719.70       2
              0 01/08/2024
    Prin    13,088.39  Int        20,134.86
01/11/2024 Regular Payment Rev 33,223.25   1,647,808.09       1      2
              0              EFF 01/08/2024 Auto Rev XXXXXX1207
    Prin    13,088.39  Int        20,134.86
01/11/2024 Late Chg Pmt Rev     6,600.10   1,647,808.09       2      1
              0              EFF 01/08/2024 Auto Rev XXXXXX1207
01/11/2024 Late Charge         1,661.16    1,647,808.09
              0              Automatic
02/12/2024 Late Charge         1,661.88    1,647,808.09
              0              Automatic
02/28/2024 Interest Write-Off 45,806.80    1,647,808.09
              0              Nonaccrual
02/29/2024 Regular Payment    33,237.64    1,647,808.09       1
              0 02/29/2024
    Prin     0.00  Int        33,237.64
03/01/2024 Int Write-Off Rev  46,803.39    1,647,808.09
```

```
                          0
03/01/2024 Late Charge Cr Adj            1,661.88        1,647,808.09              I
                          0          EFF 02/12/2024
```

Friday Aug 22, 2025  1:45 PM

CROWNCO INC.                                      Account            11207
CHARLES MORRISON Joint Owner                      Balance        1,637,808.09
36625 KEVIN RD SUITE 149
WILDOMAR CA 92595

| Date | Description | Amount | Balance | Grp | Org Grp |
|------|-------------|--------|---------|-----|---------|
| | RBS Present | Reference | | | |
| 03/01/2024 | Late Charge Cr Adj | 1,661.16 | 1,647,808.09 | I | |
| | 0 | EFF 01/11/2024 | | | |
| 04/01/2024 | Rate Change | 0.00 | 1,647,808.09 | | |
| | 0 | 11.15000000 To 11.15000000 | | | |
| 04/11/2024 | Late Charge | 1,755.42 | 1,647,808.09 | | |
| | 0 | Automatic | | | |
| 05/13/2024 | Late Charge | 1,769.45 | 1,647,808.09 | | |
| | 0 | Automatic | | | |
| 06/11/2024 | Late Charge | 1,769.45 | 1,647,808.09 | | |
| | 0 | Automatic | | | |
| 06/25/2024 | Regular Payment | 33,223.25 | 1,647,808.09 | 1 | |
| | 0 06/25/2024 | | | | |
| Prin | 0.00   Int | 33,223.25 | | | |
| 06/28/2024 | Interest Write-Off | 40,757.24 | 1,647,808.09 | | |
| | 0 | Nonaccrual | | | |
| 07/01/2024 | Regular Payment | 1,885.19 | 1,647,808.09 | 1 | |
| | 0 07/01/2024 | | | | |
| Prin | 0.00   Int | 1,885.19 | | | |
| 07/01/2024 | Rate Change | 0.00 | 1,647,808.09 | | |
| | 0 | 11.15000000 To 11.15000000 | | | |
| 07/11/2024 | Late Charge | 1,675.20 | 1,647,808.09 | | |
| | 0 | Automatic | | | |
| 07/12/2024 | Late Charge | 94.25 | 1,647,808.09 | I | |
| | 0 | EFF 07/11/2024 | | | |
| 08/12/2024 | Late Charge | 1,770.09 | 1,647,808.09 | | |
| | 0 | Automatic | | | |
| 09/11/2024 | Late Charge | 1,770.09 | 1,647,808.09 | | |
| | 0 | Automatic | | | |
| 10/01/2024 | Overridden Rt Chg | 0.00 | 1,647,808.09 | | |
| | 0 | 11.15000000 To 10.65000000 | | | |
| 10/01/2024 | Rate Change | 0.00 | 1,647,808.09 | | |
| | 0 | 11.15000000 To 11.15000000  Processing Date | | | |
| 10/11/2024 | Late Charge | 1,770.09 | 1,647,808.09 | | |
| | 0 | Automatic | | | |
| 10/23/2024 | Accrued Int Dr Adj | 496.60 | 1,647,808.09 | | |
| | 0 | Eff Dt Demand  Rt Chg | | | |
| 11/12/2024 | Late Charge | 1,754.00 | 1,647,808.09 | | |
| | 0 | Automatic | | | |
| 12/11/2024 | Late Charge | 1,754.00 | 1,647,808.09 | | |

```
                    0              Automatic
12/16/2024 Prin Pymnt - No Dt        10,000.00       1,637,808.09        1
                    0 12/16/2024
```

Friday Aug 22, 2025  1:45 PM

CROWNCO INC.                              Account          11207
CHARLES MORRISON Joint Owner              Balance      1,637,808.09
36625 KEVIN RD SUITE 149
WILDOMAR CA 92595

| Date | Description | Amount | Balance | Grp | Org Grp |
|------|-------------|--------|---------|-----|---------|
| | RBS Present | Reference | | | |
| 01/13/2025 | Late Charge | 1,754.00 | 1,637,808.09 | | |
| | 0 | Automatic | | | |
| 01/15/2025 | Prin Pymnt - No Dt | 12,000.00 | 1,625,808.09 | 1 | |
| | 0 | 01/15/2025 | | | |
| 01/22/2025 | Prin Paymt Rev-No Da | 12,000.00 | 1,637,808.09 | 1 | 1 |
| | 0 | EFF 01/15/2025 Auto Rev XXXXXX1207 | | | |
| 02/11/2025 | Late Charge | 1,754.00 | 1,637,808.09 | | |
| | 0 | Automatic | | | |
| 03/11/2025 | Late Charge | 1,754.00 | 1,637,808.09 | | |
| | 0 | Automatic | | | |
| 04/11/2025 | Late Charge | 1,754.00 | 1,637,808.09 | | |
| | 0 | Automatic | | | |
| 05/12/2025 | Late Charge | 1,754.00 | 1,637,808.09 | | |
| | 0 | Automatic | | | |
| 06/11/2025 | Late Charge | 1,754.00 | 1,637,808.09 | | |
| | 0 | Automatic | | | |
| 07/11/2025 | Late Charge | 1,754.00 | 1,637,808.09 | | |
| | 0 | Automatic | | | |
| 08/11/2025 | Late Charge | 1,754.00 | 1,637,808.09 | | |
| | 0 | Automatic | | | |

# EXHIBIT 6

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Robert P. Goe – State Bar No. 137019<br>Reem J. Bello – State Bar No. 198840<br>GOE FORSYTHE & HODGES LLP<br>17701 Cowan, Suite 210<br>Irvine, CA 92614<br>rgoe@goeforlaw.com<br>rbello@goeforlaw.com<br><br>Telephone: (949) 798-2460<br>Facsimile:  (949) 955-9437<br><br>☐ Individual appearing without attorney<br>☒ Attorney for Debtor  Crownco, Inc. | |

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA - RIVERSIDE DIVISION

| In re:<br><br>CROWNCO INC., a California corporation,<br><br><br><br><br><br>Debtor(s) | CASE NO.:  6:24-bk-16205-MH<br><br>CHAPTER:  11<br><br><br>**SUMMARY OF AMENDED SCHEDULES,<br>MASTER MAILING LIST,<br>AND/OR STATEMENTS<br>[LBR 1007-1(c)]** |
|---|---|

A filing fee is required to amend Schedules D or E/F (see <u>Abbreviated Fee Schedule</u> on the Court's website <u>www.cacb.uscourts.gov</u>). A supplemental master mailing list (do not repeat any creditors on the original) is required as an attachment if creditors are being added to the Schedule D or E/F.

Are one or more creditors being added? ☐ Yes ☒ No

The following schedules, master mailing list or statements (check all that apply) are being amended:

☒ Schedule A/B      ☐ Schedule C      ☐ Schedule D      ☐ Schedule E/F      ☐ Schedule G

☐ Schedule H      ☐ Schedule I      ☐ Schedule J      ☐ Schedule J-2      ☐ Statement of Financial Affairs

☐ Statement About Your Social Security Numbers      ☐ Statement of Intention      ☐ Master Mailing List

☐ Other (*specify*) _____

I/we declare under penalty of perjury under the laws of the United States that the amended schedules, master mailing list, and or statements are true and correct.

Date:  *3/21/25*

Charles E. Morrison
Debtor 1 Signature

_____
Debtor 2 (Joint Debtor) Signature (if applicable)

**NOTE**:  It is the responsibility of the Debtor, or the Debtor's attorney, to serve copies of all amendments on all creditors listed in this Summary of Amended Schedules, Master Mailing List, and/or Statements, and to complete and file the attached Proof of Service of Document.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California

*December 2015*                                      Page 1                          **F 1007-1.1.AMENDED.SUMMARY**

| Fill in this information to identify the case: |
|---|
| Debtor name **Crownco, Inc.** |
| United States Bankruptcy Court for the:   CENTRAL DISTRICT OF CALIFORNIA |
| Case number (if known)   **6:24-bk-16205-MH** |

☒ Check if this is an amended filing

# Official Form 206A/B

## Schedule A/B: Assets - Real and Personal Property                 12/15

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

| Part 1: | Cash and cash equivalents |
|---|---|

1. **Does the debtor have any cash or cash equivalents?**

☐ No.  Go to Part 2.
☒ Yes Fill in the information below.

| All cash or cash equivalents owned or controlled by the debtor | | | Current value of debtor's interest |
|---|---|---|---|

3. **Checking, savings, money market, or financial brokerage accounts** *(Identify all)*

| | Name of institution (bank or brokerage firm) | Type of account | Last 4 digits of account number | |
|---|---|---|---|---|
| 3.1. | **First Citizens Bank** | **Savings** | **9925** | **$430.59** |
| 3.2. | **First Citizens Bank** | **Business Ckg** | **5797** | **$18,177.11** |
| 3.3. | **First Citizens Bank** | **Payroll** | **6116** | **$14,790.59** |

4.    **Other cash equivalents** *(Identify all)*

5.    **Total of Part 1.**
Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80.

| $33,398.29 |
|---|

| Part 2: | Deposits and Prepayments |
|---|---|

6. **Does the debtor have any deposits or prepayments?**

☐ No.  Go to Part 3.
☒ Yes Fill in the information below.

7.    **Deposits, including security deposits and utility deposits**
Description, including name of holder of deposit

8.    **Prepayments, including prepayments on executory contracts, leases, insurance, taxes, and rent**

| Debtor | **Crownco, Inc.** | Case number *(if known)* | **6:24-bk-16205-MH** |
|---|---|---|---|
| | Name | | |

Description, including name of holder of prepayment

      **Enterprise Fleet Management Credit Balance for returned leased vehicles that were sold during 01/24**

8.1.   **Acct# xxx575**                                          **$40,686.34**

9.    **Total of Part 2.**                                        **$40,686.34**

Add lines 7 through 8. Copy the total to line 81.

**Part 3:**   **Accounts receivable**

10. **Does the debtor have any accounts receivable?**

☐ No.  Go to Part 4.

☒ Yes Fill in the information below.

11.    **Accounts receivable**

11a. 90 days old or less:       **280,641.07**   −      **52,314.85**  = ....      **$228,326.22**

                           face amount                   doubtful or uncollectible accounts

11b. Over 90 days old:       **362,525.83**   −      **312,723.82**  =....      **$49,802.01**

                           face amount                   doubtful or uncollectible accounts

12.    **Total of Part 3.**                                        **$278,128.23**

Current value on lines 11a + 11b = line 12.  Copy the total to line 82.

**Part 4:**   **Investments**

13. **Does the debtor own any investments?**

☒ No.  Go to Part 5.

☐ Yes Fill in the information below.

| | | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|

14.    **Mutual funds or publicly traded stocks not included in Part 1**

Name of fund or stock:

14.1.

15.    **Non-publicly traded stock and interests in incorporated and unincorporated businesses, including any interest in an LLC, partnership, or joint venture**

Name of entity:                       % of ownership

15.1.                                  %

16.    **Government bonds, corporate bonds, and other negotiable and non-negotiable instruments not included in Part 1**

Describe:

| Debtor | Crownco, Inc. | Case number *(If known)* | 6:24-bk-16205-MH |
|---|---|---|---|
| | Name | | |

Describe:

16.1. _____    _____    _____

17.  **Total of Part 4.**
Add lines 14 through 16.  Copy the total to line 83.                    [ _____ ]

## Part 5:    Inventory, excluding agriculture assets

18. **Does the debtor own any inventory (excluding agriculture assets)?**

■ No.  Go to Part 6.
☐ Yes Fill in the information below.

| General description | Date of the last physical inventory | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 19.  **Raw materials** | | | | |
| | | | | |
| 20.  **Work in progress** | | | | |
| | | | | |
| 21.  **Finished goods, including goods held for resale** | | | | |
| | | | | |
| 22.  **Other inventory or supplies** | | | | |
| | | | | |

23.  **Total of Part 5.**
Add lines 19 through 22.  Copy the total to line 84.                    [ _____ ]

24.  **Is any of the property listed in Part 5 perishable?**
☐ No
☐ Yes

25.  **Has any of the property listed in Part 5 been purchased within 20 days before the bankruptcy was filed?**
☐ No
☐ Yes. Book value  _____  Valuation method  _____  Current Value  _____

26.  **Has any of the property listed in Part 5 been appraised by a professional within the last year?**
☐ No
☐ Yes

## Part 6:    Farming and fishing-related assets (other than titled motor vehicles and land)

27. **Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

■ No.  Go to Part 7.
☐ Yes Fill in the information below.

Official Form 206A/B                    Schedule A/B Assets - Real and Personal Property                    page 3

| Debtor | Crownco, Inc. | Case number *(if known)* | 6:24-bk-16205-MH |
|---|---|---|---|
| | Name | | |

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| **28.** **Crops–either planted or harvested** | | | |
| **29.** **Farm animals** *Examples: Livestock, poultry, farm-raised fish* | | | |
| **30.** **Farm machinery and equipment** *(Other than titled motor vehicles)* | | | |
| **31.** **Farm and fishing supplies, chemicals, and feed** | | | |
| **32.** **Other farming and fishing-related property not already listed in Part 6** | | | |

**33.** **Total of Part 6.**
Add lines 28 through 32.  Copy the total to line 85.

**34.** **Is the debtor a member of an agricultural cooperative?**
☐ No
☐ Yes.  Is any of the debtor's property stored at the cooperative?
　☐ No
　☐ Yes

**35.** **Has any of the property listed in Part 6 been purchased within 20 days before the bankruptcy was filed?**
☐ No
☐ Yes. Book value _____    Valuation method _____    Current Value _____

**36.** **Is a depreciation schedule available for any of the property listed in Part 6?**
☐ No
☐ Yes

**37.** **Has any of the property listed in Part 6 been appraised by a professional within the last year?**
☐ No
☐ Yes

| Part 7: | Office furniture, fixtures, and equipment; and collectibles |
|---|---|

**38. Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

☐ No.  Go to Part 8.
■ Yes Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|

**39.** **Office furniture**

| Debtor | Crownco, Inc. | Case number *(If known)* | 6:24-bk-16205-MH |
|---|---|---|---|
| | Name | | |

40. **Office fixtures**

41. **Office equipment, including all computer equipment and communication systems equipment and software**
**Equipment and supplies.**
**Desks**
**L-Shape : 7 @ $250**
**Large Office: 1**
**Stand Up: 4 @ $60**
**Chairs**
**Office: 19  @ $20**
**Cabinets**
**Metal: 5 @ $100**
**Wood: 1**
**Filing Cabinets**
**Large: 2 @ $175**
**Small: 1**
**Shelves:**
**Metal: 1 (large)**
**Wood: 5 @ $25.00**
**Tables:**
**Small: 2**
**Conference: 1**
**Fridges:**
**Large: 1**
**Small: 1**
**Small Appliances:**
**Microwave: 1**
**Coffee Maker: 1**                     Unknown    Comparable sale                $3,345.00

**2019 Xerox AL 8055 Printer - $3,000**
**Computers : 3 @ $75**
**Monitors: 15 @ $35**
**Small Printers: 4 @ $40**
**Office Phones: 10 @ $30**          Unknown    Comparable sale                $4,210.00

42. **Collectibles** *Examples*: Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; china and crystal; stamp, coin, or baseball card collections; other collections, memorabilia, or collectibles

43. **Total of Part 7.**
Add lines 39 through 42.  Copy the total to line 86.                        **$7,555.00**

44. **Is a depreciation schedule available for any of the property listed in Part 7?**
■ No
☐ Yes

45. **Has any of the property listed in Part 7 been appraised by a professional within the last year?**
■ No
☐ Yes

**Part 8:    Machinery, equipment, and vehicles**

46. **Does the debtor own or lease any machinery, equipment, or vehicles?**

☐ No.  Go to Part 9.
■ Yes Fill in the information below.

| Debtor | **Crownco, Inc.** | | Case number *(If known)* | **6:24-bk-16205-MH** |
|---|---|---|---|---|
| | Name | | | |

| General description<br>Include year, make, model, and identification numbers<br>(i.e., VIN, HIN, or N-number) | Net book value of<br>debtor's interest<br>(Where available) | Valuation method used<br>for current value | Current value of<br>debtor's interest |
|---|---|---|---|
| **47.** | **Automobiles, vans, trucks, motorcycles, trailers, and titled farm vehicles** | | | |

| | | | | |
|---|---|---|---|---|
| 47.1. | **2019 Nissan Frontier**<br>**License No. 06864R2**<br>**Mileage: 127,049** | **Unknown** | **Comparable sale** | **$11,174.00** |
| 47.2. | **2019 Nissan Frontier**<br>**License No. 41872V2**<br>**Mileage: 96,595** | **Unknown** | **Comparable sale** | **$13,078.00** |
| 47.3. | **2019 Nissan Cargo 1500**<br>**License No: 88865V2**<br>**Mileage: 133,195** | **Unknown** | **Comparable sale** | **$8,792.00** |
| 47.4. | **2019 Nissan Cargo 1500**<br>**License No: 90837V2**<br>**Mileaage: 117,852** | **Unknown** | **Comparable sale** | **$10,313.00** |
| 47.5. | **2019 Nissan Cargo 1500**<br>**License No: 88882V2**<br>**Mileaage: 124493** | **Unknown** | **Comparable sale** | **$9,700.00** |
| 47.6. | **2019 Nissan Cargo 1500**<br>**License No: 98604X2**<br>**Mileaage: 59201** | **Unknown** | **Comparable sale** | **$18,251.00** |

| **48.** | **Watercraft, trailers, motors, and related accessories** *Examples:* Boats, trailers, motors,<br>floating homes, personal watercraft, and fishing vessels | | | |
|---|---|---|---|---|

| **49.** | **Aircraft and accessories** | | | |
|---|---|---|---|---|

| **50.** | **Other machinery, fixtures, and equipment (excluding farm**<br>**machinery and equipment)** | | | |
|---|---|---|---|---|
| | **Five Iphone 13 -** | **Unknown** | **Comparable sale** | **$1,725.00** |
| | **Three Ipad Pro** | **Unknown** | **Comparable sale** | **$1,500.00** |
| | **One - Galaxy S20 Plus 5G** | **Unknown** | **Comparable sale** | **$198.00** |
| | **Dryers: 40 @$35**<br>**De-Humidifiers: 4 @$60**<br>**Ladders: 3 @ $45**<br>**Wheel Barrows: 2 @$40** | **Unknown** | **Comparable sale** | **$1,855.00** |

| **51.** | **Total of Part 8.**<br>Add lines 47 through 50.  Copy the total to line 87. | | | **$76,586.00** |
|---|---|---|---|---|

| Debtor | Crownco, Inc. | Case number *(if known)* | 6:24-bk-16205-MH |
|---|---|---|---|
| | Name | | |

52.   **Is a depreciation schedule available for any of the property listed in Part 8?**
☑ No
☐ Yes

53.   **Has any of the property listed in Part 8 been appraised by a professional within the last year?**
☑ No
☐ Yes

<table>
<tr><td>Part 9:</td><td>Real property</td></tr>
</table>

54.   **Does the debtor own or lease any real property?**

☑ No.  Go to Part 10.
☐ Yes Fill in the information below.

55.   **Any building, other improved real estate, or land which the debtor owns or in which the debtor has an interest**

| Description and location of property<br>Include street address or other description such as Assessor Parcel Number (APN), and type of property (for example, acreage, factory, warehouse, apartment or office building, if available. | Nature and extent of debtor's interest in property | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 55.1. | | | | |
| _____ | _____ | _____ | _____ | _____ |

56.   **Total of Part 9.**
Add the current value on lines 55.1 through 55.6 and entries from any additional sheets.
Copy the total to line 88.

_____

57.   **Is a depreciation schedule available for any of the property listed in Part 9?**
☐ No
☐ Yes

58.   **Has any of the property listed in Part 9 been appraised by a professional within the last year?**
☐ No
☐ Yes

<table>
<tr><td>Part 10:</td><td>Intangibles and intellectual property</td></tr>
</table>

59.   **Does the debtor have any interests in intangibles or intellectual property?**

☐ No.  Go to Part 11.
☑ Yes Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 60.   **Patents, copyrights, trademarks, and trade secrets** | | | |
| 61.   **Internet domain names and websites**<br>crownco.biz | Unknown | N/A | $50.00 |
| 62.   **Licenses, franchises, and royalties** | | | |

Official Form 206A/B                Schedule A/B Assets - Real and Personal Property                page 7

| Debtor | Crownco, Inc. | | Case number *(If known)* | **6:24-bk-16205-MH** |
| | Name | | | |

| State of California Contractors License.  Not transferable. No retail value. | | Unknown | N/A | $0.00 |

---

**63.**      **Customer lists, mailing lists, or other compilations**

**64.**      **Other intangibles, or intellectual property**

**65.**      **Goodwill**

**66.**      **Total of Part 10.**

          Add lines 60 through 65. Copy the total to line 89.

          **$50.00**

**67.**      **Do your lists or records include personally identifiable information of customers** (as defined in 11 U.S.C.§§ 101(41A) and 107**?**
     ☑ No
     ☐ Yes

**68.**      **Is there an amortization or other similar schedule available for any of the property listed in Part 10?**
     ☑ No
     ☐ Yes

**69.**      **Has any of the property listed in Part 10 been appraised by a professional within the last year?**
     ☑ No
     ☐ Yes

**Part 11:**    **All other assets**

**70. Does the debtor own any other assets that have not yet been reported on this form?**
Include all interests in executory contracts and unexpired leases not previously reported on this form.

     ☐ No.  Go to Part 12.
     ☑ Yes Fill in the information below.

          **Current value of debtor's interest**

**71.**      **Notes receivable**
     Description (include name of obligor)
     **Loan to: Phillip Jeremiah LLC, 36625 Kevin Road, Suite 147, Wildomar, CA 92595**

     **1,833,000.00**   -   **0.00**   =
     Total face amount     doubtful or uncollectible amount

     **[ADDED]**

          **$1,833,000.00**

**72.**      **Tax refunds and unused net operating losses (NOLs)**
     Description (for example, federal, state, local)

**73.**      **Interests in insurance policies or annuities**

**74.**      **Causes of action against third parties (whether or not a lawsuit has been filed)**

**75.**      **Other contingent and unliquidated claims or causes of action of every nature, including counterclaims of the debtor and rights to set off claims**

**76.**      **Trusts, equitable or future interests in property**

**77.**      **Other property of any kind not already listed** *Examples:* Season tickets, country club membership
     **Crownco Franchise System a State of Florida LLC. In the process of closing LLC has not performed business.**

          **$0.00**

---

| Debtor | **Crownco, Inc.** | Case number *(If known)* | **6:24-bk-16205-MH** |
|---|---|---|---|
| | Name | | |

78. **Total of Part 11.**

Add lines 71 through 77. Copy the total to line 90.

$1,833,000.00

79. **Has any of the property listed in Part 11 been appraised by a professional within the last year?**

■ No

☐ Yes

Debtor    **Crownco, Inc.**    Case number *(If known)*    **6:24-bk-16205-MH**
_____
Name

| Part 12: | Summary |
|---|---|

**In Part 12 copy all of the totals from the earlier parts of the form**

| Type of property | Current value of personal property | Current value of real property |
|---|---|---|
| 80. **Cash, cash equivalents, and financial assets.** *Copy line 5, Part 1* | $33,398.29 | |
| 81. **Deposits and prepayments.** *Copy line 9, Part 2.* | $40,686.34 | |
| 82. **Accounts receivable.** *Copy line 12, Part 3.* | $278,128.23 | |
| 83. **Investments.** *Copy line 17, Part 4.* | $0.00 | |
| 84. **Inventory.** *Copy line 23, Part 5.* | $0.00 | |
| 85. **Farming and fishing-related assets.** *Copy line 33, Part 6.* | $0.00 | |
| 86. **Office furniture, fixtures, and equipment; and collectibles.** *Copy line 43, Part 7.* | $7,555.00 | |
| 87. **Machinery, equipment, and vehicles.** *Copy line 51, Part 8.* | $76,586.00 | |
| 88. **Real property.** *Copy line 56, Part 9.....................................>* | | $0.00 |
| 89. **Intangibles and intellectual property.** *Copy line 66, Part 10.* | $50.00 | |
| 90. **All other assets.** *Copy line 78, Part 11.* | + $1,833,000.00 | |
| 91. **Total.** Add lines 80 through 90 for each column | $2,269,403.86 | + 91b. $0.00 |
| 92. **Total of all property on Schedule A/B.** Add lines 91a+91b=92 | | $2,269,403.86 |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

17701 Cowan, Lobby D, Suite 210, Irvine, CA 92614

A true and correct copy of the foregoing document entitled (*specify*): **SUMMARY OF AMENDED SCHEDULES, MASTER MAILING LIST, AND/OR STATEMENTS [LBR 1007-1(c)]** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 03/27/2025_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒   Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:  On (*date*) 03/27/2025_____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒   Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐   Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 03/27/2025_____ | Arthur E. Johnston_____ | /s/ Arthur E. Johnston_____ |
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California

**ATTACHED PAGE TO**

**PROOF OF SERVICE OF DOCUMENT**

1. <u>TO BE SERVED BY THE COURT VIA NOTICEOF ELECTRONIC FILING (NEF)</u>:

- **Reem J Bello**    rbello@goeforlaw.com, kmurphy@goeforlaw.com
- **Jennifer Witherell Crastz**    jcrastz@hrhlaw.com
- **Abram Feuerstein**    abram.s.feuerstein@usdoj.gov
- **Robert P Goe**    kmurphy@goeforlaw.com,
  rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.c
  om;ajohnston@goeforlaw.com
- **Everett L Green**    everett.l.green@usdoj.gov
- **Anne C Manalili**    anne.manalili@sba.gov
- **Cameron C Ridley**    wcvbees@gmail.com
- **Jessica M. Simon**    jsimon@hrhlaw.com, mgranzow@hrhlaw.com
- **Gregory A Thyberg**    greg@thyberglaw.com
- **United States Trustee (RS)**    ustpregion16.rs.ecf@usdoj.gov
- **Michael A Wallin**    mwallin@wallinrussell.com

2. <u>SERVED BY UNITED STATES MAIL:</u>

MAILING LIST FOLLOWS

CTI III, LLC

c/o Wallin & Russell LLP
26000 Towne Centre Drive
Suite 130
Foothill Ranch, CA 92610-3444

Centerstone SBA Lending, Inc.
c/o Hemar, Rousso & Heald, LLP
15910 Ventura Blvd., 12th Floor
Encino, CA 91436-2802

Crownco, Inc.
P O Box 890802
Temecula, CA 92589-0802

First-Citizens Bank & Trust Company
c/o Ballard Spahr LLP
2029 Century Park East
Suite 1400
Los Angeles, CA 90067-2915

(p)U S  SMALL BUSINESS ADMINISTRATION
312 N SPRING ST 5TH FLOOR
LOS ANGELES CA 90012-4701

ADP Payroll Services
P.O Box 31001-1874
Pasadena Ca 91110-1874

Alas Company LLC
c/o Grupo Glemka
PO Box 8617
Northridge, CA 91327-8617

Blank Rome
717 Texas Ave, Ste 1400
Houston, TX 77002-2776

CDN
847 Sumpter Rd
#5005
Belleville, MI 48111-4905

CTI III, LLC d/b/a Corporate Tax Incentives
c/o Wallin & Russell LLP
26000 Towne Centre Drive, Suite 130
Foothill Ranch, CA 92610-3444

CTI III, LLC dba Corporate Tax Inc.
1720 Prairie City Rd.
Folsom, CA 95630-4044

California Department of Fee & Tax
Account Information Group, MIC:29
P.O. Box 942879
Sacramento, CA 94279-0029

Callahan, Thompson, Sherman, Caudil
2601 Main St
Suite 800
Irvine, CA 92614-4230

Capstone Law APC
1875 Century Park East, Ste 1000
Los Angeles, CA 90067-2533

Carol Carmel
66017 10th Street
Desert Hot Springs, CA 92240-2307

Cellco Partnership d/b/a Verizon  Wireless
William M Vermette
22001 Loudoun County PKWY
Ashburn, VA 20147-6122

Centerstone
700 S. Flower Street
Suite 850
Los Angeles CA 90017-4121

Centerstone SBA Lending, Inc.
c/o Hemar, Rousso & Heald, LLP
Attn: Jennifer Witherell Crastz
15910 Ventura Blvd., 12th Floor
Encino, CA 91436-2813

Charles Morrison
c/o Crownco
43234 Business Park Drive
Temecula, CA 92590-3604

Coast Professional
P.O. Box 246
Geneseo, NY 14454-0246

Deprofunds Inc. Vert Environmental
4715 Viewridge Ave.
Suite 210
San Diego, CA 92123-1680

Dynamic Environmental
PO Box 27430
Santa Ana, CA 92799-7430

Employment Development Department
Bankruptcy Group MIC 92E
P.O. Box 826880
Sacramento, CA 94280-0001

Enterprise
1400 N. Kellog Dr
Ste G
Anaheim, CA 92807-1984

Enterprise FM Trust
dba Enterprise Fleet Management
BNY Mellon Trust of Delaware
301 Bellevue Prkwy 3rd Floor
Wilmington, DE 19809-3705

Esteban Acosta
513 Mandarin Way
Fallbrook, CA 92028-4708

Esteban Acosta
Attn: Capstone Law APC
1875 Century Park East, Ste 1000
Los Angeles, CA 90067-2533

Esteban Acosta as Class Rep
Attn: Capstone Law APC
1875 Century Park East, Ste 1000
Los Angeles, CA 90067-2533

Esteban Acosta as PAGA
Attn: Capstone Law APC
1875 Century Park East, Ste 1000
Los Angeles, CA 90067-2533

Felahy Trial Lawyers
555 S Hope St, Ste 2655
Los Angeles, CA 90071

PO Box 639
Portland, ME 04104-0639

First Citizen Bank
239 Fayeteville Street
Raleigh, NC 27601-1309

First-Citizens Bank & Trust Company
c/o Michael Myers, Esq.
Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915

Franchise Tax Board
Bankruptcy Section, MS: A-340
P. O. Box 2952
Sacramento, CA 95812-2952

GB Collections (Kaiser Permanente)
1253 Haddonfield Berlin Rd
Voorhees, NJ 08043-4847

Ganahl Lumber
1220 E Ball Rd
Anaheim, CA 92805-5993

Gibbs & Fuerst, LLP
2247 Sam Doegp Ave
Suite 137
San Diego, CA 92110

Gibbs & Fuerst, LLP
41880 Kalmia Street
Suite 160
Murrieta, CA 92562-8837

Healthnet
PO Box 9103
Van Nuys, CA 91409-9103

Home Depot Commercial by Citi
PO Box 790340
St. Louis, MO 63179-0340

Intelligent Direct, Inc.
10 First St PO Box 119
Wellsboro, PA 16901-0119

Internal Revenue Service
P. O. Box 7346
Philadelphia, PA 19101-7346

J&B Materials
PO Box 847609
Los Angeles, CA 90084-7609

James O'Connar
10256 Princess Sarit way
Santee, CA 92071-1277

Jason Perdomo
934 North Santa Fe Avenue
Vista, CA 92083-3636

Joel Parker
1110 Petree Street, #16
El Cajon, CA 92020-2400

Joens & Joens
2201 Dupont Dr.
Suite 820
Irvine, CA 92612-7508

Joshua Eugene Trcka
34590 Orange Street
Wildomar, CA 92595-8944

Lennar Corporation
c/o Jennifer Lee
Coporate Creations Network
7801 Folsom Blvd., #202
Sacramento, CA 95826-2620

Lowe's
PO Box 669821
Dallas, TX 75266-0775

Peterman Lumber
10330 Elm Ave
Fontana, CA 92337-7394

Pro Flo A/C & Heating
42166 Remington Ave
Temecula, CA 92590-2547

Prudhomme
43460 Ridge Park Dr
Suite 220
Temecula, CA 92590-3600

REEL Lumber Service
1321 N. Kraemer Blvd
Anaheim, CA 92806-1402

Robert Yujin
700 S. Flower Street
Suite 850
Los Angeles, CA 90017-4121

Ronald J. Cervi
10386 Vera Cruz Street
San Diego, CA 92124-1319

Shuan Chisolm
30300 Antelope Road
Apartment #2217
Menifee, CA 92584-9579

South Coast Foam
41228 Raintree Ct
Murrieta, CA 92562-7089

(p)SOUTHERN CALIFORNIA EDISON COMPANY
1551 W SAN BERNARDINO ROAD
COVINA CA 91722-3407

Shane Mesler
8531 Stonegate Drive
Rancho Cucamonga, CA 91730-7127

(p)T MOBILE
C O AMERICAN INFOSOURCE LP
4515 N SANTA FE AVE
OKLAHOMA CITY OK 73118-7901


Timothy L. Joens
Joens & Joens, APC
2201 Dupont Drive, Suite 280
Irvine, CA 92612-1515

U.S. Small Business Administration
10737 Gateway West, #300
El Paso, TX 79935-4910

United States Trustee (RS)
3801 University Avenue, Suite 720
Riverside, CA 92501-3255


Verizon Business
P.O. Box 489
Newark, NJ 07101-0489

Vista Paint
2020 E Orangethorpe Ave
Fullerton, CA 92831-5327

Visual Edge
1801 W. Olympic Blvd
File 2584
Pasadena, CA 91199-2594


Wex Health
PO Box 9528
Fargo, ND 58106-9528

Xerox
P.O. Box 202882
Dallas, TX 75320-2882

Reem J Bello
Goe Forsythe & Hodges LLP
17701 Cowan
Building D
Ste 210
Irvine, CA 92614-6840

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

15910 Ventura Blvd., 12th Floor, Encino, CA 91436

A true and correct copy of the foregoing document entitled: **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (PERSONAL PROPERTY)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)  8/ 26 / 2025  , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) 8/ 26 / 2025  , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)  8/ 26 / 2025  , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☒  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 8/ 26/ 2025 | MARY ANN GRANZOW | |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

## SERVICE LIST

**SERVED BY COURT VIA NEF:**

- **Arturo Cisneros**   arturo@mclaw.org, CACD_ECF@mclaw.org
- **Arturo Cisneros (TR)**   amctrustee@mclaw.org,
  acisneros@iq7technology.com;ecf.alert+Cisneros@titlexi.com
- **Jennifer Witherell Crastz**   jcrastz@hrhlaw.com
- **Abram Feuerstein**   abram.s.feuerstein@usdoj.gov
- **Everett L Green**   everett.l.green@usdoj.gov
- **Yoon O Ham**   hamyesq@gmail.com, mendoza.direct@gmail.com
- **Melissa Davis Lowe**   mlowe@shulmanbastian.com, avernon@shulmanbastian.com
- **Anne C Manalili**   anne.manalili@sba.gov
- **Cameron C Ridley**   wcvbees@gmail.com
- **Jessica M. Simon**   jsimon@hrhlaw.com, mgranzow@hrhlaw.com
- **Gregory A Thyberg**   greg@thyberglaw.com
- **United States Trustee (RS)**   ustpregion16.rs.ecf@usdoj.gov
- **Michael A Wallin**   mwallin@wallinrussell.com

**SERVED BY PERSONAL DELIVERY:**

*Chambers' Copy:*
Hon. Scott H. Yun
United States Bankruptcy Court
Central District of California
3420 Twelfth Street, Suite 345 / Courtroom 302
Riverside, CA 92501-3819

**SERVED BY MAIL:**

**Debtor**
Crownco, Inc.
43234 Business Park Drive
Temecula, CA 92590-3604

**Debtor's Attorney**
Yoon O. Ham
1425 W. Foothill Blvd., Suite 235
Upland, CA 91786

**Chapter 7 Trustee**
Arturo Cisneros (TR)
3403 Tenth Street, Suite 714
Riverside, CA 92501

**Attorney for Chapter 7 Trustee**
Melissa Davis Lowe
Shulman Bastian Friedman & Bui LLP
100 Spectrum Ctr Drive, Suite 600
Irvine, CA 92618

**U.S. Trustee**
United States Trustee (RS)
3801 University Avenue, Suite 720
Riverside, CA 92501-3200